IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **DYNAENERGETICS EUROPE** | § | |
| **GMBH, AND** | § | |
| **DYNAENERGETICS US, INC.,** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION 6:20-cv-00069-ADA** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **HUNTING TITAN, INC.,** | § | |
| *Defendant.* | | |

### ORDER GRANTING DEFENDANT HUNTING TITAN'S MOTION TO TRANSFER VENUE FOR POTENTIAL CONSOLIDATION UNDER 28 U.S.C. § 1404(a) AND FED. R. CIV. P. 42(a).

Came on for consideration this date the Motion of Defendant Hunting Titan, Inc. ("Hunting Titan") to transfer for potential consolidation under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 42(a), filed on April 7, 2020. ECF No. 25. Plaintiffs DynaEnergetics Europe GMBH and DynaEnergetics US, Inc. ("DynaEnergetics") responded on April 21, 2020 (ECF No. 27) and Hunting Titan replied on April 28, 2020. (ECF No. 31). After careful consideration of the above briefings, the Court **GRANTS** Hunting Titan's motion to transfer the case to the Southern District of Texas ("SDTX") for the reasons described below.

### I.     Factual Background and Procedural History

DynaEnergetics filed this lawsuit on January 30, 2020 alleging infringement of U.S. Patent Nos. 10,429,161 ("the '161 Patent") and 10,472,938 ("the '938 Patent"). ECF No. 1. According to DynaEnergetics, the '161 Patent, titled "Perforation Gun Components and Systems," generally describes "various gun components that can be modularly assembled into a perforation gun system, the assembled perforated gun system itself, a perforation gun system kit, and a method for assembling a perforation gun system." ECF No. 1, Ex. A, 1:20–24. The '938

1

Patent, titled "Perforation Gun Components and System," has the same general description as the '161 Patent. ECF No. 1, Ex. B, 1:23–27. DynaEnergetics alleges that the Hunting Titan H-1™ Perforating Gun System ("H-1 System") infringes on the '161 and '938 Patents. ECF No. 1, ¶ 14–15.

Hunting Titan filed a motion to transfer venue for potential consolidation under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 42(a). ECF No. 25 at 1. Hunting Titan requested that the case, WDTX Civil Action No. 6:20-cv-00069-ADA ("Waco Case"), be transferred to the Southern District of Texas. *Id.* Hunting Titan also requested that the Waco Case be consolidated with a patent infringement suit, SDTX Civil Action No. 4:17-cv-03784 ("Houston Case"), involving both parties. *Id.* The SDTX consolidated two previous actions filed by DynaEnergetics into the Houston Case which alleges that the H-1 System and the Hunting Titan H-2™ Perforating Gun System ("H-2 System") infringe on U.S. Patent No. 9,581,422 ("the '422 Patent"). *Id.* at 1–2. According to DynaEnergetics, the '422 Patent, titled "Perforating Gun and Detonator Assembly," generally describes "devices and methods for selective arming of a detonator assembly of a perforating gun assembly." ECF No. 27 at 3. (quoting ECF No. 25, Ex. 8, 1:18–20). The Houston Case is currently stayed pending *inter partes* review of the '422 Patent. ECF No. 25 at 1.

## II.    Transfer for Potential Consolidation Under First-To-File Rule

### a.  Standard of Review

Fed. R. Civ. P. 42(a) allows for the consolidation of actions if the actions "involve a common question of law or fact." FED. R. CIV. P. 42(a) The Court applies Fifth Circuit precedent to a procedural, non-patent issue. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013); *Valeo, Inc. v. Federal-Mogul Corp.*, EP-13-CV-115-PRM, 2013

U.S. Dist. LEXIS 18767, at *5, n.1 (W.D. Tex. Oct. 17, 2013). The Fifth Circuit follows the "first-to-file" rule which determines how a court decides the merits of substantially similar issues in separately filed cases. *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 920 (5th Cir. 1997). The first-to-file rule dictates that the court in which an action is first filed should determine whether subsequently filed cases involving substantially similar issues should proceed. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 948 (5th Cir. 1997) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("in the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case."). The first-to-file rule also provides that the first-filed court may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated. *Id.* When related cases are pending before two federal courts, the court in which the case was last filed may refuse jurisdiction if the issues raised by the cases substantially overlap. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citing *Save Power*, 121 F.3d at 950; *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir. 1985)). The second court only determines if a likelihood of substantial overlap of issues between the two suits has been demonstrated. *Mann Mfg.*, 439 F.2d at 408. The first filed court resolves the question of whether both suits should proceed. *Id.* The rule rests on principles of comity and sound judicial administration. *See Save Power,* 121 F.3d at 950; *West Gulf,* 751 F.2d at 728. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf,* 751 F.2d at 729.

When considering whether a later-filed case should be dismissed or transferred, "[t]he crucial inquiry is one of 'substantial overlap'" between the cases. *Save Power*, 121 F.3d at

950 (quoting *Mann Mfg.*, 439 F.2d at 408). The cases do not have to be identical for the first-to-file rule to be applicable. *Id.* When the overlap between the two cases is not complete, the Court will consider factors such as "the extent of the overlap, the likelihood of conflict, the comparative advantage and interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus, Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). "In patent cases, courts determining whether cases were substantially similar have examined whether they involved the same parties, the same technology, the same inventors, overlapping remedies, the same witnesses, or overlapping issues in claim construction." *SIPCO, LLC v. Emerson Elec. Co.*, No. 6:15-CV-907, 2016 WL 7743496, at *3 (E.D. Tex. July 1, 2016).

The Court must determine if there are "sufficiently compelling circumstances to avoid the rule's application." *Mann Mfg.*, 439 F.2d at 407. The *Volkswagen* convenience factors for a motion to transfer venue can be utilized to determine if compelling circumstances exist that warrant not applying the first-to-file rule. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602–03 (5th Cir. 1983). The Court recognizes the Fifth Circuit's endorsement of the use of the *Volkswagen* convenience factors to determine if compelling circumstances exist but acknowledges the Fifth Circuit's silence on how to use the factors in the first-to-file rule context. *Id.* The Court could either use the "heavy burden" analysis that is used when analyzing a transfer motion outside the context of the first-to-file rule or determine that a lack of a balance of convenience factors favoring transfer equates to compelling circumstances. *See QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy"). In choosing its method, the Court recognizes that the compelling circumstances should function as an exception to the first-filed rule. *See Mann Mfg.*, 439 F.2d at 407. However, utilizing the heavy burden test would place too much emphasis on the exception

and create an almost coequal requirement within the Fifth Circuit framework rather than an exception. The Court also looks to precedent within this district and in the Second Circuit. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Hart v. Donostia LLC,* No. EP-17-CV-134-KC, 290 F.Supp.3d 627 (W.D. Tex. March 1, 2018). The El Paso Division of this Court utilized a balance of factors to determine that transfer was appropriate, and no compelling circumstances existed. *Hart*, 290 F.Supp.3d at 633. The Second Circuit also used the balance of convenience factors in its analysis for compelling circumstances. *See New York Marine*, 599 F.3d at 112. Thus, the Court will determine if a balance of factors weighs in favor of transfer. If a balance of factors does not weigh in favor of transfer, then the Court will conclude that compelling circumstances exist in order to avoid application of the first-to-file rule.

The briefings submitted by DynaEnergetics and Hunting Titan primarily focused on the potential substantial overlap between the patents. The Court has also taken their additional arguments into consideration in determining whether a likelihood of substantial overlap of issues exists.

### b. Discussion Regarding Consolidation with the Houston Case

Hunting Titan argues that the cases involve enough similarities to constitute a substantial overlap of issues to warrant transfer for potential consolidation. ECF No. 25 at 4. Hunting Titan notes that the Waco Case contains the same parties except for the omissions of Hunting Energy Services, Inc., the parent company of Hunting Titan, Inc., and Hunting Titan, Ltd., a sister company of Hunting Titan Inc. *Id.* at 2 (citing Exs. 1 & 7). Hunting Titan also points out that the Waco Case alleges infringement by the H-1 System, which is also included in the Houston Case, so the cases would share core issues regarding the product. *Id.* at 2, 9. Hunting Titan also notes

that three of the five inventors are common between the patents in the cases. *Id.* at 3 (citing Exs. 8–10). Hunting Titan asserts that the patents in both cases are closely related with overlapping claim terms and potential overlapping claim construction. *Id.* at 9. Specifically, Hunting Titan argues that the '422, '161, and '938 Patents claim almost identical systems. *Id.* at 3. Hunting Titan points out that selected elements from claim 1 of the '938 Patent share similarities with equivalent elements from claim 1 of the '422 Patent. *Id.* Hunting Titan also notes the identical figures used to describe the "detonator positioning assembly" in Figure 6 from the '422 Patent and the "connector" "wherein the detonator is positioned within the top connector" in Figure 18 from the '161 and '938 Patents. *Id.* at 4. Furthermore, Hunting Titan argues that "any technical discovery related to the patents would also substantially overlap with the same witnesses and closely related technical issues." *Id.* at 9. Hunting Titan contends that the allegations of inequitable conduct before the United States Patent and Trademark Office would involve overlapping witnesses and questions of law. *Id.* Hunting Titan also argues that duplicative proceedings would be wasteful of the courts' and the parties' resources and risk inconsistent treatment and outcomes in related cases. *Id.* (citing *Hamilton*, CV. No. 5:15-CV-965-DAE, at *4–5 (W.D. Tex. June 17, 2016)).

Hunting Titan claims that this case should be handled similarly to a previous case in the Eastern District of Texas. ECF No. 25 at 8 (citing *Aventis Pharmaceuticals Inc. v. Teva Phar. USA*, CIVIL ACTION No. 2:06-CV-469, 2007 WL 2823296, (E.D. Tex. Sep. 27, 2007)). In that case, the Plaintiff initially filed suit for patent infringement, but filed another suit in a separate district alleging patent infringement of new patents by the same product. *Id.* (citing *Aventis*, 2007 WL 2823296, at *1–3). The court found that a transfer of the case would eliminate substantial

inefficiencies since "the issues in the present case will substantially overlap" with the other case. *Id.* (citing *Aventis*, 2007 WL 2823296, at *4).

DynaEnergetics argues that the issues of the cases do not substantially overlap. ECF No. 27 at 2. DynaEnergetics points out that the '422 Patent belongs to a different patent family from the '161 and '938 Patents. *Id.* at 10. DynaEnergetics also indicates that the '422 Patent has two additional inventors, a different specification, a different prosecution history, and a different claim scope than the '161 and '938 Patents. *Id.* at 3, 10. Specifically, DynaEnergetics points to a comparison of independent claim 20 of the '161 Patent and independent claim 1 of the '422 Patent (and the proposed amendment considered in the *inter partes* review) as evidence of the unrelated scopes of the patents. *Id.* at 3 (citing ECF No. 26 at 3–4). DynaEnergetics contends that the comparison made by Hunting Titan is based on selected elements and ignores the differences in claim scope. *Id.* at 4 (citing ECF No. 25 at 3). Also, DynaEnergetics argues that Hunting Titan's comparison is ineffective since it only demonstrates that the patents describe using a wireless detonator in a perforating gun system. *Id.* DynaEnergetics also notes that certain limitations in claim 20 of the '161 Patent are missing from the '422 Patent. *Id.* at 3. DynaEnergetics similarly notes that limitations of the '938 Patent claims are missing from the '422 Patent claims and vice versa which lead to significant differences in claim scope. *Id.* (citing ECF No. 26 at 5–6).

DynaEnergetics asserts that *Aventis* is distinguishable from the case before the Court. *Id.* at 9. DynaEnergetics points out that the Houston Case has been stayed before the court issued any substantive rulings. *Id.* Moreover, the recusal of the original judge and the assignment of a new judge has led to less familiarity with the parties, products, theories, or prior art. *Id.* In contrast, the court in *Aventis* found that the first-filed case "had issued several significant

rulings." *Id.* at 9–10 (citing *Aventis*, 2007 WL 2823296, at *1–2). Furthermore, the judge in the first-filed case had "extensive familiarity with the parties to [the] case, the accused product, the theories of infringement, and prior art references potentially (if not actually) relevant to the issues in [the] case." *Id.*

DynaEnergetics also claims that the opening of its flagship US facility in Blum, Texas gives this Court a significant local interest in this Action. ECF No. 27 at 10–11. Consequently, this local interest weighs the comparative advantage and interest of resolving the dispute in favor of the Western District of Texas ("WDTX") according to DynaEnergetics. *Id.* In addition, DynaEnergetics points to its belief that at least a significant portion, if not a majority, of Hunting Titan's customers and sales of the H-1 System are in the WDTX due to the oil and gas industry. *Id.* at 7. DynaEnergetics also references Hunting Titan's distribution centers and two registered addresses in the WDTX. *Id.* DynaEnergetics also points to its own facilities in this District as well as the estimated sixty-five to seventy-five percent share of its total annual revenue in DynaEnergetics' 2019 fiscal year. *Id.* at 6.

In its reply, Hunting Titan points out that the '938 Patent directly incorporates limitations from the '422 Patent that are not mentioned in the specification of the '938 Patent. ECF No. 31 at 2. For example, the word "wireless" in every claim of the '938 Patent does not appear in the specification, but the specification and claims of the '422 Patent defined and discussed the word. *Id.* (citing ECF No. 28, Ex. 6, 2:24–29, 8:39–54). Similarly, claim 12 of the '938 Patent is entirely composed of claim limitations not mentioned in the '938 specification, but are almost copied directly from claim 1 of the '422 Patent. *Id.* at 3. In addition, Hunting Titan notes that claim 1 of the '938 Patent includes seven out of ten total limitations (the other three being standard claim terms and well known in the art) that are equivalent to the language that

DynaEnergetics tried to add to the '422 Patent during *inter partes* review. *Id.* Hunting Titan also argues that the '161 Patent has overlapping claim scope with the '422 Patent. *Id.* Hunting Titan also points out that the "first connector" in the '161 Patent is the same as the "detonator positioning assembly" in the '422 Patent as demonstrated by the identical figures in both patents. *Id.* at 4.

Hunting Titan also asserts in its reply that DynaEnergetics headquarters are still in Houston, not at the flagship facility in Blum. ECF No. 25 at 4. Moreover, Hunting Titan points to two suits filed by DynaEnergetics against Hunting Titan six months after opening the flagship facility in Blum. ECF No. 31 at 5. Thus, Hunting Titan argues that the weighing of the comparative advantage and interest of each forum in resolving the dispute is less important in this case. *Id.* Hunting Titan concludes that the forum selection of the WDTX based on the opening of the flagship facility is not credible. *Id.*

When considering a motion to transfer venue for potential consolidation under the first-to-file rule, "[t]he crucial inquiry [of the Court] is one of 'substantial overlap'" between the cases. *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg.*, 439 F.2d at 408). When the overlap between the two cases is not complete, the Court will consider factors such as "the extent of the overlap, the likelihood of conflict, the comparative advantage and interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus, Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). In this case, three of the five inventors are on all three patents, but DynaEnergetics merely points out that the inventors are not the same without explaining the shared inventors. *See* ECF No. 25 at 3 (citing Exs. 8–10). Additionally, both suits allege infringement by the same product using the same technology in the same field. *See id.* at 8–9. The parties are the same except that Hunting Energy Services, Inc., the parent company of

9

Hunting Titan, Inc., and Hunting Titan, Ltd., a sister company of Hunting Titan Inc., are not listed on the Houston Case. *See* ECF No. 25 at 2 (citing Exs. 1 & 7). While these companies are not listed as defendants in the present case, DynaEnergetics does not explain why these companies were omitted. *See id*. In addition, the Court notes that the Houston Case claims that all three companies were responsible for the alleged patent infringement by the H-1 System; and yet, DynaEnergetics does not explain why only Hunting Titan, Inc. is sued despite the product being the same. *See id.* Had DynaEnergetics provided an explanation for the omission, the Court would be more inclined to find this dissimilarity compelling. Therefore, the Court finds no reason to weigh this dissimilarity as significant. *See Cadle Co.*, 174 F.3d at 602 (citing *Cadle Co. v. Whataburger of Alice, Inc.,* No. 97–1502, slip op. (W.D. Tex. Mar. 16, 1998)).[1]

In examining the patents, the '938 and '161 Patents seem to incorporate aspects of the '422 Patent. *See* ECF No. 25, Exs. 8–10. While DynaEnergetics asserts that the patents are different due to their different prosecution history and patent family, DynaEnergetics could not explain the use of the identical figures in the patents. *See* ECF No. 27 at 4. DynaEnergetics only notes that all three patents contain elements describing the use of a wireless detonator in a perforating gun system. *See id.* at 9. In addition, DynaEnergetics points to the incongruous limitations between the patents which indicate an alleged significant difference in scope, but the Court does not find this argument compelling. *See id.* at 3 (citing ECF No. 26 at 3–4). The Court notes that DynaEnergetics could not do more to dissuade the Court from recognizing the similarity in claims beyond calling the comparison of selected elements "superficial" and "unavailing." *See id.* at 4. With the similarities noted, a potential for conflict exists if the claims are constructed differently. While the '422 Patent seems to be of a smaller scope than the '161

---

[1] "The fact that the attorney and accountant are named as defendants in the district court suit but not in the bankruptcy complaint does not, in the district court's opinion, render the cases so dissimilar as to warrant action at the district court level."

and '938 Patents, the construction of the '422 Patent will likely affect the subsequent constructions of the '161 and '938 Patents. *See* ECF No. 25, Exs. 8–10.

While the SDTX case is currently stayed, both parties agreed to the stay. *See id.* at 1. Normally, consolidating a case into a stayed case may negatively impact judicial economy, but as both parties agreed to the stay, the Court finds that transferring this particular case for potential consolidation with a stayed case will not negatively impact judicial economy. *See* ECF No. 25 at 1; *See generally J2 Global Commc'ns v. Protus IP Sols., Inc.,* No. 6:08-cv-211, 2009 WL 440525, at *5–6 (E.D. Tex. Feb. 20, 2009); *Medimmune LLC v. PDL BioPharma, Inc.,* No. 08-5590, 2009 WL 1011519, at *3 (N.D. Cal. Apr. 14, 2009). In addition, DynaEnergetics acknowledges that the SDTX has yet to issue any substantive rulings, but the recusal of the original judge reduced the familiarity of the court with the law. *See* ECF No. 27 at 9. However, the Court finds this argument inconsistent since the Court has yet to make any substantial rulings that would require a familiarity, so the assignment of a new judge would not impact any supposed familiarity. *See id.*

DynaEnergetics claims that the comparative advantage and interest of each forum resolving the dispute is in favor of the WDTX. *See* ECF No. 27 at 10–11. However, the Court agrees with Hunting Titan that this factor is less important in light of the evidence presented. *See* ECF No. 31 at 5. While DynaEnergetics opened its flagship facility in the WDTX, the Court notes that the headquarters remain in the SDTX and DynaEnergetics filed suit in the SDTX twice after opening the flagship facility. *See id.* DynaEnergetics does provide substantial evidence indicating that the WDTX has a local interest in resolving the dispute; however, the evidence does not substantially outweigh the previous forum selection and location of its headquarters representing the local interest of the SDTX. *See* ECF No. 27 at 10–11; ECF No. 31 at 5. At best,

the factor weighs against transfer but is ultimately not significant in light of the opposing evidence.

While the patents do have some dissimilar claims and the WDTX has a greater local interest than the SDTX, the noted similarities combined with the shared inventors, parties, technology, product, and field are significant. Therefore, the Court finds that a likelihood of substantial overlap exists between the two cases. Before granting the motion to transfer venue, the Court must determine if there are "sufficiently compelling circumstances to avoid the rule's application." *Mann Mfg.*, 439 F.2d at 407. The Court will utilize the *Volkswagen* convenience factors to determine if a balance of the factors favors transfer. *Mission Ins.*, 706 F.2d at 602–03. If the Court cannot find that a balance of factors favors transfer, then the Court will conclude that sufficiently compelling circumstances exist.

## III.   Analysis of Convenience Factors for Compelling Circumstances

### a.   Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314. ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . .

clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

In the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). The briefings submitted by DynaEnergetics and Hunting Titan

both contend that all factors except the last two weigh in its respective favor, and the Court has taken their arguments into consideration in determining whether to grant the Motion to Transfer.

### b. Discussion regarding transfer to the Southern District of Texas

Both parties agree that the SDTX would be a proper venue, and the suit could have been filed in the SDTX.

#### i. Relative ease of access to sources of proof

In considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. Hunting Titan argues that the sources of proof are already being brought to Houston for the Houston Case, so Houston provides easier access to sources of proof. ECF No. 25 at 10. In addition, Hunting Titan asserts that its personnel and documents are located in Houston or travel to Houston on a regular basis. *Id.* (citing Ex. 12). Moreover, Hunting Titan's customers and other potentially relevant third parties are more likely to be based in the SDTX. *Id.* (citing Ex. 11). DynaEnergetics contends that evidence and employees with relevant knowledge reside in the WDTX through Hunting Titan's distribution centers in the WDTX. ECF No. 27 at 11–12. In addition, DynaEnergetics points to the fact that its largest US presence is in the WDTX, indicating that most if not all of DynaEnergetics' potential witnesses are located in the WDTX. *Id.* at 12. DynaEnergetics also argues that witnesses located in Europe travel regularly to the flagship facility in the WDTX. *Id.*

In coming to its conclusion, the Court considered the location of the relevant documents and witnesses. *See Volkswagen II*, 545 F.3d at 316. As Hunting Titan is the accused infringer, Hunting Titan likely possesses the bulk of the relevant documents for this case. *See, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of

the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Therefore, in accordance with Fifth Circuit precedent, the Court finds that the location of the documents relevant in this case weighs towards transfer.[2]

When determining the weight and impact of the location of witnesses, this Court looks at the totality of the circumstances when examining this issue, including but not limited to, "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc." *See Fintiv,* 2019 WL 4743678, at *8. Both parties allege that relevant witnesses, both party and non-party, are in their respective, favored districts. *See* ECF No. 25 (citing Ex. 11); ECF No. 27 at 11–12 (citing Ex. A, ¶¶ 11–18). DynaEnergetics does note that the inventors live outside of the United States and travel regularly to DynaEnergetics flagship facility in the WDTX. *See* ECF No. 27 at 11–12 (citing Ex. A, ¶ 15). Travel to the United States would be required to testify in either district, but the Court does not equate the regularity of travel to the WDTX with the ease of access to the sources of proof. Even a cursory search of flights from Ireland airports to Dallas and Houston airports shows that all flights require a layover and are of similar cost and duration. Appearing in Waco after traveling from either Dallas or Houston

---

[2] As noted previously in *Fintiv,* the Court believes that this factor conflicts with the realities of modern patent litigation. *Fintiv,* 2019 WL 4743678, at *4. Most documents produced in modern patent litigation exist as electronic documents on a party's server. In this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts—particularly those with patent-heavy dockets which have very significant document productions—have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8–9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). However, under current Fifth Circuit precedent, the physical location of electronic document does affect the outcome of this factor. *See, e.g., Volkswagen II,* 545 F.3d at 316.

would produce additional travel time and difficulty whereas traveling to and appearing in Houston would be significantly easier. As such, the Court finds that the ease of access to the inventors favors the SDTX. The Court finds that the location of the witnesses is neutral towards transfer. With the location of documents weighing towards transfer and the location of witnesses weighing towards transfer, the Court finds that the "relative ease of access to sources of proof" weighs heavily towards transfer.

### ii.   Availability of compulsory process to secure the attendance of witnesses

The Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Similarly, a court may subpoena a witness within the state when the witness is a party, an officer of the party, or a person who would not incur substantial expense when commanded to attend trial. FED. R. CIV. P. 45(c)(1)(B). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Hunting Titan argues that the in-state, non-party witnesses would likely incur less expense travelling to Houston as opposed to travelling to Waco because they are more likely to either reside in or regularly travel to Houston. ECF No. 25 at 10. However, Hunting Titan does not point out that travelling to Waco would result in substantial expense, so the in-state witnesses would still be subject to compulsory process. *See* FED. R. CIV. P. 45(c)(1)(B). Hunting Titan is not presently aware of third-party witnesses that reside within the Waco Division. ECF No. 25 at

10. DynaEnergetics makes this same observation but relies on a case from the Eastern District of Texas as its only evidence to demonstrate that the factor should weigh in its favor. ECF No. 27 at 13 (citing *Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC*, No. 2:14-CV-627 RSP, 2015 WL 1046267, at *4 (E.D. Tex. Mar. 10, 2015). However, the court only weighed the factor slightly against transfer, and did not indicate why. *See id.* Therefore, this Court finds no evidence weighing in favor of or against transfer regarding the "availability of compulsory process" factor and weighs this factor as neutral.

### iii.   Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1342. The Court considers all potential material and relevant witnesses. *Fintiv*, 2019 WL 4743678, at *6. However, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify at trial, so long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.* at *13. The convenience of party witnesses is given relatively little weight compared to non-party witnesses. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted*, A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *In re Genentech, Inc.*, 566 F.3d at 1343.

Hunting Titan argues that, at most, a few witnesses are located within the Waco Division, so this factor weighs heavily in favor of transfer to the SDTX. ECF No. 25 at 11. Hunting Titan also argues that attendance in Houston instead of in Waco would cost witnesses less time and

money. *Id.* Hunting Titan also contends that the witnesses are already preparing for trial in the Houston Case, so consolidating the action would lower the cost of attendance and reduce time spent preparing for two separate trials. *Id.* DynaEnergetics contends that the witnesses in Blum, Milford, and Pampa would have less cost attending in Waco than in Houston. ECF No. 27 at 13. DynaEnergetics also claims that one inventor can fly directly into Dallas, but not to Houston. *Id.* at 11–12 (citing Ex. A, ¶ 15). DynaEnergetics also claims that hotel costs in Houston are significantly higher than in Waco. *Id.* at 13.

The Court considers the cost of attendance for party and non-party witnesses but gives the cost of attendance of non-party witnesses considerably more weight. *See ADS Sec. L.P.*, 2010 WL 1170976, at *4. As mentioned above, both parties have party and non-party witnesses in their respective, favored venues, so both sides face similar burdens upon receiving an adverse ruling. *See* ECF No. 25 (citing Ex. 11); ECF No. 27 at 11–12 (citing Ex. A, ¶¶ 11–18). DynaEnergetics claims that hotel costs are higher in Houston than in Waco but provides no supporting evidence. *See* ECF No. 27 at 13. As such, this Court finds no reason to give this argument weight. The Court also does not find DynaEnergetics' argument regarding increased cost to testify in the SDTX for the inventors living outside of the United States credible. *Id.* (citing Ex. A, ¶ 15). As stated above, DynaEnergetics provides no supporting evidence for this assertion. In addition, a cursory search of itineraries from Ireland shows that travel to Waco as opposed to Houston would be more burdensome. Hunting Titan's argument that a transfer would lower witness cost of attendance does merit consideration. *See* ECF No. 25 at 11. Many of the proposed relevant witnesses in this case will already be testifying in the Houston Case, so a transfer with or without consolidation would only require the witnesses to travel to one

courthouse instead of two. *See id.* Therefore, the Court finds that the "cost of attendance" factor weighs in favor of transfer.

### iv.   All other practical problems that make trial of a case easy, expeditious and inexpensive

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*). When considering transfer, the Court should consider the possibility of consolidation with related litigation. *Micron v. Mosaid*, 518 F.3d 897, 904 (Fed. Cir. 2008) (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). Hunting Titan argues that the parties and the courts do not risk any significant duplicative or wasted efforts by transferring the case in its early stages. ECF No. 25 at 11. In addition, Hunting Titan asserts that no significant additional delays or postponed deadlines would result from transfer. *Id.* DynaEnergetics argues that an OGP has already been issued in this Court whereas the case in the SDTX is currently stayed. ECF No. 27 at 14. DynaEnergetics also contends that consolidating the Waco Case with the stayed Houston Case would likely require the staying of the adjudication of the claims in the Waco Case as well. ECF No. 25 at 1. However, as previously mentioned, both parties agreed to the stay, so DynaEnergetics' complaints do not have merit. *See id.* The Court recognizes the agreed-upon stay in the Houston Case as significant even if the Court may be able to proceed more quickly with this action. *See id.* Therefore, considering the possibility of consolidation with related litigation upon transfer, the Court finds that the "all other practical problems" factor weighs heavily for transfer. *See Micron*, 518 F.3d at 904 (citing *Genentech, Inc.*, 998 F.2d at 937).

**v.  Administrative difficulties flowing from court congestion**

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Hunting Titan argues that this factor is neutral while DynaEnergetics argues that this factor weighs against transfer. ECF No. 25 at 12; ECF No. 27 at 14. DynaEnergetics notes that the time from filing to trial is estimated to be 20.5 months in this case whereas the median time from filing to trial for civil cases in the Southern District of Texas is approximately 22.9 months. ECF No. 27 at 14. Normally, the Court does process patent cases with a patent-specific orders governing proceedings. However, a transfer with potential consolidation would reduce court congestion in the WDTX whereas no transfer would maintain the current status quo. In addition, if the SDTX decides not to consolidate the case, one court adjudicating the cases in parallel would be more efficient than two courts adjudicating the cases. While this Court may be able to hear this case more quickly than the SDTX, the Court recognizes the impact of the agreed-upon stay and the potential for consolidation. *See* ECF No. 25 at 1. Therefore, the Court finds that "the administrative difficulties flowing from court congestion" factor weighs for transfer.

**vi.  Local interest in having localized interests decided at home**

Hunting Titan argues that an allowance of the Waco Case to proceed would cause confusion in the public regarding claim terms and the scope of the patents if the cases arrived at different conclusions. *Id.* at 12. In addition, Hunting Titan contends that Waco citizens do not have a direct or indirect interest in adjudicating this case, and Houston citizens have more connections with the companies, technologies, and products at issue in this litigation. *Id.* at 13.

As mentioned above, DynaEnergetics argues that its significant local presence heavily weighs in favor of litigating this action in this Court. ECF No. 27 at 14. Although

DynaEnergetics is officially headquartered in Houston, the Blum facility is now DynaEnergetics' flagship US location with the largest number of employees and the largest physical footprint. *Id.* at 5. Certain products protected by the '161 and '938 Patents are manufactured, assembled, and tested at the Blum facility. *Id.* Furthermore, DynaEnergetics has a smaller facility in Whitney, Texas, also in this District, which also manufactures components of products protected by the '161 and '938 Patents. *Id.* With respect to likely witnesses, although all inventors of the '161 and '938 Patents live outside of the United States, three inventors regularly travel to the Blum campus. *Id.* (citing Ex. A, ¶ 15). In addition, certain relevant documents, such as manufacturing and shipping documents, are located in Blum. *Id.* at 6 (citing Ex. A, ¶¶ 17–18). Finally, many of DynaEnergetics' direct and indirect customers are based in or operate in this District resulting in sixty-five to seventy-five percent of 2019's revenue stemming from products in the WDTX. *Id.* (citing Ex. A, ¶ 19).

Hunting Titan responds by saying that DynaEnergetics filed two suits against Hunting Titan in the SDTX six months after opening the flagship facility in Blum. ECF No. 31 at 5. Hunting Titan questions the credibility of the argument that the opening of this facility motivated DynaEnergetics' forum decision in light of this fact. *Id.*

The Court recognizes the local interest of the WDTX because of DynaEnergetics' substantial presence through its flagship facility, smaller facility, and majority of business tied to the patents all located within the district. *See* ECF No. 27 at 5–6, 14. However, the Court also notes Hunting Titan's contention that DynaEnergetics' headquarters are still located in the SDTX, and DynaEnergetics filed multiple suits against Hunting Titan in the SDTX even after the opening of the flagship facility. *See* ECF No. 25 at 4; ECF No. 31 at 5. While the local interest of the WDTX is substantial, the Court does not weigh this factor heavily against transfer due to the

evidence presented by Hunting Titan. *See id.* Therefore, the Court finds that the local interest factor weighs against transfer.

### vii.   Familiarity of the forum with the law that will govern the case

Hunting Titan argues that this factor weighs towards transfer due to the significant risk of duplicative work and inconsistent outcomes on the overlapping issues of the case. ECF No. 25 at 13. As such, Hunting Titan asserts that the SDTX is in the best position to avoid a conflict in the issues. *Id.* DynaEnergetics submits that this factor weighs neutral towards transfer. ECF No. 27 at 15. The Court notes that Hunting Titan's argument is agreeable but is better left to the analysis of another factor. *See* ECF No. 25 at 13. As both the SDTX and WDTX are capable of and familiar with the application of federal patent law and regional circuit law, the Court finds that this factor weighs towards neutral.

### viii.   Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 25 at 13 (Hunting Titan), ECF No. 27 at 15 (DynaEnergetics). The Court also agrees.

### ix.   Conclusion

Having found that the cost of attendance and court congestion factors weigh in favor of transfer, the all other practical problems and the ease of access to relevant sources of proof factors weigh heavily in favor of transfer, the local interest factor weighs against transfer, and the other factors being neutral, the Court finds that Hunting Titan has demonstrated that a balance of the convenience factors favors transfer. As such, no compelling circumstances exist to warrant the avoidance of the application of the first filed rule. *See New York Marine*, 599 F.3d at 112; *Mann Mfg.*, 439 F.2d at 407. Therefore, the Court finds that Hunting Titan has demonstrated that the Waco Case substantially overlaps with the Houston Case, and warrants transfer to the SDTX

under the first-to-file rule. *See Cadle Co., Inc.*, 174 F.3d at 603 (citing *Save Power*, 121 F.3d at 950; *West Gulf*, 751 F.2d at 728).

### IV.    Conclusion

It is therefore **ORDERED** that Hunting Titan's motion for transfer venue to Southern District of Texas is **GRANTED**.

**SIGNED** this 16th day of June, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE