**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DYNAENERGETICS EUROPE GMBH, and | ) | |
| DYNAENERGETICS US, INC., | ) | |
| | ) | Civil Action No: 4:20-cv-02123 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HUNTING TITAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION TO DISMISS AND STRIKE DEFENDANT'S
THIRD COUNTERCLAIM AND FIFTH AFFIRMATIVE DEFENSE FOR
<u>UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT</u>**

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, IPR2018-00600, Paper 67 (PTAB July 6, 2020) |
| B | '161 Patent – April 16, 2019 Comments on Notice of Allowance |
| C | *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, PGR2020-00072, Paper 7 (PTAB Jan. 19, 2021) |
| D | *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, PGR2020-00080, Paper 7 (PTAB Feb. 12, 2021) |
| E | *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896 (E.D. Tex. Dec. 13, 2011) |
| F | *Cabin Foods, LLC v. Rich Prods. Corp.*, No. EP-11-CV-318-KC, 2012 WL 433115 (W.D. Tex. Feb. 8, 2012) |
| G | *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRx), 2019 WL 8807748 (C.D. Cal. July 1, 2019). |
| H | *Polaris Indus. v. Arctic Cat, Inc.*, No. 14-3412 (JRT/FLN), 2015 WL 4636544 (D. Minn. Aug. 4, 2015) |

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS .......................................... 3

III.  FACTUAL BACKGROUND ............................................................................. 3

      A.   The '422 Patent ...................................................................................... 4

      B.   The "Key" Prior Art Was Cited During Prosecution of the '161 Patent,
           and the IPR Final Written Decision is Immaterial to Key Limitations of
           the '161 Patent. ...................................................................................... 4

      C.   The IPR Materials and "Key" Prior Art Were Cited During Prosecution,
           and the IPR Final Written Decision is Immaterial to Key Limitations of
           the '938 Patent. ...................................................................................... 6

      D.   The '161 and '938 Post Grant Review Petitions and Decisions Denying
           Institution. .............................................................................................. 8

IV.   STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............... 9

V.    LEGAL STANDARDS ...................................................................................... 9

VI.   ARGUMENT ................................................................................................... 11

      A.   The PTAB Expressly Rejected Hunting's Arguments in its PGR Petitions
           that Schacherer Invalidated the '161 and '938 Patents. .......................... 11

      B.   The IPR Final Written Decision Is Not But-For Material to the Limitations
           of the '161 and '938 Patents. ................................................................ 14

VII.  CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of TX, LLC v. Netflix, Inc.*,
No. 15-cv-849-RP, Dkt. 44 (W.D. Tex. Aug. 22, 2016) ................................................. 9, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................... 10

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988) ................................................................................ 2

*Cabin Foods, LLC v. Rich Prods. Corp.*,
No. EP-11-CV-318-KC, 2012 WL 433115 (W.D. Tex. Feb. 8, 2012)............................. 10

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
No. CV 16-3714-GW (AGRx), 2019 WL 8807748 (C.D. Cal. July 1, 2019)................. 13

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
No. 6:10-CV-379-LED-JDL, 2011 WL 13134896 (E.D. Tex. Dec. 13, 2011) ................ 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009).......................................................................... 9, 10

*FMC Corp. v. Manitowoc Co.*,
835 F.2d 1411 (Fed. Cir. 1987)................................................................................ 10

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) .................................................................................... 10

*Ironburg Inventions Ltd. v. Valve Corp.*,
418 F. Supp. 3d 622 (W.D. Wash. 2019)................................................................... 13

*Kimberly-Clark Corp. v. Johnson & Johnson*,
745 F.2d 1437 (Fed. Cir. 1984) ................................................................................ 2

*Nano-Proprietary Inc. v. Canon, Inc.*,
537 F.3d 394 (5th Cir. 2008) .................................................................................... 8

*Polaris Indus. v. Arctic Cat, Inc.*,
No. 14-3412 (JRT/FLN), 2015 WL 4636544 (D. Minn. Aug. 4, 2015) ........................ 16

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
537 F. 3d 1357 (Fed. Cir. 2008) ............................................................................... 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ............................................................................ 2, 9

*United States v. Coney*,
689 F.3d 365 (5th Cir. 2012) ................................................................................... 8

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... 8, 10

Fed. R. Civ. P. 9 ...................................................................................................... 9

## I.   INTRODUCTION

Having failed to present persuasive or sufficiently particular arguments in its petitions for post grant review of the two Patents-in-Suit,[1] Defendant Hunting Titan, Inc. ("Hunting") now seeks to attack both the '161 and '938 Patents by making specious claims of inequitable conduct.

Hunting alleges that DynaEnergetics' prosecution counsel improperly withheld the Patent Trial and Appeal Board's ("Board" or "PTAB") _interpretation_ of the Schacherer prior art reference reflected in its Final Written Decision in IPR2018-00600—an _inter partes_ review proceeding involving a different patent with different claim limitations—from the Examiner during the prosecution of the '161 and '938 Patents.  This claim fails as a matter of law as the following facts are undisputed: (1) the Examiner found the claims of the '161 and '938 Patents patentable over all of the cited references, _including Schacherer_, (2) DynaEnergetics cited materials from IPR2018-00600 to the Examiner during prosecution of the '938 Patent and the Examiner nevertheless found the claims patentable, (3) Hunting cited Schacherer _and the IPR Final Written Decision_ in its petitions for post grant review of the '161 and '938 Patents and the Board declined to institute review for both patents, and (4) the IPR Final Written Decision _is not prior art_.  The IPR Final Written Decision, therefore, cannot meet the "but for" materiality requirement to support a claim for inequitable conduct where the Board has expressly found the claims of the '161 and '938 Patents to be patentable over the very arguments/analysis it contains.

To be clear, Hunting's inequitable conduct claim is not premised on the intentional withholding of prior art, it is premised on the purported failure to disclose the Board's _interpretation_ of a prior art reference _despite_ that the reference itself was squarely before the Examiner.  Moreover, Hunting's counterclaim tellingly fails to even acknowledge that this very

---

[1] U.S. Patent No. 10,429.161 (the "'161 Patent") and U.S. Patent No. 10,472,938 (the "'938 Patent") (collectively, the "Patents-in-Suit").

_interpretation_ has since been expressly put before the Board with respect to the Patents-in-Suit and the Board still rejected Hunting's validity challenge.  It further fails to acknowledge that significant portions of the Final Written Decision at issue were subsequently overturned by the Precedential Opinion Panel ("POP")—made up of the USPTO Director, the Commissioner for Patents, and the PTAB Chief Judge.  Instead, Hunting asserts this Final Written Decision on the '422 Patent[2]—as opposed to the Schacherer reference itself—is but-for material based only on its speculation that the Examiner's "patentability analysis was premised on a narrow reading of Schacherer" (Dkt. 69 ¶¶ 132, 328) and the Examiner would have necessarily "viewed the teachings of Schacherer differently" (_id._ ¶¶ 132, 328) based on the Board's analysis.  But the Board's refusal to institute review of the '161 and '938 Patents—notwithstanding its consideration of the IPR Final Written Decision—proves the exact opposite.  Hunting is not the subjective arbiter of patentability and it cannot distort the prosecution record to create patentability issues where there are none.

The Court of Appeals for the Federal Circuit has repeatedly denounced claims for inequitable conduct as a "plague" and a "common litigation tactic" that "is cluttering up the patent system."  _Therasense, Inc. v. Becton, Dickinson & Co._, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citations omitted); _see also Kimberly-Clark Corp. v. Johnson & Johnson_, 745 F.2d 1437, 1454 (Fed. Cir. 1984) (internal quotations omitted) ("Fraud in the PTO has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system."); _Burlington Indus., Inc. v. Dayco Corp._, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.  Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps.").  At bottom, the Board's

---

[2] U.S. Patent No. 9,581,422 (the "'422 Patent").

interpretation of Schacherer in the IPR Final Written Decision cannot meet the requirement for but-for materiality to the patentability of the '161 and '938 Patents as a matter of law.  For at least this reason, Hunting's Affirmative Defense and Counterclaim for inequitable conduct, which is nothing more than the dreaded "plague" on our patent system, must be stricken and dismissed with prejudice.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On January 30, 2020, DynaEnergetics filed a lawsuit against Hunting in the Western District of Texas alleging infringement of its '161 and '938 Patents by Hunting's H-1 Perforating Gun System.  *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. 6:20-cv-00069. DynaEnergetics filed an Amended Complaint on March 23, 2020 and Hunting moved to transfer venue to this District on April 7, 2020, which the Court granted.  DynaEnergetics filed a Second Amended Complaint on August 27, 2021 (Dkt. 63) alleging infringement of the '161 and '938 Patents.  The '161 Patent and the '938 Patent claim priority to the same application but protect patentably distinct inventions.  *See* Dkts. 63-1, 63-2.  On September 10, 2021, Hunting answered the Second Amended Complaint, including by filing its Fifth Affirmative Defense and Third Counterclaim alleging inequitable conduct with respect to the '161 and '938 Patents.  Dkt. 69. DynaEnergetics hereby moves to dismiss and/or strike Hunting's inequitable conduct claims.

## III.    FACTUAL BACKGROUND

Hunting's Fifth Affirmative Defense and Third Counterclaim are virtually identical and both allege the Patents-in-Suit are unenforceable due to inequitable conduct.  *See* Dkt. 69 ¶¶ 55-218, 250-414.  The alleged inequitable conduct is premised on nondisclosure of "key piece[s] of prior art in IPR2018-00600" including U.S. Patent No. 9,689,223 (Schacherer) and U.S. Patent No. 9,080,433 (Lanclos) asserted during the IPR (*id.* ¶¶ 103, 105, 299, 301) and "prior art, arguments, and substantive decisions in IPR2018-00600"—in particular, the Final Written

Decision regarding the '422 Patent (*id.* ¶¶ 113, 309).   As explained below, the referenced material was either disclosed or, in the case of the Final Written Decision, immaterial.

### A.  The '422 Patent

On February 16, 2018, Hunting filed a Petition seeking *inter partes* review of the '422 Patent in IPR2018-00600 ("the '422 IPR").  The '422 Patent is also assigned to DynaEnergetics but belongs to a different patent family, has a different specification, and claims patentably distinct inventions from the Patents-in-Suit.  The PTAB instituted the '422 IPR on August 21, 2018 and issued its Final Written Decision finding the original and proposed amended claims unpatentable on August 20, 2019.  Dkt. 69 ¶¶ 107-08, 114-15, 303-04, 310-11.

On July 6, 2020, the POP issued its fourth-ever decision and unanimously confirmed the patentability of all of DynaEnergetics' proposed amended claims of the '422 Patent, thereby vacating the IPR Final Written Decision as to DynaEnergetics' motion to amend.  Exhibit A, *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, IPR2018-00600, Paper 67 (PTAB July 6, 2020).  DynaEnergetics has appealed the PTAB's finding in the IPR Final Written Decision that the original claims of the '422 Patent were unpatentable; Hunting Titan has appealed the POP's decision in the same proceeding.  *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, Nos. 2020-2163, 2020-2191.[3]

### B.  The "Key" Prior Art Was Cited During Prosecution of the '161 Patent, and the IPR Final Written Decision is Immaterial to Key Limitations of the '161 Patent.

The '161 Patent issued from Application No. 15/617,344, filed June 8, 2017.  Dkt. 69 ¶¶ 56, 252.   During prosecution, on March 14, 2018, DynaEnergetics submitted an IDS disclosing U.S. Publication 2012/0247769 ("Schacherer publication"), the publication of the

---

[3] Hunting's failure to acknowledge the POP decision vacating in part the Final Written Decision or the parties' appeal of those decisions to the Federal Circuit—both of which are undisputed, material facts—in its Affirmative Defense and Counterclaim is intentionally misleading and inexcusable.

application leading to Schacherer. *Id.* ¶¶ 57, 59, 253, 255. DynaEnergetics received a Notice of Allowance on March 25, 2019, and the '161 Patent issued on October 1, 2019, identifying the Schacherer publication as one of the References Cited. *Id.* ¶¶ 65, 261; Dkt. 63-1 at 3. In an interview conducted with the Examiner on April 9, 2019, the Examiner confirmed that "all IDSs have been considered." Ex. B, April 16, 2019 Comments on Notice of Allowance, at 7. Tellingly, the elements highlighted by Hunting in its most recent iteration of an inequitable conduct defense and counterclaim were <u>never</u> at issue with respect to patentability during prosecution of the '161 Patent. *See* Dkt 26-2, 1/23/2019 Office Action (the Examiner's only office action during prosecution). For example, no patentability issues were raised with respect to the routine claim terms related to the "gun carrier" nor are those terms "structurally or functionally equivalent" to a claim reciting "entirely within the perforating gun housing." Dkt. 69 ¶¶ 148-49, 344-45.[4] Similarly, the additional limitations cited by Hunting—"a first connector," "the first connector positioned in the gun carrier," and "at least one second connector positioned in the gun carrier"—were never at issue with respect to patentability during prosecution of the '161 Patent and are not structurally or functionally equivalent to elements in the '422 Patent. *Id.* ¶¶ 153, 155, 349, 351. Finally, the '161 Patent does not recite limitations for "a shell configured for housing components of the detonator assembly," "an electrically contactable line-in portion, an electrically-contactable line-out portion and an electrically contactable ground portion" or "an insulator positioned between the line-in portion and the line-out portion" that were at issue in the IPR Final Written Decision.

---

[4] Hunting misleads this Court by alleging that "Plaintiffs argued in the IPR that their amended claims were patentable based on an 'entirely within the perforating gun housing' limitation, an argument the PTAB rejected in the Final Written Decision" and which limitation is "inherent in '161 Patent Claim 20." Hunting knows full well that the POP reversed the panel and found that all of DynaEnergetics' proposed amended claims were patentable, including the "entirely within the perforating gun housing" limitation. Dkt. 69 ¶ 352.

C.  **The IPR Materials and "Key" Prior Art Were Cited During Prosecution, and the IPR Final Written Decision is Immaterial to Key Limitations of the '938 Patent.**

The '938 Patent issued from Application No. 16/359,540, filed March 20, 2019 with an IDS disclosing, among other references, _both Schacherer and Lanclos_.  Dkt. 26-3, 3/20/19 IDS, at 4, 9-10; Dkt. 69 ¶¶ 73-75, 269-71.  Shortly thereafter, on March 25, 2019 (before the Final Written Decision was issued), DynaEnergetics disclosed the following materials from the '422 IPR: Hunting's IPR Petition (which cited, among other references, Schacherer and Lanclos), DynaEnergetics' Patent Owner Response, DynaEnergetics' Motion to Amend, and the PTAB Institution Decision.  Dkt. 26-4, 3/25/19 IDS, at 4; Dkt. 69 ¶¶ 76-77, 272-73.  Thus, Schacherer, Lanclos, and the IPR materials were before the Examiner from the very beginning of prosecution.

On May 3, 2019, the Examiner issued an Office Action indicating that dependent claims 6 and 17 of the application would be allowable if rewritten in independent form, reasoning:

> Regarding claim 6 [an apparatus claim], the prior art fails to anticipate or make obvious (in the context of the pertinent claims) wherein at least a portion of the bulkhead is contained within a tandem seal adapter, and the wireless ground portion is in wireless electrical contact with the tandem seal adapter. Schacherer is considered to [_sic_] most relevant known prior art who discloses a bulkhead 84 that is contained within an outer housing 26 of the perforating gun and there is no disclosure of the outer housing 26 in electrical contact with the wireless ground portion 46.

> Regarding claim 17 [a method claim], the prior art fails to anticipate or make obvious (in the context of the pertinent claims) performing steps (a), (c), and (d) is performed before transporting the perforation gun system, and step (b) is performed at the wellbore site. Schacherer is considered to [_sic_] most relevant known prior art who discloses performing the claimed steps (including step (b)) prior to transporting to the wellbore site (3:45-58).

Dkt. 26-5, 5/3/19 Non-Final Rejection, at 11 (emphasis added).  The Examiner had applied Schacherer to the claims as filed and had found that _Schacherer did not disclose the allowable subject matter_.  _Id._  DynaEnergetics amended the claims (accepting the Examiner's finding that

dependent claims would be allowable if rewritten in independent form) and received a Notice of Allowance on September 11, 2019, and the '938 Patent issued on November 12, 2019.  Dkt. 69 ¶¶ 87, 283.  The extensive References Cited on the face of the '938 Patent include Schacherer, Lanclos, and the IPR materials submitted by DynaEnergetics in March 2019.  Dkt. 63-2 at 3-4. The "wireless ground portion [] in wireless electrical contact with the tandem seal adapter" limitation—which was expressly cited as distinguishing  the '938 Patent claims over Schacherer —is not arguably related to any of Hunting's allegations regarding the particular limitations addressed in the IPR Final Written Decision (e.g., "entirely within the perforating gun housing," "a shell configured for housing components of the detonator assembly," "electrical contact components" having a "line-in," "lineout," and "ground portions," and an "insulator").  Dkt. 69 ¶¶ 120-23, 316-19.  In fact, the '422 Patent does not even claim a tandem seal adapter or an electrical connection between a ground portion and any other component, and the IPR Final Written Decision does not include even a single cite identifying where in Schacherer the '422 Patent's claimed "ground portion" is allegedly disclosed, much less any purported interpretation of the "ground portion."  Dkt. 69-1 at 10 (citing only to Hunting's Petition).  Hunting fails to acknowledge, however, that its arguments regarding Schacherer's supposed teachings of a ground portion—arguments Hunting contends the '938 Patent Examiner would have understood only in light of the IPR Final Written Decision (Dkt. 69 ¶¶ 128-29, 324-25)—were in the Petition that was before the '938 Patent Examiner from nearly the application filing date.  *See* Dkt. 69-2 at 47 ("Schacherer also teaches that the rotary electrical connectors 48 and 46 . . . each have two electrical contacts . . . [t]he contacts on rotary electrical connection 48 correspond to a signal out line and a ground line").

### D. The '161 and '938 Post Grant Review Petitions and Decisions Denying Institution.

While the parties were awaiting a decision from the POP, Hunting filed two petitions for post grant review ("PGR") of the Patents-in-Suit on June 30, 2020 ('161 Patent) and August 12, 2020 ('938 Patent).  The '161 Patent PGR asserted invalidity based on US 2012/0247771 A1 to Black, U.S. Patent No. 4,744,424 to Lenderman, Schacherer, and U.S. Patent No. 5,241,891 to Hayes.  The '938 Patent PGR asserted invalidity based on Black, Lenderman, Schacherer, a 2008 Schlumberger Catalog, US 2016/0084048 A1 to Harrigan, a Schlumberger presentation "EWAPS," US 2015/0330192 A1 to Rogman, Lanclos, and US 2008/0149338 A1 to Goodman. In each petition, Hunting argued that Schacherer taught nearly all claim elements of the challenged patent.

The PTAB denied institution of both petitions on January 19, 2021 and February 12, 2021, respectively.  Exhibit C, *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, PGR2020-00072, Paper 7 (PTAB Jan. 19, 2021); Exhibit D, *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, PGR2020-00080, Paper 7 (PTAB Feb. 12, 2021).[5]  In denying the '161 PGR Petition, the PTAB expressly rejected Hunting's argument that Schacherer invalidated the asserted claims, finding it did not disclose at least one directional locking fin as recited in claims 1-3, 7, and 13-15 or a rotational coupling as recited in claims 2, 3, 8, 9, and 12-15.  Exhibit C at 33-34.  The PTAB further concluded that "the vast majority of the grounds of unpatentability proposed by Petitioner are deficient" and declined to institute on any ground.  *Id.* at 36.  The PTAB in the '938 PGR Petition (consisting of the same panel of judges as in the '161 PGR) did not reach

---

[5] In a further attempt to mislead the Court, Hunting fails to even acknowledge the petitions for post grant review it filed against the '161 and '938 Patents and the Board's denial of institution of both petitions in its Affirmative Defense and Counterclaim.

Hunting's arguments on the merits, instead finding that institution was not warranted based on the "voluminous and excessive possible grounds" presented in the petition. Exhibit D at 13.

## IV.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The issues to be decided by the Court are whether Hunting has, in either its affirmative defense or counterclaim, (1) stated a plausible claim for inequitable conduct, or (2) met the heightened pleading standard to state a claim for inequitable conduct. It has not. The standard of review under Rule 12(b)(6) is *de novo*. *Nano-Proprietary Inc. v. Canon, Inc.*, 537 F.3d 394, 399 (5th Cir. 2008). The standard of review under Rule 12(f) is abuse of discretion. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

## V.     LEGAL STANDARDS

"[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague" on "not only the courts but also the entire patent system." *Therasense*, 649 F.3d at 1289 (internal quotations and citations omitted). In an effort to curb the abusive use of this defense, the Federal Circuit has raised the bar for (1) *proving* inequitable conduct, *id.* at 1290; and (2) *pleading* inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

To *prove* inequitable conduct, a defendant must show that (1) the patentee either made a material misrepresentation or withheld material information from the PTO, (2) the patentee knew of the falsity of its representation or the materiality of the information withheld, and (3) the patentee did so with the specific intent to deceive the PTO. *Id.* at 1327; *Therasense*, 649 F.3d 1290. The materiality required to establish inequitable conduct is "but-for materiality," that is, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291. The specific intent to deceive must be

"the single most reasonable inference able to be drawn from the evidence." *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F. 3d 1357, 1366 (Fed. Cir. 2008) (citations omitted).

To *plead* inequitable conduct, a defendant must meet the heightened pleading standards of Rule 9(b). *Exergen*, 575 F.3d at 1327 (affirming denial of motion for leave to allege inequitable conduct). An inequitable conduct pleading must detail the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1326-27. An inequitable conduct pleading must further allege facts showing but-for materiality. *See* Ex. 26-6, *Affinity Labs of TX, LLC v. Netflix, Inc.*, No. 15-cv-849-RP, Dkt. 44 at 7 (W.D. Tex. Aug. 22, 2016) (granting motion to dismiss where defendant "failed to properly allege but-for materiality") (emphasis added); Ex. E, *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *3 (E.D. Tex. Dec. 13, 2011) (noting that "a pleading that does not show but-for materiality . . . would be [*sic*] not survive the pleading stage"). Regarding intent, the pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

In reviewing a Rule 12(b)(6) motion, the court must determine whether a party has stated a legally cognizable claim when all well-pleaded facts are (1) assumed true and (2) are viewed in a light most favorable to the complainant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A motion to strike may . . . be granted when a defense that is subject to the heightened pleading standard of Rule 9(b) fails to meet Rule 9(b)'s requirements." Ex. F, *Cabin Foods, LLC v. Rich Prods. Corp.*, No. EP-11-CV-

318-KC, 2012 WL 433115, at *2 (W.D. Tex. Feb. 8, 2012).  Pursuant to Rule 12(f), a court "may strike from a pleading an insufficient defense."  Fed. R. Civ. P. 12(f).  As set forth below, Defendant's allegations of inequitable conduct fail to set forth sufficient bases for the "but-for" materiality element of inequitable conduct.  Thus, Defendant's inequitable conduct claim should be dismissed and its affirmative defense stricken, "lest inequitable conduct devolve into 'a magic incantation to be asserted against every patentee.'"  *Exergen*, 575 F.3d at 1331 (quoting *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)).

## VI.   ARGUMENT

Hunting's allegations arise from DynaEnergetics' alleged failure to cite the Final Written Decision in IPR2018-00600 during prosecution of the applications that resulted in the '161 and '938 Patents. Hunting cannot establish that the Board's *interpretation* of Schacherer in that decision—which is not prior art at all—is *but-for* material to the patentability of the '161 and '938 Patents, and, as a result, its inequitable conduct affirmative defense and counterclaim fail as a matter of law.[6]

### A.   The PTAB Expressly Rejected Hunting's Arguments in its PGR Petitions that Schacherer Invalidated the '161 and '938 Patents.

Because Hunting cannot argue that DynaEnergetics withheld any material prior art reference from the Examiner, it resorts to alleging that the PTAB's *interpretation* of Schacherer in the IPR Final Written Decision finding the original claims of the '422 Patent (which is from a different patent family and is significantly different in scope than the '161 and '938 Patents)

---

[6] Hunting fails to plead any of the required elements for inequitable conduct based on any alleged misrepresentation or omission regarding Lanclos.  Specifically, Hunting does not explain how Lanclos is "but for" material to the patentability of the '161 or '938 Patents or what material misrepresentation or omission regarding Lanclos was committed before the PTO.  For at least this reason, Hunting's allegations regarding Lanclos should be dismissed and stricken.  Further, Hunting fails to plead any of the required elements for inequitable conduct based on any alleged failure to disclose the Petitioner's Reply, Petitioner's Opposition to Motion to Amend, Petitioner's Sur-Reply on the Motion to Amend and the Transcript of the Oral Hearing, including identifying how those documents are but-for material to patentability. For at least this reason, Hunting's affirmative defense and counterclaim for all IPR materials other than the Final Written Decision should be dismissed and stricken.

unpatentable is but-for material to the patentability of the '161 and '938 Patents.  Not only is the IPR Final Written Decision *not prior art*, but when faced with argument from Hunting in the PGR petitions applying the *exact same reference* (Schacherer) in a similar manner to the '161 and '938 Patents, the PTAB found Hunting's arguments unpersuasive and *declined to institute review*.

Like in the '422 IPR Petition, in its PGR petitions, Hunting identified Schacherer as one of the primary references purportedly invalidating the '161 and '938 Patents and argued that Schacherer anticipated nearly every claim element in both patents.  Of course, Schacherer is an actual prior art reference while the IPR Final Written Decision is not.  Nevertheless, Hunting submitted the IPR Final Written Decision as an exhibit (Ex. 1010) with both petitions and referenced the Board's finding that the '422 Patent was anticipated by Schacherer in the '938 Petition (*Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, PGR2020-00080, Paper 1 at 6 (PTAB Aug. 12, 2020)).  Hunting had an opportunity in its petitions for post grant review of the '161 and '938 Patents to argue that the Board's interpretation of Schacherer in the IPR Final Written Decision supported its claim that the '161 and '938 Patents are unpatentable—which one would expect it to do if the IPR Final Written Decision is at all material—but it did not do so. To the contrary, in arguing that the Examiner overlooked the teachings of Schacherer with respect to the "wireless ground portion is in wireless electrical contact with the tandem seal adapter" feature, Hunting never once cited or relied on the IPR Final Written Decision or identified any interpretation of Schacherer that the Board offered.  *Id.* at 9.

In its decision denying institution of the '161 Patent, the PTAB expressly found that Schacherer did not disclose at least two claim elements—"at least one directional locking fin" required by claims 1 and 13 and a "rotational coupling" as required by claims 9, 14, and 15.  Ex.

C at 33-34.  In its decision denying institution of the '938 PGR, the same panel of judges found

that, "irrespective of whether there may be a potentially credible ground of unpatentability,"

there was no basis to institute review in light of the "voluminous and excessive possible

grounds" presented by Hunting. Ex. D at 13.  Notably, in making such a determination, the

PTAB had the benefit of the IPR Final Written Decision <u>and</u> the POP's ruling overturning that

decision in part, both of which were expressly cited by the parties during the PGR proceedings.

Indeed, the Board *<u>explicitly referenced</u>* the '422 IPR proceedings including Petitioner's

opposition to the motion to amend and the POP decision in its decision denying institution of the

'938 PGR. *Id.* at 12.

In short, the PTAB *<u>directly considered</u>* Hunting's arguments that Schacherer disclosed

nearly all elements of the '161 and '938 Patents *<u>with the benefit</u>* of the IPR Final Written

Decision, and *<u>still</u>* found no basis to institute review or find the claims of either patent

unpatentable.  The fact that the PTAB considered and rejected Hunting's invalidity arguments

*<u>based on the same reference</u>* asserted in the '422 IPR while in possession of the Board's

interpretation of that reference in the IPR Final Written Decision prevents a finding that the Final

Written Decision is but-for material to the patentability of the '161 and '938 Patents as a matter

of law.  For example, in *Cal. Inst. of Tech. v. Broadcom Ltd.*, the Court explained that

counterclaims for inequitable conduct based on prior art references must be dismissed under

similar circumstances:

> The disputed issue is whether the Patent Office would have found the omitted
> references but-for material to the patentability of the Asserted Patents.
> The Patent Office had a later opportunity to consider two of those exact references,
> and concluded that the claims were not invalid based on a combination of those
> references with other prior art.

Ex. G, No. CV 16-3714-GW (AGRx), 2019 WL 8807748, at *6-7, n.7 (C.D. Cal. July 1, 2019).

Hunting simply cannot explain *how* the IPR Final Written Decision would have led the Examiner to reach a different conclusion regarding the patentability of the '161 and '938 Patents when the Boards reviewing Hunting's petitions for PGR of those patents found no basis to institute review or even address the Board's interpretation of Schacherer in the IPR Final Written Decision.  Because Hunting fails to demonstrate the requisite but-for materiality to support its assertion of inequitable conduct, its counterclaim must be dismissed and affirmative defense stricken.  *See Ironburg Inventions Ltd. v. Valve Corp.*, 418 F. Supp. 3d 622, 632-633 (W.D. Wash. 2019) (granting motion for summary judgment and motion to strike affirmative defense and counterclaim for inequitable conduct based on failure to disclose reference which was considered by PTO during inter partes review and for which institution was denied).

### B. The IPR Final Written Decision Is Not But-For Material to the Limitations of the '161 and '938 Patents.

Even if the Board had not dismissed Hunting's argument that Schacherer invalidated the '161 and '938 Patents in its PGR petitions (which it did), the only allegations purporting to support but-for materiality with respect to the '161 Patent is Hunting's statement that the IPR Final Written Decision discussed Schacherer's teachings regarding components "entirely within the perforating gun housing."[7] Hunting asserts this discussion is supposedly material to the '161 Patent claim terms "a gun carrier," "within the gun carrier," "in the gun carrier," and "in the perforating gun system" and that the Board in the IPR Final Written Decision found the prior art taught components in the housing including a detonator, a detonating cord, and one or more charges.  Dkt. 69 ¶¶ 148, 155, 344, 351.  But, as explained above, the Examiner already considered the Schacherer publication during prosecution of the '161 Patent and allowed the

---

[7] Hunting does not explain why the Examiner prosecuting the '161 Patent would have found the Board's discussion of Schacherer teaching "entirely within the perforating gun housing" in the IPR Final Written Decision material to patentability when even the POP was not convinced that Schacherer disclosed that feature. Ex. A at 21 ("[I]t is not clear that Schacherer discloses a detonator assembly contained entirely within the perforating gun housing").

'161 Patent to issue, including finding the '161 Patent claims to be patentable over Schacherer. In fact, the claim terms identified by Hunting were <u>never</u> at issue with respect to patentability during prosecution of the '161 Patent.  Hunting's conclusory allegations with respect to these claim elements of the '161 Patent are insufficient to serve as a foundation for but-for materiality.

Hunting's allegations supporting materiality with respect to the '938 Patent fare no better. Specifically, Hunting's allegations omit any discussion of <u>*how*</u> particular claim limitations addressed in the IPR Final Written Decision (e.g., "entirely within the perforating gun housing," "a shell configured for housing components of the detonator assembly," "electrical contact components" having a "line-in," "lineout," and "ground portions," and an "insulator") are but-for material to the patentability of the '938 Patent claims, instead merely stating in a conclusory fashion that they are.  *See* Dkt. 69 ¶¶ 120-23, 316-19.  Even assuming, *arguendo*, that the '938 Patent's claimed "wireless ground portion [] in wireless electrical contact with the tandem seal adapter" limitation somehow implicates the '422 Patent's claimed "ground portion"—despite the additional requirements in the '938 Patent for a tandem seal adapter and electrical contact between the two—the IPR Final Written Decision offered no analysis or interpretation for the claimed "ground portion" that would have affected the Examiner's determination of patentability.  Accordingly, none of Hunting's allegations (limited to other claim elements of the '938 Patent) would have created a *prima facie* case of unpatentability of the '938 Patent.

Moreover, Hunting cannot demonstrate that the '422 IPR Final Written Decision was but-for material when DynaEnergetics had already disclosed to the Examiner other materials from the IPR, including the "key piece[s] of prior art in IPR2018-0000," Schacherer, and Lanclos, as well as the Petition.  Indeed, it is undisputed from the face of the '938 Patent that the PTO (1) knew about the IPR proceeding; (2) considered both Schacherer and Lanclos; and

(3) considered Hunting's IPR Petition, DynaEnergetics' Patent Owner Response, DynaEnergetics' Motion to Amend, and the PTAB Institution Decision, which constitute interpretation of the teachings of Schacherer and Lanclos.  In fact, the entire IPR proceeding and record was readily available to the Examiner.  In essence, Hunting is alleging that although DynaEnergetics submitted the "key" prior art as well as the parties' arguments regarding the same and the PTAB's Institution Decision, the Examiner would not have issued the '938 Patent (unrelated to the '422 Patent) had DynaEnergetics submitted the PTAB's Final Written Decision. It is undisputed, however, that the Examiner had before him (1) Schacherer, (2) Lanclos, and (3) Hunting's arguments regarding the same.  That the Examiner found the claims of the '938 Patent patentable over such evidence overwhelmingly demonstrates that the PTAB's interpretation of that <u>same evidence</u> in the Final Written Decision is not but-for material as a matter of law and, as a result, Hunting's inequitable conduct allegations should be dismissed and stricken.  *See* Dkt. 26-6, *Affinity Labs of TX*, Dkt. 44 at 5-7; *see also* Ex. H, *Polaris Indus. v. Arctic Cat, Inc.*, No. 14-3412 (JRT/FLN), 2015 WL 4636544, at \*5-7 (D. Minn. Aug. 4, 2015) (dismissing inequitable conduct allegations based on IPR petition because underlying prior art at issue in IPR was in front of examiner during prosecution).

## VII.   CONCLUSION

For the foregoing reasons, Defendant's inequitable conduct counterclaim and affirmative defense are insufficient as a matter of law.  DynaEnergetics respectfully requests that the Court dismiss the Third Counterclaim and strike the Fifth Affirmative Defense of Defendant's Answer and Counterclaim (Dkt. 69) with prejudice.

Dated: September 24, 2021

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Barry J. Herman*
Barry J. Herman (*pro hac vice*)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com

*Attorney-in-Charge for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

OF COUNSEL:

WOMBLE BOND DICKINSON (US) LLP
Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice*)
Georgia Bar No. 874494
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Telephone: (404) 962-7538
Email: Christine.Dupriest@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Ana J. Friedman (*pro hac vice*)
North Carolina Bar No. 53117
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 747-6622
Email: Ana.Friedman@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Julie Giardina (*pro hac vice*)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5800
Email: Julie.Giardina@wbd-us.com

17

MOYLES IP, LLC
Lisa J. Moyles (*pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice*)
New York Bar No. 4450953
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

RUSTY HARDIN & ASSOCIATES, LLP
Megan C. Moore
Federal Bar No. 963966
Texas Bar No. 24054322
Terry D. Kernell
Texas Bar No. 11339020
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: mmoore@rustyhardin.com

*Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record through the Court's CM/ECF service on this 24th day of September, 2021.

 */s/ Megan C. Moore*
Megan C. Moore