**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HUNTING TITAN INC. <br> Defendant. | Civil Action No: 4:20-cv-02123 |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING, AND IN THE ALTERNATIVE, DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH RESPECT TO ITS CLAIMS OF WILLFUL AND INDIRECT INFRINGEMENT</u>**

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | *Positive Techs. Inc. v. LG Display Co.*, No. 2:07 CV 67, 2008 WL 4425372 (E.D. Tex. Sept. 24, 2008) |
| B | *Lincoln Imps., Ltd. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 11393095 (S.D. Tex. July 16, 2008) |
| C | *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP, 2020 WL 6496425 (E.D. Tex. Aug. 10, 2020) |
| D | *ZitoVault, LLC v. IBM*, No. 3:16-cv-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) |
| E | *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, Nos. 2:16-cv-1032-JRG2017, 2:16-cv-1072-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) |
| F | Patent Assignment, U.S. Patent App. No. 16/359,540, bearing Bates Nos. DYNA_00003703-08 |
| G | Patent Assignment, U.S. Patent Nos. 10,429,161 and 10,472,938, bearing Bates Nos. DYNA_00003709-32 |
| H | Patent Assignment, U.S. Patent App. No. 16/359,540, bearing Bates Nos. DYNA_00003733-35 |
| I | Patent Assignment, U.S. Patent App. No. 16/359,540, bearing Bates Nos. DYNA_00003736-37 |
| J | Patent Assignment, U.S. Patent App. No. 16/359,540, bearing Bates Nos. DYNA_00003738-40 |
| K | Patent Assignment, U.S. Patent App. Nos. 14/907,788, 15/287,309, 15/617,344, 15/9820,800, 15/920,812, 16/359,540, 16/585,790, and 16/809,729, bearing Bates Nos. DYNA_00003152-55 |
| L | *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 2460985 (E.D. Tex. Aug. 10, 2009 |
| M | *Hockerson-Halberstadt, Inc. v. New Balance Athletic Shoe Inc.*, No. 08-4131, 2009 WL 10679734 (E.D. La. June 4, 2009) |
| N | *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 WL 8894682 (E.D. Tex. June 4, 2008) |
| O | *I & I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:18-cv-03254-M, 2019 WL 7838077 (N.D. Tex. Sept. 13, 2019) |
| P | *Southwest eFuel Network, L.L.C. v. Transaction Tacking Techs. Inc.*, No. 2:07-cv-311-TJW, 2009 WL 4730464 (E.D. Tex. Dec. 7, 2009) |
| Q | *Houston Home Dialysis v. Blue Cross & Blue Shield of Texas*, No. H-17-2095, 2018 WL 5249996 (S.D. Tex. Oct. 22, 2018) |
| R | *Mobilemedia Ideas, LLC v. Rsch. in Motion Ltd.*, No. 3:11-CV-2353-N, 2013 WL 12124319 (N.D. Tex. June 18, 2013) |
| S | *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-cv-173, 2012 WL 12903081 (E.D. Tex. May 14, 2012) |
| T | *Salazar v. HTC Corp.*, No.2:16-CV-01096-JRG-RSP, 2018 WL 1310007 (E.D. Tex. Feb. 14, 2018) |

| Exhibit | Description |
|---------|-------------|
| U | *3D Sys., Inc. v. Formlabs, Inc.,* No. 13 Civ. 7973, 2014 WL 1904364 (S.D.N.Y. May 12, 2014) |
| V | *Novatel Wireless, Inc. v. Franklin Wireless Corp.,* No. 10cv2530-CAB (JMA), 2012 WL 12845615 (S.D. Cal. July 19, 2012) |
| W | *Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prods.,* Inc., 2014 WL 12775193 (M.D. Tenn. July 2, 2014) |
| X | *YETI Coolers, LLC v. RTIC Coolers, LLC,* No. 1:15-CV-00597-RP, 2016 WL 5956081 (W.D. Tex. Aug. 1, 2016) |
| Y | *InMotion Imagery Techs. v. Brain Damage Films,* No. 2:11-CV-414-JRG, 2012 WL 3283371 (E.D. Tex.  Aug. 10, 2012) |
| Z | *Pat. Harbor, LLC v. DreamWorks Animation SKG, Inc.,* No. 6:11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012) |
| AA | *Achates Reference Publ'g, Inc. v. Symantec Corp.,* No. 2:11-CV-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) |
| BB | *Intellect Wireless, Inc. v. Sharp Corp.,* No. 10 C 6763, 2012 WL 787051, at *11 (N.D. Ill. Mar. 9, 2012) |
| CC | *Apple Comput., Inc. v. Unova, Inc.,* No. Civ.A. 03-101-JJF, 2003 WL 22928034 (D. Del. Nov. 25, 2003) |
| DD | *Google Inc. v. Beneficial Innovations, Inc.,* No. 2:11-cv-00229, 2014 WL 4215402 (E.D. Tex. Aug. 21, 2014) |
| EE | *BioMérieux, S.A. v. Hologic, Inc.,* No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018) |
| FF | *M & C Innovations, LLC v. Igloo Prods. Corp.,* No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) |
| GG | *Igloo Prods.,* No. 4:17-CV-2372, Dkt. 28, First Amended Complaint |

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY OF ARGUMENT ................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................3

III.    FACTUAL BACKGROUND ...............................................................................4

       A.     Facts Relevant to Defendant's Standing Arguments .................................4

       B.     Facts Relevant to Defendant's Indirect Infringement and Willfulness Arguments ...............................................................................................4

IV.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ................6

V.     ARGUMENT ........................................................................................................6

       A.     Legal Standards .........................................................................................6

       B.     Defendant's Motion to Dismiss for Lack of Standing Should Be Denied................8

       C.     Defendant's Motion to Dismiss the Indirect and Willful Infringement Claims Should Also Be Denied.......................................................................11

VI.    CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*3D Sys., Inc. v. Formlabs, Inc.*,
No. 13 Civ. 7973, 2014 WL 1904364 (S.D.N.Y. May 12, 2014) ............................................ 11

*Abbott Labs. v. Diamedix Corp.*,
47 F.3d 1128 (Fed. Cir. 1995) ................................................................................................. 8

*Achates Reference Publ'g, Inc. v. Symantec Corp.*,
No. 2:11-CV-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) ............................ 12

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
No. 2:07-cv-468, 2009 WL 2460985 (E.D. Tex. Aug. 10, 2009) ............................................ 11

*Advanced Tech. Incubator, Inc., v. Sharp Corp.*,
No. 2:07-cv-468,  2009 WL 2460985 (E.D. Tex. Aug. 10, 2009) ............................................ 9

*Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prods., Inc.*,
2014 WL 12775193 (M.D. Tenn. July 2, 2014) ...................................................................... 12

*Apeldyn Corp. v. Sony Corp.*,
852 F. Supp. 2d 568 (D. Del. 2012) ................................................................................. 12, 13

*Apple Comput., Inc. v. Unova, Inc.*,
No. Civ.A. 03-101-JJF, 2003 WL 22928034 (D. Del. Nov. 25, 2003) .................................... 12

*Ashcroft v. Iqbal*,
129 S. Ct. 1937, 556 U.S. 662 (2009) ..................................................................................... 7

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) ............................................................................................. 14

*Baker v. Carr*,
82 S. Ct. 691, 369 U.S. 186 (1962) ......................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955, 550 U.S. 544 (2007) ..................................................................................... 7

*BioMérieux, S.A. v. Hologic, Inc.*,
No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018) .............................................. 14

*Bushnell, Inc. v. Brunton Co.*,
659 F. Supp. 2d 1150 (D. Kan. 2009) .................................................................................... 10

*Canon, Inc. v. Avigilon USA Corp.*,
411 F. Supp. 3d 162 (D. Mass. 2019) ................................................................................... 14

*Cell Sci. Sys. Corp. v. Louisiana Health Serv.*,
804 Fed. App'x. 260 (5th Cir. 2020) ........................................................................................ 6

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998) ........................................................................ 8, 9

*Estech Sys., Inc. v. Target Corp.*,
  No. 2:20-cv-00123-JRG-RSP, 2020 WL 6496425 (E.D. Tex. Aug. 10, 2020) ........................ 2

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
  93 F.3d 774 (Fed. Cir. 1996) ........................................................................ 8, 9

*Google Inc. v. Beneficial Innovations, Inc.*,
  No. 2:11-cv-00229, 2014 WL 4215402 (E.D. Tex. Aug. 21, 2014) ....................................... 14

*Haskett v. T.S. Dudley Land Co.*,
  648 Fed. App'x. 492 (5th Cir. 2016) ..................................................................... 7

*Hein v. Freedom Religion Found., Inc.*,
  127 S. Ct. 2553 551 U.S. 587 (2007) ................................................................... 10

*Hockerson-Halberstadt, Inc. v. New Balance Athletic Shoe Inc.*,
  No. 08-4131, 2009 WL 10679734 (E.D. La. June 4, 2009) .......................................... 9

*Houston Home Dialysis v. Blue Cross & Blue Shield of Texas*,
  No. H-17-2095, 2018 WL 5249996 (S.D. Tex. Oct. 22, 2018) ............................................ 10

*I & I Hair Corp. v. Beauty Plus Trading Co.*,
  No. 3:18-cv-03254-M, 2019 WL 7838077 (N.D. Tex. Sept. 13, 2019) ................................... 9

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ........................................................................ 7, 13

*InMotion Imagery Techs. v. Brain Damage Films*, No.
  2:11-CV-414-JRG, 2012 WL 3283371 (E.D. Tex.  Aug. 10, 2012) ........................................ 12

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001) ........................................................................ 8, 9

*Intellect Wireless, Inc., v. Sharp Corp.*,
  No. 10 C 6763, 2012 WL 787051 (N.D. Ill. Mar 9, 2012) ................................................. 13

*Lincoln Imps., Ltd. v. Santa's Best Craft, Ltd.*,
  No. H-07-2803, 2008 WL 11393095 (S.D. Tex. July 16, 2008) ......................................... 1, 10

*Lujan v. Defs. of Wildlife*,
  112 S. Ct. 2130 (1992) ..................................................................................... 7

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
  No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ........................................ 15

*Mallinckrodt Inc. v. E-Z-EM Inc.*,
  671 F. Supp. 2d 563 (D. Del. 2009) ..................................................................... 12

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
  240 F.3d 1016 (Fed. Cir. 2001) ........................................................................... 7

v

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  125 S. Ct. 2764, 545 U.S. 913 (2005) ................................................................ 14

*Mobilemedia Ideas, LLC v. Rsch. in Motion Ltd.,*
  No. 3:11-CV-2353-N, 2013 WL 12124319 (N.D. Tex. June 18, 2013) .................... 10

*Morrow v. Microsoft Corp.,*
  499 F.3d 1332 (Fed. Cir. 2007) ..................................................................... 7, 10

*Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.,*
  No. 6:11-cv-173, 2012 WL 12903081 (E.D. Tex. May 14, 2012) ............................ 10

*Nano-Proprietary, Inc. v. Canon, Inc.,*
  537 F.3d 394 (5th Cir. 2008) ................................................................................ 6

*Novatel Wireless, Inc. v. Franklin Wireless Corp.,*
  No. 10cv2530-CAB (JMA), 2012 WL 12845615 (S.D. Cal. July 19, 2012) ............ 11

*Oracle Corp. v. DrugLogic, Inc.,*
  807 F. Supp. 2d 885 (N.D. Cal. 2011) ................................................................ 14

*Paradise Creations, Inc. v. UV Sales, Inc.,*
  315 F.3d 1304 (Fed. Cir. 2003) ............................................................................ 6

*Pat. Harbor, LLC v. DreamWorks Animation SKG, Inc.,*
  No. 6:11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012) ............................ 12

*Paterson v. Weinberger,*
  644 F.2d 521 (5th Cir. 1981) ................................................................................ 4

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.,*
  Nos. 2:16-cv-1032-JRG2017, 2:16-cv-1072-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22,
  2017) ................................................................................................................ 3, 14

*Positive Techs. Inc. v. LG Display Co.,*
  No. 2:07 CV 67, 2008 WL 4425372 (E.D. Tex. Sept. 24, 2008) ........................ 1, 8, 9

*Ramming v. United States.,*
  281 F.3d 158 (5th Cir. 2001) ................................................................................ 4

*Rembrandt Social Media, LP v. Facebook, Inc.,*
  950 F. Supp. 2d 876 (E.D. Va. 2013) .................................................................. 13

*Rivera v. Wyeth-Ayerst Lab'ys,*
  283 F.3d 315 (5th Cir. 2002) ................................................................................ 6

*Salazar v. HTC Corp.,*
  No.2:16-CV-01096-JRG-RSP, 2018 WL 1310007 (E.D. Tex. Feb. 14, 2018) ........ 11

*Scheuer v. Rhodes,*
  94 S. Ct. 1683, 416 U.S. 232 (1974) ..................................................................... 7

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
    402 F.3d 1198 (Fed. Cir. 2005) ...................................................................................... 7

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.,*
    170 F. Supp. 3d 928 (E.D. Tex. 2016) ................................................................ 2, 12, 14

*Southwest eFuel Network, L.L.C. v. Transaction Tacking Techs. Inc.,*
    No. 2:07-cv-311-TJW, 2009 WL 4730464 (E.D. Tex. Dec. 7, 2009) ....................... 9

*VirnetX, Inc. v. Microsoft Corp.,*
    No. 6:07 CV 80, 2008 WL 8894682 (E.D. Tex. June 4, 2008) .................................. 9

*Xpoint Techs., Inc. v. Microsoft Corp.,*
    730 F. Supp. 2d 349 (D. Del. 2010) ...................................................................... 12

*YETI Coolers, LLC v. RTIC Coolers, LLC,*
    No. 1:15-CV-00597-RP, 2016 WL 5956081 (W.D. Tex. Aug. 1, 2016) ................... 12

*ZitoVault, LLC v. IBM,*
    No. 3:16-cv-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) ................. 3, 14

**Statutes**

35 U.S.C. § 271 .................................................................................................... 5, 6, 11

35 U.S.C. § 287 ........................................................................................................ 5, 11

**Rules**

Rule 12 ............................................................................................................... 3, 4, 6

Through counsel and pursuant to Local Rule 7(D), Plaintiffs DynaEnergetics Europe GmbH ("DynaEnergetics Europe") and DynaEnergetics US, Inc. ("DynaEnergetics US") (collectively "Plaintiffs") submit this Brief in Opposition to Defendant's Motion to Dismiss for Lack of Standing, and in the Alternative, Defendant's Motion to Dismiss Plaintiffs' [Third] Amended Complaint with Respect to its Claims of Willful and Indirect Infringement (Dkt. 68).

## I.     SUMMARY OF ARGUMENT

Defendant's motion is founded on arguments that paint a misleading picture of certain case authority, while at the same time neglecting to mention other, more relevant case authority.  When closely analyzed, the greater weight of authority and allegations of the operative complaint reveal the fallacy of each of Defendant's arguments.

Regarding Defendant's lack-of-standing argument, most courts (including district courts from Texas) hold that as long as a plaintiff had some ownership interest in the asserted patent at the time the original complaint was filed, the plaintiff had constitutional standing and can cure the fact that it did not own all substantial rights in the patent (prudential standing) through a *nunc pro tunc* post-filing assignment.  *See, e.g*., Ex. A, *Positive Techs. Inc. v. LG Display Co*., No. 2:07 CV 67, 2008 WL 4425372, at *2-4 (E.D. Tex. Sept. 24, 2008) (allowing plaintiff that owned 75% of patent at filing to correct lack of prudential standing through *nunc pro tunc* assignment); *see also* Ex. B, *Lincoln Imps., Ltd. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 11393095, at *1 (S.D. Tex. July 16, 2008) (rejecting an accused infringer's argument that a reformation could not provide standing retroactively to the plaintiff).

Applied here, Defendant acknowledges that Plaintiffs had at least a one-half ownership interest in the Patents-in-Suit when the original complaint was filed.  *See* Dkt. 68 at 7 ("Plaintiffs did not have an exclusionary interest in the two Patents-in-Suit when they filed suit in January 2020 because a third-party company, JDP Engineering, **held an equal ownership interest in the**

*patents* from its employee-inventor, David Parks.") (emphasis added).  Plaintiffs disagree that they lacked an exclusionary interest, but regardless Plaintiffs indisputably had constitutional standing when suit was filed and were permitted to cure any possible prudential standing deficiency through the *nunc pro tunc* assignment of all remaining rights in the patents.

Regarding Defendant's argument that Plaintiffs' claims for indirect infringement must be dismissed because "they have not pled any facts supporting pre-suit knowledge of the patents," most recent decisions hold that allegations of pre-suit knowledge are not required because claims for indirect infringement can be supported by post-suit conduct. *Id.* at 1. Indeed, contrary to Defendant's contention that the "better weight" of authority supports dismissal, *id.* at 10, the filing of the initial complaint to satisfy the knowledge requirement "is in keeping with the decisions of most courts that have considered the issue recently." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016); *see also* Ex. C, *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP, 2020 WL 6496425, at *5 (E.D. Tex. Aug. 10, 2020) (holding that reliance on "the filing of the initial complaint to show [defendant's] subsequent knowledge of the Asserted Patents" for indirect infringement "has been approved in this District").  Moreover, a plain review of Plaintiffs' operative complaint refutes Defendant's argument that Plaintiffs' indirect infringement claims "are not sufficiently supported and are not distinguished from the direct infringement claims." Dkt. 68 at 1. The operative complaint contains extensive allegations that support and distinguish the indirect infringement claims from those for direct infringement. *See* Dkt. 63 ¶¶ 23-25, 27, 33-36.

Finally, regarding Defendant's willfulness argument, Plaintiffs' operative complaint alleges that Defendant knows (or is willfully blind to the probability) that its conduct is infringing, and repeatedly alleges that Defendant has continued its infringing conduct despite actual notice

that its conduct infringes the Patents-in-Suit. *See, e.g.*, *id.* ¶¶ 22, 24, 26-27, 31-32, 34. Many courts hold that such allegations are sufficient to plead a claim for willful infringement. *See, e.g.*, Ex. D, *ZitoVault, LLC v. IBM*, No. 3:16-cv-0962-M, 2018 WL 2971131, at *2 (N.D. Tex. Mar. 29, 2018) (holding that post-suit knowledge can support a willful infringement claim at the pleading stage if plaintiff also alleges that defendant is continuing its infringing activities despite actual notice from filing of the complaint); Ex. E, *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, Nos. 2:16-cv-1032-JRG2017, 2:16-cv-1072-JRG, 2017 WL 8727249, at *6 (E.D. Tex. Sept. 22, 2017) ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement.").

## II.   NATURE AND STAGE OF THE PROCEEDINGS

On January 30, 2020, Plaintiffs filed a lawsuit against Hunting in the Western District of Texas alleging infringement of its '161 and '938 Patents by Hunting's H-1 Perforating Gun System. *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. 6:20-cv-00069 (W.D. Tex.). Plaintiffs filed an Amended Complaint on March 23, 2020, Dkt. 20, and Hunting moved to transfer venue to this District on April 7, 2020, Dkt. 25, which the Court granted. Dkt. 25-5. Plaintiffs filed a [Third] Amended Complaint on August 27, 2021 (Dkt. 63),[1] alleging infringement of the '161 and '938 Patents. On September 10, 2021, Hunting answered the [Third] Amended Complaint and moved to dismiss Plaintiffs' claims of willful and indirect infringement pursuant to Rule 12(b)(6) and this case for lack of standing pursuant to Rule 12(b)(1). Dkts. 68 and 69. Plaintiffs hereby oppose Hunting's motion to dismiss.

---

[1] Plaintiffs' most recent complaint filed on August 27, 2021 (Dkt. 63) was incorrectly styled as the "Second Amended Complaint" when it should instead have been styled as Plaintiffs' Third Amended Complaint. Plaintiffs previously filed a Second Amended Complaint on April 28, 2020 (Dkt. 32).

## III.   FACTUAL BACKGROUND

### A.   Facts Relevant to Defendant's Standing Arguments

The Patents-in-Suit are U.S. Patent Nos. 10,429,161 (the "'161 Patent") and 10,472,938 (the "'938 Patent").  The '161 Patent issued on October 1, 2019, and lists DynaEnergetics Europe as the lone assignee.[2]  *See* Dkt. 63-1. The '938 Patent issued on November 12, 2019, and lists DynaEnergetics Europe and JDP Engineering and Machine Inc. ("JDP Engineering") as co-assignees.  *See* Dkt. 63-2.   In view of those assignments and patent office records confirming same,[3] Defendant acknowledges that Plaintiffs at least "held an equal ownership interest in the patents" when the original complaint was filed.  *See* Dkt. 68 at 7.   Subsequently, on April 23, 2020, JDP Engineering assigned any remaining interest it had in the Patents-in-Suit to Plaintiffs through a *nunc pro tunc* assignment that was effective as of January 1, 2017.  *See* Dkt. 32-4.[4]

### B.   Facts Relevant to Defendant's Indirect Infringement and Willfulness Arguments

Contrary to Defendant's argument that Plaintiffs have not adequately alleged willfulness and that the indirect infringement "allegations are not sufficiently supported and are not distinguished from the direct infringement claims" (Dkt. 68 at 1), the operative complaint contains detailed allegations that fully support both claims.  Specifically:

> Para. 13:  DynaEnergetics makes, distributes, offers to sell, and sells perforating gun systems that practice the '161 Patent and the '938 Patent. DynaEnergetics

---

[2] The listed assignee is DynaEnergetics GmbH & Co. KG, which has been dissolved under German law and had all of its assets and liabilities transferred automatically by succession to Plaintiff DynaEnergetics Europe GmbH.

[3]  *See* Ex. F, DYNA_00003703-08; Ex. G, DYNA_00003709-32; Ex. H, DYNA_00003733-35; Ex. I, DYNA_00003736-37; Ex. J, DYNA_00003738-40; Ex. K, DYNA_00003152-55.

[4] "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming v. United States.,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).  Where a defendant presents evidentiary materials in support of a motion to dismiss for lack of subject matter jurisdiction, "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). Plaintiffs have done so here.

Europe exclusively licenses DynaEnergetics US to make, distribute, offer to sell, and sell perforating gun systems that practice the '161 Patent and the '938 Patent in the United States. **_DynaEnergetics has marked the covered products in accordance with 35 U.S.C. § 287._**

Para. 14:  **_Defendant is a competitor of DynaEnergetics, including in the field of perforating systems._** Defendant has, upon information and belief, either alone or in concert, manufactured, distributed, sold, or offered to sell the Hunting Titan H-1<sup>TM</sup> Perforating Gun System in the United States, including within the State of Texas and within this District.

Para. 18:  Upon information and belief, **_Defendant has known of the '161 Patent, the '938 Patent, and its own infringing activities since at least as early as the filing of this complaint_**.

Para. 23:  Defendant likewise has induced infringement of the '161 Patent in violation of 35 U.S.C. § 271(b). **_Defendant actively encourages its customers_**, by and through its sales and marketing efforts and staff, **_to directly infringe_** the '161 Patent by using the H-1<sup>TM</sup> Perforating Gun System within the United States.

Para. 24:  Defendant **_specifically intended and has been aware_** (since at least January 30, 2020) that its customers' normal and customary use of the H-1<sup>TM</sup> Perforating Gun System **_would infringe the '161 Patent_**. Defendant's sales personnel and technical marketing staff interface with its customers and potential customers to purchase and use the H-1<sup>TM</sup> Perforating Gun System that infringes the '161 Patent. Defendant's sales personnel and technical marketing staff tout the technological and economic benefits of the H-1<sup>TM</sup> Perforating Gun System and **_actively encourage use_** of the H-1<sup>TM</sup> Perforating Gun System in customers' wells, or by customers for use in wells. **_Defendant, therefore, knows (and has known), or was willfully blind to the probability, that its actions have, and continue to, actively induce infringement of_** the '161 Patent. As a result of **_Defendant's active encouragement and intentional inducement, its customers have committed acts directly infringing the '161 Patent._**

Para. 25:  In addition to the foregoing and/or in the alternative, Defendant is liable as a contributory infringer of the '161 Patent under 35 U.S.C. § 271(c). To the extent the H-1<sup>TM</sup> Perforating Gun System is sold in a non-assembled form, Defendant provides all components required for full assembly of the H-1<sup>TM</sup> Perforating Gun System. **_Defendant's sales personnel and technical marketing staff further provide information required for Defendant's customers to complete assembly of the H-1<sup>TM</sup> Perforating Gun System. Defendant has known the H-1TM Perforating Gun System to be infringing the '161 Patent since at least January 30, 2020._** The H-1<sup>TM</sup> Perforating Gun System is not a staple article or a commodity of commerce suitable for substantial noninfringing use because it cannot be used without infringing the '161 Patent. Thus, Defendant is liable as a contributory infringer.

Para. 27:  **At least as early as January 30, 2020, Defendant has been on notice of**, and has had knowledge of, the '161 Patent and of DynaEnergetics' allegations of infringement. **Defendant's infringement of the '161 Patent has been willful and deliberate at least since this date**.

Para. 31:  Defendant has, either alone or in concert, **directly infringed and continues to infringe** the '938 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the H-1™ Perforating Gun System within the United States, in violation of 35 U.S.C. § 271(a).

Para. 32: Upon information and belief, Defendant has made **and is continuing to make unlawful gains and profits from its infringement** of the '938 Patent.

Dkt. 63 ¶¶ 13-14, 23-25, 27, 31-32 (emphasis added); *see also id.* ¶¶ 33-36.

## IV.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The issues to be decided by the Court are (1) whether DynaEnergetics has standing to assert infringement of the '161 and '938 Patents by Hunting under Rule 12(b)(1); and (2) whether DynaEnergetics has stated a plausible claim for willful and indirect infringement by Hunting to survive a motion to dismiss under Rule 12(b)(6).  The standard of review under Rule 12(b)(1) and Rule 12(b)(6) is *de novo*.  *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 399 (5th Cir. 2008); *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 Fed. App'x. 260, 262 (5th Cir. 2020).

## V.    ARGUMENT

### A.    Legal Standards

Standing "determines the court's fundamental power . . . to hear [a] suit."  *Rivera v. Wyeth-Ayerst Lab'ys,* 283 F.3d 315, 319 (5th Cir. 2002).  "Whether a party has standing to sue in federal court is a question of federal law." *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1308 (Fed. Cir. 2003) (citing *Baker v. Carr*, 82 S. Ct. 691, 703, 369 U.S. 186, 204 (1962)). The party asserting jurisdiction has the burden of establishing jurisdiction.  *See id.*; *Rivera,* 283 F.3d at 318-19.  In the context of patent infringement suits, there are two separate limitations on standing:

constitutional and prudential. *See Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1338-40 (Fed. Cir. 2007) (differentiating constitutional and prudential standing). "Article III standing . . . generally must be present at the inception of the lawsuit." *Paradise,* 315 F.3d at 1308 (citing *Lujan v. Defs. of Wildlife,* 112 S. Ct. 2130, 2142 n.5 (1992)). Defects in prudential standing, however, are not fatal to the lawsuit, and if the plaintiff had constitutional standing at the inception of the lawsuit, prudential concerns may be cured after the lawsuit is filed. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1203 n.4 (Fed. Cir. 2005) (citing *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1018-19 (Fed. Cir. 2001)).

Regarding Defendant's willfulness and indirect infringement arguments, in order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 550 U.S. 544, 570 (2007)). The plausibility standard is not a probability requirement and requires only that there is "more than a *sheer possibility* that a defendant has acted unlawfully." *Id.* (emphasis added). Further, "[n]othing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012); *see also Twombly*, 127 S. Ct. at 1965 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" (quoting *Scheuer v. Rhodes*, 94 S. Ct. 1683, 1686, 416 U.S. 232, 236 (1974))); *Haskett v. T.S. Dudley Land Co.*, 648 Fed. App'x. 492, 497 (5th Cir. 2016) (vacating dismissal of certain claims finding that the "complaint partially clears the low bar of Rule 12(b)(6)").

**B.      Defendant's Motion to Dismiss for Lack of Standing Should Be Denied.**

Defendant relies on *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) and *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996), for the proposition that "[N]unc pro tunc assignments are not sufficient to confer retroactive standing." *See* Dkt. 68 at 7.   Yet many courts have distinguished *Enzo* and *Gaia* on the basis that in those cases the plaintiff had ***no interest*** in the asserted patent at the time the original complaint was filed. Ex. A, *Positive Techs.*, 2008 WL 4425372, provides a good example. There the plaintiff owned a 75% interest in the patent at the time suit was filed, and subsequently obtained a *nunc pro tunc* assignment of all remaining rights in the patent. *Id*. at *2-4.  Just like Defendant here, the defendant in *Positive Techs.* relied on *Enzo* and *Gaia* to support a motion to dismiss, arguing that the *nunc pro tunc* assignment could not cure the standing deficiency.   The court rejected the argument, stating in relevant part, "[I]n sum, the parties in *Enzo* and *Gaia* had neither constitutional nor prudential standing to bring their respective suits because they had *no rights* in the patents at the time of filing.  Positive, however, did have rights when it brought this suit—Positive owned seventy-five percent of the patents." *Id*. at *3 (emphasis in original).  Notably, the *Positive Techs.* court went on to reject the defendant's suggestion that prudential standing cannot be cured post-complaint, and in fact noted that the Federal Circuit has reached the opposite conclusion:

> The Federal Circuit **has not found that prudential standing cannot be remedied when, as here, a plaintiff has constitutional standing at the commencement of a suit**. **In fact, the Federal Circuit has recognized on many occasions the ability to cure prudential standing defects post filing**. *See, e.g., Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1133-34 (Fed. Cir. 1995) (allowing post-filing intervention by patent owner, whose joinder was required for statutory, i.e., prudential, standing); [*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc*., 248 F.3d 1333, 1348 (Fed. Cir. 2001)] (recognizing the principle that a patent owner may be joined by an exclusive licensee where exclusive licensee has "constitutional" standing at the time of filing).

*Id*. at *3 (emphasis added).

8

Consistent with this holding, many courts have rejected the very argument Defendant makes here, recognizing that the sounder practice is to allow prudential standing concerns to be rectified after suit is filed. *See*, *e.g.*, Ex. L, *Advanced Tech. Incubator, Inc.*, *v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 2460985, at *5-6 (E.D. Tex. Aug. 10, 2009) (rejecting defendant's reliance on *Enzo* and *Gaia* and holding that the plaintiff had constitutional standing as an exclusive licensee at the time complaint was filed, and thus was entitled to "cure[] any defect in prudential standing" post-filing); Ex. M, *Hockerson-Halberstadt, Inc. v. New Balance Athletic Shoe Inc.*, No. 08-4131, 2009 WL 10679734, at *3 (E.D. La. June 4, 2009) (distinguishing *Enzo* "because that Plaintiff had no standing at the inception of the suit," and finding that a plaintiff that did not have the right to sue for past infringement at the commencement of suit could cure that prudential standing defect after suit was filed); Ex. N, *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 WL 8894682, at *2 (E.D. Tex. June 4, 2008) ("[A] plaintiff with constitutional standing may cure prudential standing defects after it files suit." (citing *Intell. Prop. Dev., Inc.*, 248 F.3d at 1348)); *see also* Ex. O, *I & I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:18-cv-03254-M, 2019 WL 7838077, at *3 (N.D. Tex. Sept. 13, 2019) (trademark case distinguishing *Enzo* and *Gaia* because "the plaintiffs in both of those cases lacked both statutory and constitutional standing, and several courts have distinguished those decisions and found that a *nunc pro tunc* assignment can cure a lack of statutory standing" (citing Ex. A, *Positive Techs.*, 2008 WL 4425372, at *2; Ex. L, *Advanced Tech.*, 2009 WL 2460985, at *5-6)); Ex. P, *Southwest eFuel Network, L.L.C. v. Transaction Tacking Techs. Inc.*, No. 2:07-cv-311-TJW, 2009 WL 4730464, at *3 (E.D. Tex. Dec. 7, 2009) ("The Federal Circuit cases that the Defendant primarily relies upon, *Enzo* and *Gaia*, are easily distinguishable from the facts of this case. In both *Enzo* and *Gaia*, the plaintiff had no rights to the patent when it originally brought suit."); Ex. B, *Lincoln Imps.*, 2008 WL 11393095, at *1 (rejecting defendant's

argument that a reformation could not grant a standing retroactively); Ex. Q, *Houston Home Dialysis v. Blue Cross & Blue Shield of Texas*, No. H-17-2095, 2018 WL 5249996, at *3, 5-6 (S.D. Tex. Oct. 22, 2018) (unlike constitutional standing, statutory standing issues can be waived or cured); Ex. R, *Mobilemedia Ideas, LLC v. Rsch. in Motion Ltd.*, No. 3:11-CV-2353-N, 2013 WL 12124319, at *5 (N.D. Tex. June 18, 2013) (prudential (statutory) standing issues may be cured).

Applied here, the faces of the Patents-in-Suit confirm, and Defendant acknowledges, that Plaintiffs owned at least a 50% interest in the patents when suit was filed. *See* Dkts. 63-1, 63-2, 68 at 7.  There is no legitimate dispute that such ownership interest conferred constitutional standing when suit was filed.  *See*, *e.g*., *Morrow,* 499 F.3d at 1338-39 (differentiating constitutional and prudential standing in that "[t]o demonstrate the minimal constitutional standing requirements have been satisfied, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *Hein v. Freedom Religion Found., Inc.*, 127 S. Ct. 2553, 2555-56, 551 U.S. 587, 588 (2007))); *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1159, 1163-64 (D. Kan. 2009) (co-owner of patent found to have constitutional, but not prudential, standing); Ex. A, *Positive Techs.*, 2008 WL 4425372, at *3 (owner of 75% of patent found to have constitutional standing); Ex. S, *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc*., No. 6:11-cv-173, 2012 WL 12903081, at *2 (E.D. Tex. May 14, 2012) (holding that defects in prudential standing can be cured post-complaint). Consequently, Plaintiffs could cure any remaining prudential standing issues through the *nunc pro tunc* assignment, which provided Plaintiffs full ownership of the Patents-in-Suit.  As a separate and independent basis for denying Hunting's challenge, DynaEnergetics was also the exclusive licensee of the patents at the time of the original filing. *See* Dkt. 1 ¶¶ 11-13. That alone is sufficient to confer constitutional standing and, as explained above, any remaining alleged prudential

standing issues were cured through the assignment. Ex. L, *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 2460985, at *3, 5 (E.D. Tex. Aug. 10, 2009) (holding that the plaintiff had constitutional standing as an exclusive licensee at the time complaint was filed, and thus was entitled to "cure[] any defect in prudential standing" post-filing).

### C.    Defendant's Motion to Dismiss the Indirect and Willful Infringement Claims Should Also Be Denied.

Defendant argues that the indirect and willful infringement claims "fail because the Third Amended Complaint does not plausibly allege that (1) Defendant had pre-suit knowledge of the Patents-in-Suit and (2) egregious conduct to support willful infringement.  Indirect infringement under Section 271(b)-(c) requires actual knowledge of or willful blindness to the infringed patent's existence."  Dkt. 68 at 10.  Both arguments fail for several reasons.

As an initial matter, the operative complaint alleges that Plaintiffs mark products covered by the Patents-in-Suit with the patent numbers in accordance with 35 U.S.C. § 287, and that Defendant is a competitor in the field of products covered by the patents.  Dkt. 63 ¶¶ 13-14.  Such allegations are sufficient to plausibly allege that Defendant had knowledge of the patents prior to receiving the complaint.  *See*, *e.g.*, Ex. T, *Salazar v. HTC Corp.*, No.2:16-CV-01096-JRG-RSP, 2018 WL 1310007, at *2 (E.D. Tex. Feb. 14, 2018) (finding defendant's knowledge of patents could be inferred from allegations that "covered products bearing the patent number were sold in the United States"); Ex. U, *3D Sys., Inc. v. Formlabs, Inc.*, No. 13 Civ. 7973, 2014 WL 1904364, at *3 (S.D.N.Y. May 12, 2014) ("Marking of a product has been found . . . to support an inference that a defendant had knowledge of a patent."); Ex. V, *Novatel Wireless, Inc. v. Franklin Wireless Corp.*, No. 10cv2530-CAB (JMA), 2012 WL 12845615, at *2 (S.D. Cal. July 19, 2012) (holding that a plaintiff's "marking of its own products that compete with the accused infringed products" and listing patents on a website was sufficient to allege prior knowledge of a

11

patent); Ex. W, *Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prods., Inc.*, 2014 WL 12775193, at *3 (M.D. Tenn. July 2, 2014) (holding, at the motion to dismiss stage, Plaintiff sufficiently alleged prior knowledge of a patent by claiming the "Defendant knew of Plaintiff's patent by virtue of Plaintiff's marking of its products").[5]

But even if the Court determines that such allegations do not plausibly allege pre-suit knowledge, requiring an express allegation of pre-suit knowledge to sustain a claim for indirect infringement is by far the minority view.  *See Script Sec. Sols.*, 170 F. Supp. 3d at 937 (relying on the filing of the initial complaint to satisfy the knowledge requirement "is in keeping with the decisions of most courts that have considered the issue recently").  Indeed, the overwhelming majority of courts have taken a more pragmatic approach, and have either sustained an original allegation of indirect infringement based on knowledge of the patents gained from the complaint,[6] or have granted the plaintiff leave to file an amended or supplemental pleading expressly alleging knowledge of the patent by virtue of being served with the complaint.[7]

This majority rule is the more sensible one, and it should be adopted by this Court.  *See*

---

[5] Further, in support of DynaEnergetics' allegation that "Defendant has known of the '161 Patent, the '938 Patent, and its own infringing activities since *at least as early as the filing of this complaint*," Dkt. 63 ¶ 18 (emphasis added), DynaEnergetics expects that discovery will reveal that Defendant was monitoring DynaEnergetics' patent activity, as DynaEnergetics had previously filed suit against Defendant for infringement of United States Patent No. 9,581,422 (*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. 4:17-cv-03874 (S.D. Tex.)) and for trade secret misappropriation (*DynaEnergetics GmbH & Co. KG v. Hunting Titan, Inc.*, No. 4:19-cv-01615 (S.D. Tex.)).

[6] *See* Ex. X, *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 1:15-CV-00597-RP, 2016 WL 5956081, at *11 (W.D. Tex. Aug. 1, 2016); Ex. Y, *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex.  Aug. 10, 2012); *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 573-74 (D. Del. 2012) (noting that "there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct"); Ex. Z, *Pat. Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012); Ex. AA, *Achates Reference Publ'g, Inc. v. Symantec Corp.*, No. 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013); .

[7] *See Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) (granting leave to amend to allege post-filing conduct); Ex. CC, *Apple Comput., Inc. v. Unova, Inc.*, No. Civ.A. 03-101-JJF, 2003 WL 22928034, at *5 (D. Del. Nov. 25, 2003) (noting that amended complaint alleging knowledge as of date of original complaint mooted defendant's motion to dismiss indirect infringement claims); *Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 569-70 (D. Del. 2009) (permitting plaintiff to file a supplemental pleading alleging post-suit conduct).

*Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 882 (E.D. Va. 2013) ("It is clear that the majority view is the sounder view.  There is simply no substantive difference between (i) a putative infringer learning of a patent from a plaintiff's letter a day, or hours or even minutes before an infringement suit is filed or served, and (ii) a putative infringer learning of the patent from the filing or service of a complaint.").  Indeed, as numerous courts have recognized, there is "no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct."  *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d at 573-74; *see also* Ex. BB, *Intellect Wireless, Inc.*, *v. Sharp Corp.*, No. 10 C 6763, 2012 WL 787051, at *11 (N.D. Ill. Mar 9, 2012).[8] Given that a patentee is undoubtedly entitled to compensation for indirect infringement that occurs after the date of its original complaint, a rule that denies the patentee the right to pursue such a claim because at the pleadings stage it cannot demonstrate that the defendant had knowledge of the patent prior to receiving the complaint, makes no sense.[9]

Finally, there is no dispute that the operative complaint alleges that Defendant "actively encourages" its customers to directly infringe the Patents-in-Suit through its marketing efforts and by providing its customers with instructions, training, and support to facilitate the use and operation of the accused product in a manner that directly infringes, and does so with the intent that its customers will use and operate the accused products in an infringing manner.  Dkt. 63 ¶¶ 23-25, 33-35.  The Federal Circuit and Texas district courts have expressly held that allegations

---

[8] Defendant also incorrectly asserts that no Federal Circuit opinion has addressed this issue.  Dkt. 68 at 10.  At least one Federal Circuit decision has upheld a claim for induced infringement in which first knowledge of the patents was alleged to be based on service of the complaint.  *See In re Bill of Lading*, 681 F.3d at 1345 (Fed. Cir. 2012) (upholding amended complaints alleging indirect infringement claims against defendants where knowledge of the patent was based on service of the original complaint).

[9] Additionally, Defendant itself acknowledges that "willful blindness to the infringed patent's existence" satisfies the knowledge requirement for indirect infringement.  Dkt. 68 at 10.  This acknowledgement is likewise fatal to Defendant's motion as the operative complaint specifically alleges that Defendant "was willfully blind … that its actions have, and continue to, actively induce infringement" of the Patents-in-Suit. Dkt. 63 ¶¶ 24, 34.

of active steps taken to encourage infringement, such as instructions and training, support a reasonable inference of knowledge and intent that the accused products be used to infringe. *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1059 (Fed. Cir. 2010) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2789, 545 U.S. 913, 936 (2005)); Ex. DD, *Google Inc. v. Beneficial Innovations, Inc.*, No. 2:11-cv-00229, 2014 WL 4215402, at *12 (E.D. Tex. Aug. 21, 2014) (finding that a jury could conclude specific intent to induce infringement based on allegations of actions directed to promoting infringement); *see also* Ex. EE, *BioMérieux, S.A. v. Hologic, Inc*., No. 18-21 (LPS), 2018 WL 4603267, at *4-5 (D. Del. Sept. 25, 2018).

Regarding Plaintiffs' willfulness claim, while courts are more "split" on whether the complaint must allege pre-suit knowledge of the patents, district courts from Texas and many other jurisdictions hold that post-suit knowledge of the patents can support a claim for willful infringement if the complaint also alleges ***that that defendant is continuing*** its infringing activities despite having actual notice of the patent from the initial complaint. *See, e.g.*, Ex. D, *ZitoVault, LLC,* 2018 WL 2971131, at *2; Ex. E, *Plano Encryption Techs., LLC*, 2017 WL 8727249, at *6 ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement."); *Script Sec. Sols.*, 170 F. Supp. 3d at 939 (allegations that defendants continued conduct despite knowledge of patents and infringing conduct sufficient to plead willful infringement); *Oracle Corp. v. DrugLogic, Inc*., 807 F. Supp. 2d 885, 903 (N.D. Cal. 2011) (allegations that defendants were aware of patents and "continued their actions" constituted "sufficient facts to support a plausible claim for willful infringement"); *Canon, Inc. v. Avigilon USA Corp.*, 411 F. Supp. 3d 162, 164-66 (D. Mass. 2019) (indicating that willfulness-based enhanced damages claims based on post-suit knowledge were permissible).   Applied here, the operative complaint specifically alleges that

(a) Defendant has "directly infringed and *continues to infringe*" the Patents-in-Suit; (b) Defendant's actions "have, and *continue to*," actively induce infringement of the Patents-in-Suit; and (c) "Defendant has made and *is continuing to* make unlawful gains and profits from its infringement" of the Patents-in-Suit. Dkt. 63 ¶¶ 22, 24, 26, 31, 32, 34 (emphasis added).  Such allegations are sufficient to sustain a claim for willfulness in view of the above authority.

Defendant's citation to Ex. FF, *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018), to support its argument that the operative complaint fails to sufficiently allege that "Defendant has acted in an egregious manner to justify enhanced damages after being served with the complaint," is misplaced.  *See* Dkt. 68 at 14.  The allegations from the complaint in *Igloo Prods.* are materially distinguishable.  There the plaintiff did not allege any facts regarding the defendant's post-suit conduct, and simply alleged that the "[defendant] has willfully infringed claims of the [asserted] patent by making, using, selling and offering for sale the [accused products]."  *See* Ex. GG, *Igloo Prods.*, No. 4:17-CV-2372, Dkt. 28 ¶¶ 30, 35, 40, 54, 59 (S.D. Tex. Jan. 11, 2018). In other words, the plaintiff in *Igloo Prods.* alleged no more than post-suit knowledge of the asserted patents, but failed to allege even that the defendant knew its conduct constituted infringement.  By contrast, here Plaintiffs have alleged that Defendant knows (or is willfully blind to the probability) that its conduct is infringing, and has continued its infringing conduct despite actual notice that such conduct infringes the Patents-in-Suit.  *See, e.g.*, Dkt. 63 ¶¶ 24, 27, 34.  Per the above-authority, such allegations are sufficient to plausibly allege a claim for willful infringement notwithstanding the *Igloo Prods*. decision.

Accordingly, the operative complaint alleges more than sufficient factual bases to support a finding of both indirect and willful infringement.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion should be denied in its entirety.

Dated: October 1, 2021

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By:  _/s/ Barry J. Herman_____
Barry J. Herman (*pro hac vice*)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com

*Attorney-in-Charge for Plaintiffs DynaEnergetics
Europe GmbH and DynaEnergetics US, Inc.*

OF COUNSEL:

WOMBLE BOND DICKINSON (US) LLP
Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice*)
Georgia Bar No. 874494
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Telephone: (404) 962-7538
Email: Christine.Dupriest@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Ana J. Friedman (*pro hac vice*)
North Carolina Bar No. 53117
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 747-6622
Email: Ana.Friedman@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Julie Giardina (*pro hac vice*)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5800
Email: Julie.Giardina@wbd-us.com

MOYLES IP, LLC
Lisa J. Moyles (*pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice*)
New York Bar No. 4450953
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

RUSTY HARDIN & ASSOCIATES, LLP
Megan C. Moore
Federal Bar No. 963966
Texas Bar No. 24054322
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: mmoore@rustyhardin.com

*Attorneys for Plaintiffs DynaEnergetics*
*Europe GmbH and DynaEnergetics US, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record through the Court's CM/ECF service on this 1st day of October, 2021.

 /s/ Megan C. Moore
Megan C. Moore