# **EXHIBIT D**

Case 4:20-cv-02123   Document 81-4   Filed on 10/25/21 in TXSD   Page 2 of 13
Triumph Aerostructures, LLC v. Comau, Inc., Not Reported in F.Supp.3d (2015)
2015 WL 5502625

2015 WL 5502625
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

TRIUMPH AEROSTRUCTURES,
LLC, Plaintiff/Counter–Defendant,
v.
COMAU, INC., Defendant/Counter–Plaintiff.

No. 3:14–cv–2329–L.
|
Signed Sept. 18, 2015.

**Attorneys and Law Firms**

Lisa Staler Gallerano, Lacy M. Lawrence, Patrick G. O'Brien, Richard Michael Cella, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Plaintiff/Counter-Defendant.

Donald Vincent Orlandoni, John E. Benko, Timothy J. Lowe, McDonald Hopkins PLC, Bloomfield Hills, MI, Bryan J. Wick, J. Sean Lemoine, Noah Nadler, Wick Phillips Gould & Martin LLP, Dallas, TX, for Defendant/Counter-Plaintiff.

*MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR A LETTER OF REQUEST (LETTER ROGATORY) TO OBTAIN DOCUMENTS FROM NON–PARTY BOMBADIER INC. IN CANADA*

DAVID L. HORAN, United States Magistrate Judge.

 *1 In accordance with 28 U.S.C. § 1781 and Federal Rule of Civil Procedure 28(b), Defendant/Counter–Plaintiff, Comau, Inc., now known as Comau LLC ("Comau"), has filed a motion for issuance of a Letter of Request to obtain documents from non-party Bombardier Inc. ("Bombardier") in Montreal, Quebec, Canada, which Comau contends are necessary to its counterclaims and defenses and will serve as evidence at trial. *See* Dkt. No. 32. United States District Judge Sam A. Lindsay has referred this motion to the undersigned United States magistrate judge for determination, pursuant to 28 U.S.C. § 636(b) and an order of reference [Dkt. No. 34]. *See generally* United States v. El–Mezain, 664 F.3d 467, 517 (5th Cir.2011) ("The issuance of a letter rogatory is a discovery issue.").

Plaintiff/Counter–Defendant Triumph Aerostructures, LLC ("Triumph") filed a response in opposition, *see* Dkt. No. 35, accompanied by a letter from Bombadier's counsel, *see* Dkt. No. 36, and Comau filed a reply, *see* Dkt. No. 37.

The Court held a hearing on the motion on August 26, 2015. *See* Dkt. No. 41. At the Court's request, Comau's counsel has emailed an electronic copy of Comau's proposed Letter of Request to the Court's email address.

For the reasons and to the extent explained below, Comau's motion [Dkt. No. 32] is GRANTED in part and DENIED in part. [1]

**Background**

Comau's motion provides the following explanation of the background for its request:

> This action presents a dispute over a contract for tooling and automation equipment for use in manufacturing airplane wings for a new line of global business jets. Plaintiff/Counter–Defendant Triumph Aerostructures, LLC ("Triumph") contracted with non-party Bombardier, to manufacture airplane wings for Bombardier's new Global 7000/8000 Business Jet (the "Aircraft"). Comau subsequently contracted with Triumph to provide certain equipment and services required for Triumph's manufacture of the Aircraft wings (the "Contract" for the "Project"). Contemporaneously, Comau subcontracted with Global Tooling Systems, Inc. ("GTS") to manufacture and provide certain tooling required by Triumph to manufacture the Aircraft wings (the "Subcontract").

> Comau and GTS worked on the design and manufacture of the tooling, automation, and other required equipment at their respective facilities in southeast Michigan. Their and Triumph's intent was to later install the equipment at Triumph's facility in Red Oak, Texas, where Triumph would then build the Aircraft wings for Bombardier. On at least one occasion, Bombardier representatives traveled to Michigan to observe the progress of Comau and GTS.

> On January 16, 2014, Triumph terminated the Contract with Comau, precipitating this lawsuit in which there are several points at issue regarding the parties' respective obligations and performance under the Contract. The following issues and topics are relevant to this motion,

through which Comau seeks a Letter of Request to obtain documents from Bombardier:

 *2  a. whether Comau met its obligations under the Contract as factory integrator, manager of the Project, and supplier/developer of the automation and tooling;

b. whether the parties met their respective deadlines under the Project schedules and otherwise pursuant to the Contract;

c. the reasons for Triumph's inability to provide Comau timely with the engineering, design, and Project data necessary for Comau to develop the subject automation and tooling;

d. Bombardier's understanding of the status of the automated driller(s) to be supplied by Comau;

e. whether Triumph must compensate Comau for the myriad delays on the Project, the additional work Comau had to perform beyond the scope of the Contract, and the additional costs incurred by Comau as a result of other circumstances;

f. whether Comau met its metrology obligations to Triumph by providing Triumph with a comprehensive metrology plan; and

g. whether the Project delays were caused by circumstances other than Comau's performance, including, but not limited to, Federal Aviation Administration ("FAA") requirements.

Dkt. No. 32 at 1–3.

In its response to the motion, Triumph explains by way of background that "Triumph supplies fully-assembled wings to Bombardier for its 7000/8000 Series business jet, and Comau was one of dozens of Triumph's subcontractors on that program" and that "Bombardier is not a party to this lawsuit or to the contract between Triumph and Comau that is at issue in this lawsuit, and furthermore is located in Canada." Dkt. No. 35 at 4 of 15.

Triumph alleges causes of action for breach of contract, breach of the duty of good faith and fair dealing, declaratory judgment as to termination for default, and equitable subordination against Comau, *see* Dkt. No. 1, and Comau's counterclaim alleges breaches of contract by Triumph, *see* Dkt. No. 13. At the hearing, counsel for Comau and for Triumph agreed that the contract between Triumph and Comau contains a New York choice-of-law provision.

**Legal Standards**

A letter of request or "letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corporation v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 n. 1, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). "A federal court may issue a letter rogatory, also known as a letter of request, to a court in a foreign country seeking assistance in the production of evidence located in the foreign country." *El–Mezain,* 664 F.3d at 516–17 (citing 28 U.S.C. 1781(b)(2)). "The decision to issue a letter rogatory is ... entrusted to the sound discretion of the district court." *Id.* at 517. The power to do so derives from the Court's inherent power, *see Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1408 (5th Cir.1993), and 28 U.S.C. 1781(b)(2), which "allows courts to issue letters rogatory directly to a foreign tribunal or agency," *United States v. Tuma,* 738 F.3d 681, 688 n. 5 (5th Cir.2013). And Federal Rule of Civil Procedure 28(b)(1)(B) provides that the deposition of a witness located outside the United States may be taken under a "letter of request, where or not captioned a 'letter rogatory,' " from the issuing court to the appropriate authorities in the foreign country. FED. R. CIV. P. 28(b)(1)(B). Under Rule 28(b)(2), "[a] letter of request ... may be issued: (A) on appropriate terms after an application and notice of it; and (B) without a showing that taking the deposition in another manner is impracticable or inconvenient." FED. R. CIV. P. 28(b)(2).

 *3 Comau's motion seeks a letter of request for a deposition of and documents from Bombardier via the Quebec Superior Court, for the District of Montreal, 1 Notre Dame Street East, Montreal, Quebec, Canada, H2Y 1B6. *See* Dkt. No. 32 at 8. Canada is not a signatory to the Hague Convention on the Taking of Evidence Abroad (the "Hague Evidence Convention"), and therefore Comau may not avail itself of that avenue to obtain discovery in this Court.

But courts faced with similar requests under Section 1781 and Rule 28(b) have looked to the comity analysis set out, in the context of a letter of request to a country that is a party to the Hague Evidence Convention, in *Societe Nationale Industrielle Aerospatiale v. United States District*

*Court for the Southern District of Iowa,* 482 U.S. 522, 546 & n. 28, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). See *Seoul Semiconductor Co. Ltd. v. Nichia Corp.,* 590 F.Supp.2d 832, 834 (E.D.Tex.2008). The Supreme Court in *Societe Nationale* held that, in deciding whether to issue a letter of request under the Hague Evidence Convention, a court should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position," must supervise discovery to prevent abuses and minimize the costs and inconvenience to the parties, and must consider international comity and "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operation, and for any sovereign interest expressed by a foreign state." *Societe Nationale,* 482 U.S. at 546. "In performing [this] comity analysis, a court should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Seoul,* 590 F.Supp.2d at 834; *see also S.E.C. v. Stanford Int'l Bank, Ltd.,* 776 F.Supp.2d 323, 330 (N.D.Tex.2011) (reframing the fifth factor and adding two additional factors as follows: "(5) 'the competing interests of the nations whose laws are in conflict'; (6) 'the hardship of compliance on the party or witnesses from whom discovery is sought'; and (7) 'the good faith of the party resisting discovery' under the Federal Rules").

Several "circuits have held that there must be 'good reason' to deny the request for the issuance of letters rogatory, at least when the request is made pursuant to Fed.R.Civ.P. 28(b)." *Yellow Pages Photos, Inc. v. Ziplocal, LP,* 795 F.3d 1255, 1273–74 (11th Cir.2015); *accord* 8A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2083 (3d ed.2015). But, "when a request to issue letters rogatory is overly broad or unlikely to lead to the discovery of relevant evidence, district courts retain discretion to refuse to issue them." *Yellow Pages,* 795 F.3d at 1273. This is consistent with the general rule that, generally, "when the discovery sought appears relevant to the case at hand, a party resisting discovery bears the burden of showing that discovery is unwarranted." *Seoul,* 590 F.Supp.2d at 834–35 (citing *United States v. Newell,* 315 F.3d 510, 525 (5th Cir.2002); *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir.2001); *Merrill v. Waffle House,* 227 F.R.D. 467, 470 (N.D.Tex.2005)); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990) (the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable); *S.E.C. v. Brady,* 238 F.R.D. 429, 437–38 (N.D.Tex.2006).

**\*4** The Court believes, consistent with the weight of relevant authority, that the burden lies with the party resisting the request for discovery to show a lack of relevance or undue burden. *Accord First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 23 (2d Cir.1998); *but see Seoul,* 590 F.Supp.2d at 834–35 (concluding that, "when requesting burdensome discovery from a [foreign] citizen, the Supreme Court's policy as articulated in *Societe Nationale Industrielle Aerospatiale* favors placing the burden on the party requesting discovery" to "not only show why the request is relevant, but also why it is not unduly burdensome to a foreign party"). Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). But the Court bears in mind the Supreme Court's admonition that "[o]bjections to 'abusive' discovery that foreign litigants advance should ... receive the most careful consideration." *Societe Nationale,* 482 U.S. at 546. And the resisting party may be able to meet that burden by showing that the requested discovery is facially overbroad and therefore would pose an undue burden on the party from which the discovery will be sought. See *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.2004).

Finally, the Court remains mindful that, at least as to a deposition request, Rule 28(b) provides that a letter of request "may be issued ... without a showing that taking the deposition in another manner is impracticable or inconvenient." FED. R. CIV . P. 28(b)(2)(B); *accord* FEDERAL PRACTICE AND PROCEDURE § 2083.

**Analysis**

Comau contends that "[t]he following issues and topics are relevant to this motion, through which Comau seeks a Letter of Request to obtain documents from Bombardier":

> a. whether Comau met its obligations under the Contract as factory integrator, manager of the Project, and supplier/developer of the automation and tooling;
>
> b. whether the parties met their respective deadlines under the Project schedules and otherwise pursuant to the Contract;
>
> c. the reasons for Triumph's inability to provide Comau timely with the engineering, design, and Project data necessary for Comau to develop the subject automation and tooling;
>
> d. Bombardier's understanding of the status of the automated driller(s) to be supplied by Comau;
>
> e. whether Triumph must compensate Comau for the myriad delays on the Project, the additional work Comau had to perform beyond the scope of the Contract, and the additional costs incurred by Comau as a result of other circumstances;
>
> f. whether Comau met its metrology obligations to Triumph by providing Triumph with a comprehensive metrology plan; and
>
> g. whether the Project delays were caused by circumstances other than Comau's performance, including, but not limited to, Federal Aviation Administration ("FAA") requirements.

**\*5** Dkt. No. 32 at 2–3. Comau seeks a letter of request asking the Canadian court to issue a subpoena *duces tecum* for a deposition of Daniel Desjardins, Senior Vice–President, General Counsel and Corporate Secretary of Bombardier, and production by Bombadier of documents as to these seven categories of information.

Triumph argues that the motion should be denied in its entirety, or, "[i]n the alternative, if the Court determines that any part of Comau's proposed letter of request should be granted, the Court should limit the letter of request to be consistent with Bombardier's compromise offer," Dkt. No. 35 at 10, which is "[t]o identify the person at Bombadier that would have the most knowledge information about the Comau–Triumph contract, and to search his emails for anything since January 1, 2011 to the present that mentions 'Comau.' " Dkt. No. 36 at App. 06. Triumph contends that "[t]his would permit Bombardier to avoid the undue burden of having to search for and review the broad information potentially responsive to Comau's Requests and still obtain any marginally relevant information Bombardier may have (if any)," but Triumph nevertheless argues that, "given the lengthy process that would still be required to enforce Comau's letter of request in Canada, which may involve affidavits and testimony, and the likelihood that it would not be enforced in any event, Triumph submits that Comau's Motion should be denied." Dkt. No. 35 at 10.

With these standards in mind, the Court addresses the relevant considerations to decide Comau's request.

*Relevance and importance to the litigation of the documents or information requested*

Comau's motion explains that "[t]his action presents a dispute over a contract for tooling and automation equipment for use in manufacturing airplane wings for a new line of global business jets"; that Triumph "contracted with non-party Bombardier, to manufacture airplane wings for Bombardier's new Global 7000/8000 Business Jet (the 'Aircraft')"; that "Comau subsequently contracted with Triumph to provide certain equipment and services required for Triumph's manufacture of the Aircraft wings (the 'Contract' for the 'Project')"; that, "[c]ontemporaneously, Comau subcontracted with Global Tooling Systems, Inc. ('GTS') to manufacture and provide certain tooling required by Triumph to manufacture the Aircraft wings (the 'Subcontract')"; that "Comau and GTS worked on the design and manufacture of the tooling, automation, and other required equipment at their respective facilities in southeast Michigan"; that "[t]heir and Triumph's intent was to later install the equipment at Triumph's facility in Red Oak, Texas, where Triumph would then build the Aircraft wings for Bombardier"; and that, "[o]n at least one occasion, Bombardier representatives traveled to Michigan to observe the progress of Comau and GTS." Dkt. No. 32 at 1–2. According to Comau, "[o]n January 16, 2014, Triumph terminated the Contract with Comau, precipitating this lawsuit in which there are several points at issue regarding the parties' respective obligations and performance under the Contract." *Id.* at 2.

**\*6** Comau asserts that "Bombardier is central to the claims and defenses in this case"; that "Comau seeks evidence from Bombardier that is relevant and/or calculated to lead to the discovery of admissible evidence and that is and will continue to be critical to the prosecution of its Counterclaim

and its defense against Triumph's claims"; that "Comau's possession of this evidence will be crucial both during discovery—particularly in depositions of Triumph personnel and non-party witnesses—and at trial"; and that, "[w]ithout the documents described in the attached Letter of Request, Comau cannot adequately prosecute its Counterclaim or defend against the costly claims levied by Triumph." *Id.* at 4.

Triumph responds that Comau is seeking to serve "extraordinarily broad and cumbersome non-party discovery (the 'Requests') ... from Triumph's customer Bombardier, Inc." and explains that "Triumph supplies fully-assembled wings to Bombardier for its 7000/8000 Series business jet, and Comau was one of dozens of Triumph's subcontractors on that program" and that "Bombardier is not a party to this lawsuit or to the contract between Triumph and Comau that is at issue in this lawsuit, and furthermore is located in Canada." Dkt. No. 35 at 1. Triumph asserts that "Comau has not alleged or asserted any facts on which the Court may conclude that Bombardier has *any* discoverable documents, much less that Bombardier has documents that are 'critical' to Comau's claims or defenses or that cannot be more easily obtained from the parties to this lawsuit"; and that, "[o]n the contrary, Comau's Requests appear designed merely as a fishing expedition and to harass Triumph's customer." *Id.* Triumph contends that "Comau has failed to show that Bombardier has any relevant information that cannot be more easily obtained from the actual parties to the lawsuit" and that, "[w]hile Comau states in conclusory fashion that the information requested is "critical" to its defenses and counterclaim, the information Comau seeks from Bombardier cannot possibly be relevant to Comau's counterclaim," where "[t]hat counterclaim is subject to specific contractual formulations and is not dependent on any information that Bombardier would have in its possession." Dkt. No. 35 at 6–7 & n. 4 (footnote omitted).

Comau replies that Triumph's assertion that "Bombardier does not have documents responsive to Comau's document requests" "is simply not credible," where, "in its July 24, 2015 letter to Comau, Bombardier's counsel did not dispute (and thus tacitly admitted) that it possesses responsive documents" and "Bombardier agreed to make the email records of one of its employees available to Comau." Dkt. No. 37 at 2.

As explained above, Comau seeks seven categories of documents, which the Court will address in turn and which discussion applies equally to the relevance and breadth of the corresponding topics for the requested deposition of a Bombadier representative.

*Request 7(a)*

**\*7** Comau seeks an order for Bombadier to produce "[a]ll email and other communications referring or addressed to any aspect of Comau's performance on the Project, with the exception of any such emails communications exchanged directly with Triumph." Dkt. No. 33 at APPX. 7. Comau explains that it challenges "Triumph's claim that Comau breached the Contract by failing to meet its obligations as Project manager and factory integrator" and that, "[a]s Triumph's customer, Bombardier has critical documents reflecting the quality and sufficiency of Comau's performance during the Project." Dkt. No. 32 at 5.

Triumph responds that "Comau's Requests 7(a), 7(b), 7(d), and 7(f) seek all of Bombardier's communications (other than with Triumph and Comau) regarding Comau's performance under the Contract—including as to Comau's performance as factory integrator and Comau's design and manufacturing of the automated drillers (the only piece of equipment Comau was responsible to manufacture itself)—and referring or addressed to all schedules and metrology on the factory integrator project"; that "[t]hese Requests are nothing more than a fishing expedition into Triumph's customer's files"; that "Comau fails to show how any of Bombardier's internal communications will establish anything about Comau's performance, the contractual requirements between Comau and Triumph as to the timing and schedule of any work, the status of Comau's drillers, or whether Comau was to implement a metrology system, that would not already be available in Triumph's and Comau's documents"; that "Bombardier is not a party to the Contract, did not have obligations to Comau, and did not 'overs[ee] the development of' Comau's work"; that "[t]he only documents concerning Comau's performance that Bombardier would likely have would be secondhand information, derivative of the information provided by Triumph, and would not be relevant to determine whether Comau actually performed"; and that, "[f]urther, the only schedules, deadlines, and purported delays that would be in any way relevant to this lawsuit would be reflected in the communications and information exchanged between Triumph and Comau." Dkt. No. 35 at 7–8.

At the hearing, counsel's disagreement focused on whether any of Bombardier's internal documents or communications that may reflect an opinion, assessment, view, or description

of Comau's performance under its contract with Triumph could be relevant to the parties' claims and defenses in this case. The Court finds that documents in Bombadier's possession that reflect or discuss Comau's performance under its contract with Triumph to provide certain equipment and services required for Triumph's manufacture of the wings for an aircraft for Bombadier would at least be relevant to the claims or defenses raised in this action. What weight or admissibility any such information would ultimately be afforded in resolving the merits of the claims and defenses at summary judgment or trial is a matter for another day.

*Requests 7(b) and 7(g)*

**\*8** Comau seeks an order for Bombadier to produce "[a]ll email and other communications referring or addressed to the timing, schedule, or deadline for any work to be performed on the Project, including all Project schedules, documents showing intermediate and final Project deadlines, and any such deadline extensions, with the exception of any such emails communications exchanged directly with Triumph," as well as "[a]ll communications and other documents involving the FAA referring or addressed to those parts of the Aircraft to be designed or manufactured by Triumph, including, without limitation, all such documents related to the FAA's approval, disapproval, or consideration of any aspect of the Aircraft to be designed or manufactured by Triumph, with the exception of any such communications or documents exchanged directly with Triumph." Dkt. No. 33 at APPX. 7, 8. Comau explains that it challenges "Triumph's claim that Comau caused Project delays that damaged Triumph"; that "Bombardier has emails and other documents reflecting the cause and nature of any and all such delays"; that "[t]hose documents will establish that Comau did not cause the delays"; and that "[t]he documents may also establish that Triumph has already received compensation from Bombardier for any Project delay, reducing, if not eliminating, any claim by Triumph for delay damages." Dkt. No. 32 at 5. Comau further contends that "[t]he parties dispute the cause of the subject Project delays" and that "Bombardier has email, letters, and other documents showing that any and all Project delays were not caused by Comau but rather by other circumstances, including, without limitation, potential FAA involvement and regulatory requirements." *Id.* at 8.

Triumph responds, in addition to the arguments recounted above, that, "as to the Requests for project schedules (7(b)) ..., these Requests are exceptionally overbroad and burdensome, and seek documents that relate not only to Comau's obligations under the Contract but also information as to schedules and metrology after Comau was terminated in January 2014" and that "Comau has not shown why any such information from Bombardier would be relevant to its defenses or claim, or what Bombardier would have in any event that could not be obtained from Triumph, much less how any of the information it requests is 'critical' to its defenses to support granting of the Motion." Dkt. No. 35 at 8. And Triumph argues that "Request 7(g), seeking all documents involving the FAA, is a quintessential fishing expedition"; that "Comau asserts nothing to suggest that any FAA approvals caused any delays or impacted the Triumph–Comau schedule, or that there was even any FAA consideration during the period Comau served as the factory integrator"; that "Triumph has already informed Comau that there were no responsive documents relevant to this type of request when it provided Responses to Comau's Second Request for Production in December"; and that "[f]urther, Request 7(g) is exceptionally broad, expanding to every document, including through the present, regarding FAA consideration of Bombardier's airplane that would have anything to do with the wing built by Triumph, which is not relevant to Comau's defenses or claim." Dkt. No. 35 at 9–10.

**\*9** And, in a letter to Comau's counsel's, Bombadier's counsel raises the concern that, through Request 7(g), Comau "seeks highly proprietary information from Bombardier concerning its communications with regulators about the wing design" and that, "[i]f there is a link between the FAA approval process and what Comau did or did not do in manufacturing tooling equipment, it is not detailed," and, "[i]nsofar as Comau wishes to show that concurrent delays in regulatory approvals have affected Bombardier's manufacture of the Global aircraft, we cannot see how that would excuse any delays in Comau's performance under its contract with Triumph," while, if "the objective is [to] show that concurrent delays in the FAA approval process have impacted *Triumph's* performance, then that subset of regulatory information should be in Triumph's possession." Dkt. No. 36 at App. 06.

The Court finds that Request 7(g) is simply too far afield and requests an overly broad scope of information that, as framed or even as could be reframed, is not likely to provide relevant information for this case. Any documents related to delays in the project to manufacture the aircraft wings should be covered by Request 7(b), which the Court finds, for purposes of this motion, to seek relevant information insofar as Bombadier's understanding of the project's schedule and deadlines could be relevant to claims

Case 4:20-cv-02123   Document 81-4   Filed on 10/25/21 in TXSD   Page 8 of 13
Triumph Aerostructures, LLC v. Comau, Inc., Not Reported in F.Supp.3d (2015)
2015 WL 5502625

and defenses in this case. This extends to documents reflecting the timing, schedule, or deadline for any work to be performed on the project even after Comau's termination in January 2014 where information on deadlines and timing after that time may be relevant to the disputes between the parties as to the causes for delays and the need for imposing or expediting certain deadlines. Additionally, as Comau's counsel noted at the hearing, internal documents and communications from Bombadier may reflect or memorialize communications between Bombadier and Triumph—such as telephone conferences—that would not be captured by any request for written communications between Bombadier and Triumph.

*Request 7(c)*

Comau seeks an order for Bombadier to produce "[a]ll email and other communications referring or addressed to the release(s) of design and engineering data from Bombadier to Triumph in relation to the Project, including, without limitation, the timing and composition of each such release, with the exception of any such emails communications exchanged directly with Triumph." Dkt. No. 33 at APPX. 7. Comau explains that it "seeks relief in its Counterclaim for Triumph's failure to provide critical design and engineering data to Comau pursuant to the Contract"; that, "[a]side from paying Comau, Triumph's principal obligation under the Contract was to provide Comau with the engineering and manufacturing process data required to design and develop the manufacturing equipment and automation required to produce the Aircraft wings"; that, "[a]ccording to Triumph, Bombardier was to provide the data Triumph"; that "[t]he Contract required Triumph to release the data to Comau in three or four staged intervals for each of the several engineering and manufacturing 'elements' into which the Project was organized"; that, "not long after the parties commenced work on the Project, Triumph failed to provide the data pursuant to the contractual data release schedule," and "the data that Triumph did provide was late, often disorganized, and sent to Comau in multiple releases far exceeding the limited number of releases set forth in the Contract"; that, "[a]long the way, Triumph indicated that its inability to provide timely data to Comau was due to Bombardier's delay in releasing engineering definition to Triumph" and "further asserted that it was not obligated to limit its data provision to Comau to the three or four staged data releases per element"; that "[t]he proposed Letter of Request seeks documents from Bombardier that will shed light on Triumph's data-release obligations and related performance under the Contract." Dkt. No. 32 at 5–6.

**\*10** Triumph responds that, "[i]n Requests 7(c) and 7(e), Comau seeks Bombardier's communications (other than with Triumph and Comau) regarding releases of design and engineering data from Bombardier to Triumph and Triumph's claims for additional compensation from Bombardier"; that "[t]hese Requests are also exceptionally overbroad and burdensome, and again reflect nothing more than a harassing fishing expedition of Triumph's customer"; and that, "[r]ead most broadly, Request 7(c) would potentially require Bombardier to produce all of its internal communications regarding every data release to Triumph on the entire 7000/8000 wing program—none of which have any relevance to this lawsuit"; and that "Comau has asserted nothing in its Motion indicating why or how Bombardier's internal communications regarding its data releases to Triumph would have any bearing on Comau's defenses or claim, much less that they are so critical as to warrant such a broad intrusion into the files of a foreign third party." Dkt. No. 35 at 9.

Comau replies that "[t]he data release issue is at the heart of this case"; that "[c]urious to Comau is why there were so many data releases from Bombardier to Triumph when Triumph promised Comau that Comau would receive only three or four timely data releases per Project element, with revision control"; that "Comau anticipates that Bombardier's documents will show that Triumph over-promised in this respect, was unable to meet its contractual obligations to Comau, and terminated the Contract pre-emptively to gain leverage over Comau"; and that "Triumph cannot plausibly claim that the data-release request is improper." Dkt. No. 37 at 2 n. 4.

The Court finds that the requested documents as to data releases from Bombadier to Triumph are, for purposes of this motion, relevant to claims and defenses in this case and that this request is, for purposes of this motion, sufficiently narrowly tailored to be included in the letter of request.

*Request 7(d)*

Comau seeks an order for Bombardier to produce "[a]ll email and other communications referring or addressed to the status of any Driller that Comau was to supply to Triumph, with the exception of any such emails communications exchanged directly with Triumph. The term 'Driller means any of the Numerical Control Production Drills that were to be utilized to manufacture Aircraft wings at the Project site." Dkt. No. 33 at APPX. 7–8. Comau explains that it challenges "Triumph's claim that Comau was unable to manufacture

Case 4:20-cv-02123 Document 81-4 Filed on 10/25/21 in TXSD Page 9 of 13
Triumph Aerostructures, LLC v. Comau, Inc., Not Reported in F.Supp.3d (2015)
2015 WL 5502625

the automated drillers which Triumph intended to use in assembling the Aircraft wings" and that, "[a]s development of this automation was a significant part of the Project, and as Bombardier oversaw the development of this automation, Bombardier has emails and other documents reflecting the quality of Comau's performance in this respect." Dkt. No. 32 at 6–7.

For essentially the reasons discussed above as to Requests 7(a) and 7(b), the Court finds that documents requested through Request 7(d) are, for purposes of this motion, relevant to claims and defenses in this case and that this request is, for purposes of this motion, sufficiently narrowly tailored to be included in the letter of request.

*Request 7(e)*

**\*11** Comau seeks an order for Bombadier to produce "[a]ll communications and other documents referring or addressed to any and all commercial or other claims submitted to Bombadier by Triumph, including, without limitations, any and all requests for additional compensation due to a delay or other circumstance, with the exception of any such communications or documents exchanged directly with Triumph." Dkt. No. 33 at APPX. 8. Comau explains that "Bombardier has documents to disprove Triumph's claim that it suffered damages caused by Project delays and other developments on the Project"; that "[t]he documents will show the extent to which Triumph sought or received compensation from Bombardier for any such developments"; and that "[t]he documents will also show that Triumph wrongfully denied Comau additional compensation for myriad Project delays, additional work beyond the scope of the Contract, and additional costs caused by other circumstances." Dkt. No. 32 at 7.

Triumph responds, in addition to the arguments recounted above, that, "with regard to Triumph's claims for compensation from Bombardier, while Comau states that this information will show the 'extent to which Triumph sought or received compensation from Bombardier,' Motion at 7, any such information could be obtained from Triumph, if relevant at all" and that "Comau's request for all documents related to all commercial claims submitted by Triumph to Bombardier is grossly overbroad and goes far beyond seeking information regarding whether Triumph received compensation for purported project delays affecting Comau." Dkt. No. 35 at 9.

The Court disagrees with Triumph's position as to this request. As discussed at the hearing, documents reflecting Bombadier's view of and action on any request for additional compensation by Triumph, whether on its own behalf or on behalf of one of its subcontractors, would be, for purposes of this motion, relevant to claims and defenses addressed to Triumph's refusing Comau's requests for additional compensation.

*Request 7(f)*

Comau seeks an order for Bombadier to produce "[a]ll communications and other documents referring or addressed to metrology in relation to the Project, with the exception of any such communications or documents exchanged directly with Triumph." Dkt. No. 33 at APPX. 8. Comau explains that "[t]he term 'metrology' generally refers to the supplemental equipment used to monitor the tooling and automation to ensure that they at all times operate within the prescribed tolerances to produce airplane wings that meet Bombardier's requirements"; that "[t]he parties dispute the scope of Comau's obligation under the Contract regarding the development of a metrology plan and the installation of metrology equipment"; and that, "[a]s Triumph's customer, which reviewed and oversaw the plans for Project metrology, Bombardier has documents relevant to Comau's defense on this issue." Dkt. No. 32 at 7 & n. 3 (footnote omitted).

**\*12** Triumph responds, in addition to the arguments recounted above, that, "as to the Requests for ... documents addressing metrology (7(f)), these Requests are exceptionally overbroad and burdensome, and seek documents that relate not only to Comau's obligations under the Contract but also information as to schedules and metrology after Comau was terminated in January 2014" and that "Comau has not shown why any such information from Bombardier would be relevant to its defenses or claim, or what Bombardier would have in any event that could not be obtained from Triumph, much less how any of the information it requests is "critical" to its defenses to support granting of the Motion." Dkt. No. 35 at 8.

For essentially the reasons discussed above as to the other requests, the Court finds that documents requested through Request 7(f) are, for purposes of this motion, relevant to claims and defenses in this case and that this request is, for purposes of this motion, sufficiently narrowly tailored to be included in the letter of request, even insofar as the request seeks documents after Comau's termination in January 2014.

*Burden to be imposed on Bombadier*
Triumph contends that Comau cannot show—and has done nothing to show—that its discovery requests are not unduly burdensome to the foreign party and that "Bombardier itself has established that the information requested is overly broad and unduly burdensome." Dkt. No. 35 at 4. Triumph asserts that "[m]ost of Comau's Requests seek information as to Comau's or Triumph's obligations under the Factory Integrator Agreement between Triumph and Comau (the 'Contract')"; that, "even if Comau could show a likelihood that Bombardier has any such documents (which it does not), it has not shown how they would be in any way relevant or 'critical' to Comau's claims or defenses in this lawsuit, much less 'shed light' on information that is likely available from Triumph or already in Comau's possession"; and that "Bombardier's views of how Comau and/or Triumph performed, or of what Comau and/or Triumph was required to do under the Contract is neither dispositive nor relevant to the Court's determination of those questions, and there is no reason to burden Triumph's customer, a non-party, with Comau's fishing expedition." *Id.* at 4–5.

And, in a letter to Comau's counsel's, Bombadier's counsel explains that, while "Comau has indicated that Bombardier need not produce such information to the extent already in Triumph's possession, and should thus limit its production to internal communication amongst Bombadier employees or with third-parties," this may increase Bombadier's burden in responding because "[w]e cannot see a way to search for and review responsive documents while eliminating those documents that may be in Triumph's possession," and "the limitation in the requests will not, as a practical matter, serve to reduce the significant burden now being imposed upon Bombadier." Dkt. No. 36 at App. 05.

**\*13** Comau replies that its "Comau's requests seek documents that are not in the possession of Comau or Triumph and are narrowly focused at the disputed issues." Dkt. No. 37 at 2. Comau further asserts that, "[a]s evidenced by Bombardier's agreement to produce at least some of the documents requested by Comau, and contrary to Triumph's assertions, Comau's requests are far from burdensome" and that "Comau seeks documents from Bombardier that Triumph and Comau do not possess but that pertain to their performance on the Project." Dkt. No. 37 at 2. According to Comau's reply, "[t]he majority of the requested documents are likely easy-to-access, electronic email communications," "Bombardier can run a key-term search in its email servers to locate them," and "Bombardier admitted its ability to run such searches in its July 24, 2015 letter to Comau's counsel." *Id.* at 3.

The Court agrees with Comau that Triumph's speculation and the limited discussion in Bombadier's counsel's letter to Comau's counsel as to the burden that may be imposed on Bombadier do not weigh in favor of denying the letter of request as modified by the Court. The Court concludes that any specific issues of undue burden can most appropriately be raised by Bombadier itself in the Canadian tribunal.

*The degree of specificity of the requests*
Comau asserts that its "discovery requests to Bombardier are narrowly tailored to procure relevant evidence that Comau cannot obtain from Triumph" and "only seek documents internal to Bombardier or shared between Bombardier and any third parties." Dkt. No. 37 at 3 (footnote omitted). Comau explains that it "seeks documents that *address* the parties' performance on the Project—the overarching issue in this case." *Id.* at 3 n. 5. More specifically, Comau contends that it "has narrowly tailored its requests to seek documents that relate directly to (I) Comau's performance during the Project, (ii) the cause and nature of any and all Project delays, (iii) Triumph's inability to provide timely data releases (for which Triumph blames Bombardier), (iv) the quality of Comau's performance in manufacturing the automated drillers, (v) Bombardier's internal discussions regarding Triumph's requests for, and receipt of, compensation for Project delays and other developments on the Project, (vi) whether Comau met its metrology requirements, and (vii) Bombardier's internal discussions regarding the causes of any and all Project delays." *Id.* at 6–7.

The Court has addressed above the specificity of each request in light of the relevance concerns raised by Triumph and finds that, with the Court's modifications, the requests are narrowly tailored to procure relevant evidence that Comau cannot obtain from Triumph.

*Whether the information originated in the United States*
Triumph asserts that this factor in the comity analysis weighs against granting Comau's request because "[t]he information that Comau seeks is generally Bombardier's internal communications"; "Bombardier is located in Canada, and Comau has not identified any Bombardier individual located in the United States whose documents it seek through the proposed Requests"; and, "in most of Comau's Requests, it has excluded information Bombardier exchanged with

Triumph or Comau, thus excluding the information that originated in the United States." Dkt. No. 35 at 5.

**\*14** Comau replies that "[t]he Court should dismiss this argument," where "Triumph attempts to penalize Comau for narrowing the document requests' scope to exclude Bombardier's communications with Triumph or Comau" after "Comau made that accommodation as an effort to obtain the documents from Bombardier amicably." Dkt. No. 37 at 7.

Further, Comau contends that "the fact that Bombardier's email servers may be located in Canada is not dispositive." *Id.* at 8. "[W]here 'the information cannot be easily obtained through alternative means,' the origin of the information can be 'counterbalance[d]' by the inability to obtain the information through an alternative means, thus favoring disclosure." *Lantheus,* 841 F.Supp.2d at 793 (quoting *Gucci Am., Inc. v. Curveal Fashion,* No. 09 Civ. 8458(RJS)(THK), 2010 WL 808639, at \*3 (S.D.N.Y. Mar. 8, 2010)) (emphasis omitted). Accordingly, Comau argues that its "inability to obtain the information it seeks from a known source other than Bombardier favors the issuance of the Letter of Request." Dkt. No. 37 at 8.

And Comau asserts that "Triumph has failed to establish that all of the documents sought by Comau originated outside of the United States," where, "[w]hile Bombardier is a Canadian entity, it maintains offices and subsidiaries in the United States, which may have been involved in the creation or communication of the requested documents" and where "all of the work on the Project was and is being performed in the United States, under Bombardier's supervision ." *Id.*

Because, for the reasons explained above and in the analysis that immediately follows, the Court finds that the information that Comau seeks cannot be easily obtained through alternative means, the Court further finds that this factor does not weigh dispositively against issuing a letter of request for discovery from Bombardier.

*The availability of alternative means of securing the information*
Comau explains that, "[h]oping to obtain the documents in the United States, Comau served a document subpoena upon Bombardier Aerospace Corporation ('BAC') of Dallas, Texas in November 2014"; that, "[i]n response to that subpoena, counsel for Bombardier contacted Comau and informed Comau that, to the best of his knowledge, BAC had no responsive documents"; that "Bombardier's counsel further indicated that Bombardier would not at that time waive formal service of a subpoena upon itself in Quebec, nor would it voluntarily produce documents of the kind sought in the subpoena to BAC"; and that, "[i]n June 2015, Comau sent Bombardier's counsel a letter seeking Bombardier's consent to voluntarily produce the documents identified in this motion"; but that, "[a]s of the date of this motion, Bombardier has not agreed to produce the documents voluntarily." Dkt. No. 32 at 4–5 (footnote omitted).

Comau further asserts that "[t]here are no alternative means for seeking the requested documents"; that its "revised requests expressly seek documents from Bombardier *not* in the possession of Triumph"; and that "Triumph does not, and cannot, argue that Triumph, or any other third party, possesses Bombardier's internal communications and other relevant documents." Dkt. No. 37 at 7.

**\*15** Triumph has not specifically addressed this factor in its response or at the hearing and appears to take the position, as to this factor, simply that Comau can obtain from Triumph any documents that would, in Triumph's view, even possibly be relevant to the claims and defenses in this case. For the reasons explained above, the Court does not accept that position and finds that this factor weighs in favor of issuing a letter of request.

*Competing interests of the nations whose laws are in conflict*
Triumph asserts that Comau's requests to Bombardier "are outside the scope of discovery likely allowable under applicable Quebecois law in any event." Dkt. No. 35 at 1. Triumph contends that "Quebec has a statute that blocks the type of discovery that Comau requests the Court order, that "discovery in Canada is more limited than in the United States, as the information sought must be relevant to material facts at issue," and that "Comau would be unlikely to obtain the type of non-party discovery from Bombardier in Canada that is seeks, and it should not be able to use the American court system to request otherwise non-discoverable information." *Id.* at 5–6; *see also* Dkt. No. 36 at App. 04–05.

The possibility that Quebecois law would not permit at least the document discovery that Comau asks this Court to request that a Canadian court order—and not that this Court itself order (as it cannot do so)—is a relevant consideration. But the Court is persuaded by the decisions of other district courts that have decided that whether the discovery sought

through a letter of request will be executed in light of possible limitations in foreign law is a matter appropriate for the foreign tribunal, rather than this Court, to determine. *See, e.g., Cascade Yarns, Inc. v. Knitting Fever, Inc.,* No. C10–861 RSM, 2014 WL 202102, at * 2 (W.D.Wash. Jan.17, 2014). As one court explained, "[i]f the defendants' requests suffer from such maladies under the laws of [the foreign country], then the requests will presumably be narrowed by the appropriate judicial authorities in those countries," but, at this stage, "[t]he court is content that such officials will make the appropriate determination under their own law." *Pronova BioPharma Norge AS v. Teva Pharms. USA, Inc.,* 708 F.Supp.2d 450, 453–54 (D.Del.2010) (footnotes and internal quotation marks omitted) (citing, among other cases, *Societe Nationale,* 482 U.S. at 542 ("It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions, and we are satisfied that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts .")). "Just as an American court enforcing letters rogatory issued in a foreign court may limit enforcement of the order, foreign courts charged with enforcing letters rogatory may limit enforcement of the discovery device where appropriate." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.,* 841 F.Supp.2d 769, 794 (S.D.N.Y.2012) (citation omitted). Here, "[w]hether Canadian law would limit enforcement of the [requested] letter[ ] rogatory, in whole or in part, is a determination for the" Canadian court. *Id* . at 795–96 ("In enforcing the amended letters rogatory, the Ontario Court —which, as noted, is the judicial body in the best position to determine the reach of Canadian laws that may restrict AECL's production—may limit the enforcement of the letters rogatory to those Requests that do not violate Canadian law.").

## Conclusion

*\*16* Defendant/Counter–Plaintiff, Comau, Inc.'s Motion for a Letter of Request (Letter Rogatory) to Obtain Documents from Non–Party Bombadier Inc. in Canada [Dkt. No. 32] is GRANTED in part and DENIED in part and ORDERS that Comau may seek from Bombardier a deposition and production of the documents described in the attached Request for International Judicial Assistance (Letters Rogatory), pursuant to 28 U.S.C. § 1781 and Federal Rule of Civil Procedure 28(b).

The Court finds that Bombardier, a Canadian corporation located in Montréal, Québec, Canada, possesses relevant and discoverable evidence and documents that would aid in the establishment of facts necessary to Comau's prosecution of its counterclaim and its defense against the claims of Triumph; that Mr. Daniel Desjardins, Senior Vice–President, General Counsel and Corporate Secretary of Bombardier, is an appropriate witness possessing relevant and discoverable evidence, or is an appropriate individual having access to such evidence in Bombardier's possession, that would aid in the establishment of facts necessary to Comau's prosecution of its counterclaim and its defense against the claims of Triumph; that, in the event that the Québec Superior Court considers it appropriate, this Request for International Judicial Assistance (Letters Rogatory) shall apply to an equivalent Bombardier representative with relevant and discoverable evidence, or to an appropriate individual having access to such evidence in Bombardier's possession, that would aid in the establishment of facts necessary to Comau's prosecution of its Counterclaim and its defense against the claims of Triumph; and that Bombardier is outside the subpoena power of this Court.

The Court will sign and have the Clerk affix the seal of the Court to the revised Request for International Judicial Assistance (Letters Rogatory) attached to this order as Exhibit 1, seeking a deposition and documents from Bombardier via the Quebec Superior Court, for the District of Montreal, 1 Notre Dame Street East, Montreal, Quebec, Canada, H2Y 1B6. By **September 28, 2015,** Comau's counsel shall cause this revised letter to be translated to French and shall then send a copy of the translated letter to the Court's email address (Horan_Orders@txnd.uscourts.gov), copying Triumph's counsel. The Court will then Court notify Comau's counsel when the Letter of Request (in English and French) is ready for collection, and Comau's counsel shall then arrange for its transmission to local counsel in Canada.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5502625

## Footnotes

| | |
|---|---|
| 1 | Under § 205(a)(5) of the E–Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[ ] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly. |

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.