United States District Court
Southern District of Texas
**ENTERED**
September 19, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DYNAENERGETICS EUROPE GMBH,       §
and DYNAENERGETICS US, INC.,      §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-20-2123
                                  §
HUNTING TITAN, INC.,              §
                                  §
            Defendant.            §

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action is brought by plaintiffs, DynaEnergetics Europe GmbH, and DynaEnergetics US, Inc., ("DynaEnergetics" or "Plaintiffs"), against defendant, Hunting Titan, Inc. ("Hunting Titan" or "Defendant"), under the Patent Act of the United States, 35 U.S.C. § 101, <u>et seq.</u>, including 35 U.S.C. § 271, for alleged infringement of two United States patents for perforation gun components and systems used in oil and gas exploration:[1] (1) U.S. Patent No. 10,429,161 ("'161 Patent"), filed on June 8, 2017, and issued on October 1, 2019, to DynaEnergetics GmbH & Co. KG (now DynaEnergetics Europe GmbH);[2] and (2) U.S. Patent No. 10,472,938 ("'938 Patent"), filed on March 20, 2019, and issued on November

_____

[1]Second Amended Complaint (actually Plaintiffs' third amended complaint), Docket Entry No. 63, pp. 1-2 ¶¶ 1-6. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]<u>Id.</u> at 3 ¶ 11.  <u>See also</u> '161 Patent, Exhibit A to Second Amended Complaint, Docket Entry No. 63-1.

12, 2019, to JDP Engineering and Machine Inc. and DynaEnergetics GmbH & Co. KG (now DynaEnergetics Europe GmbH).[3]  The following motions are pending before the court: Plaintiffs' Motion for Summary Judgment ("Plaintiffs' MSJ") (Docket Entry No. 128); Plaintiffs' Opposed <u>Daubert</u> Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D. (Docket Entry No. 129); Defendant Hunting Titan, Inc.'s Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 133); Defendant Hunting Titan, Inc.'s <u>Daubert</u> Motion to Exclude Expert Testimony of Andrew W. Carter (Docket Entry No. 134); Defendant Hunting Titan, Inc.'s <u>Daubert</u> Motion to Exclude Expert Testimony of Mr. Tod Tumey (Docket Entry No. 135); Defendant Hunting Titan's Motion to Strike ("Defendant's Motion to Strike") (Docket Entry No. 136); Plaintiffs' Opposed <u>Daubert</u> Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D. (Docket Entry No. 141); Plaintiffs' Opposed Motion to File a Sur-Reply in Response to Defendant's Reply Brief in Further Support of Its Motion for Summary Judgment ("Plaintiffs' Motion to File Sur-Reply") (Docket Entry No. 175); and Defendant Hunting Titan, Inc.'s Opposed Motion for Leave to File Amended Answer and Counterclaims Asserting Additional Inequitable Conduct Defense ("Defendant's Motion to Amend") (Docket Entry No. 180).  For the reasons stated below Plaintiffs' MSJ will be granted in part and denied in part,

---

[3]<u>Id.</u> at 3 ¶ 12.  <u>See also</u> '938 Patent, Exhibit B to Second Amended Complaint, Docket Entry No. 63-2.

Defendant's MSJ will be granted in part and denied in part, Defendant's Motion to Strike will be denied as moot, Plaintiffs' Motion to File Sur-Reply will be denied, Defendant's Motion to Amend will be denied, and the <u>Daubert</u> motions will all be denied without prejudice to being reurged at trial.

## I. <u>Procedural Background and Undisputed Facts</u>

### A.   **Procedural Background**

This patent infringement action was originally filed on January 30, 2020, in the Western District of Texas.  Defendant filed a motion to transfer to this district, which was granted on June 16, 2020.[4]  On September 4, 2020, the court consolidated this action with a previously filed patent infringement action involving the same parties, but different patents (Civil Action No. 17-3784), and stayed both cases pending review by the United States Patent and Trademark Office ("USPTO") (Docket Entry No. 49).  On July 15, 2021, the court entered a Memorandum Opinion and Order (Docket Entry No. 50) vacating the consolidation and stay order, denying Plaintiffs' motion for preliminary injunction in favor of consolidating preliminary injunction proceedings under Rule 65(a) with trial on the merits, and requiring the parties to submit a proposed, accelerated discovery schedule.  On July 22, 2021, the court entered a Scheduling Order (Docket Entry No. 55), which has

---

[4]Order Granting Defendant Hunting Titan's Motion to Transfer Venue for Potential Consolidation under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 42(a), Docket Entry No. 41.

been amended several times.  On August 27, 2021, Plaintiffs filed their Second Amended Complaint (Docket Entry No. 63), alleging that Defendant infringes the '161 and '938 Patents.  Defendant answered on September 10, 2021, by filing Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint (Docket Entry No. 69), asserting affirmative defenses and counterclaims seeking declaratory judgment for invalidity and unenforceability due to inequitable conduct.  On September 24, 2021, Plaintiffs filed Plaintiffs' Motion to Dismiss and Strike Defendant's Third Counterclaim and Fifth Affirmative Defense for Unenforceability due to Inequitable Conduct (Docket Entry No. 71), which Plaintiffs withdrew in favor of filing their pending motion for summary judgment.[5]

On October 28, 2021, the court held a hearing pursuant to Markman v. Westview Instruments, Inc., 116 S. Ct. 1384, 1387 (1996) (Docket Entry No. 82), and on November 23, 2021, the court issued a Memorandum Opinion and Order (Docket Entry No. 95) holding that three disputed claim terms, "tandem seal adapter," "signal-in connector," and "through wire connector," need no construction because each term is subject to its plain and ordinary meaning. The most recent Scheduling Order was entered on February 7, 2022 (Docket Entry No. 125), which reopened discovery and extended the motion filing deadline to March 8, 2022.

---

[5]See Plaintiffs Notice of Withdrawal of Motion to Dismiss and Strike Defendant's Third Counterclaim and Fifth Affirmative Defense for Unenforceability Due to Inequitable Conduct, Docket Entry No. 118, p. 1 & n. 1.

## B.    Undisputed Facts

### 1.    Technology: Perforation Guns

Plaintiffs and Defendant compete in the manufacture and sale of perforating gun systems used in the oil and gas industry. Plaintiffs allege that Defendant's H-1™ Perforating System ("H-1 System") infringes patents related to their DynaStage System.

"Perforation guns are specialized assemblies that include explosives and are deployed into oil and gas wells where the explosives are detonated to 'perforate' hydrocarbon-containing underground formations, for extracting fossil fuels and natural gas."[6]

> [T]he perforating process involves carrying explosive charges downhole (into the well) and positioning them at a desired depth in order to open up communication to the rock and embedded hydrocarbons upon detonation of the explosives. The shaped charges open up tunnels through the wellbore casing lining the well and radia[ting] outward into the surrounding formation. The perforation tunnels act as conduits through which reservoir fluids flow from the formation into the wellbore and up to the surface during the production phase of the well. Each perforation creates a channel that allows oil and/or gas to leave the rock and enter the oil or gas well. . .
>
> Perforation guns are the vessels used to transport and deliver the explosive shaped charges within the wellbore and they come in a variety of sizes and configurations. . .[7]

---

[6]DynaEnergetics Europe GMBH and DynaEnergetics US, Inc.'s Opening Claim Construction Brief ("Plaintiffs' Claim Construction Brief"), Docket Entry No. 70, p. 6.  See also Defendant's MSJ, Docket Entry No. 133, p. 11.

[7]Declaration of John Rodgers, Ph.D. ("Rodgers Declaration"), ¶¶ 16-17, Exhibit A to Plaintiffs' Claim Construction Brief, Docket Entry No. 70-1, p. 7.  See also Defendant's Responsive Claim Construction Brief, Docket Entry No. 73, pp. 6-8.

Conventional perforation guns are limited due to, <u>inter alia</u>, "the required on-site assembly of the charge tube, positioning of the charge tube into a gun carrier, and on-site wiring of electrical and ballistic connections used to relay electrical detonation signals and detonate the shaped charges."[8]  Plaintiffs contend that

> [t]he inventors of the Patents-in-Suit removed these limitations and ushered in the era of modular, "pre-wired," factory-assembled perforation guns that do not require cumbersome on-site assembly of internal components or wiring of electrical and/or ballistic connections. . . These new and improved perforating gun systems contain contactable electrical feed through connections (as opposed to wired connections) that replace the wiring and crimping between successive perforating guns in a string that was used in the prior art conventional systems. . .[9]

Defendants contend that as early as 2012 other companies were marketing perforating guns that required no wiring or setup on site, <u>e.g.</u>, Baker Hughes' SurePerf Select-Fire perforating system, and Schlumberger's SafeJet perforating gun system.[10]

---

[8]Rodgers Declaration, ¶ 36, Exhibit A to Plaintiffs' Claim Construction Brief, Docket Entry No. 70-1, pp. 18-19.  <u>See also</u> Defendant's Responsive Claim Construction Brief, Docket Entry No. 73, p. 8.

[9]Plaintiffs' Claim Construction Brief, Docket Entry No. 70, p. 9 (citing Rodgers Declaration, ¶ 37, Exhibit A to Plaintiffs' Claim Construction Brief, Docket Entry No. 70-1, p. 19).

[10]Defendant Hunting Titan's Technical Tutorial, Docket Entry No. 66, pp. 9-10.

2.  Asserted Patents and Their Prosecution History

The '161 Patent, entitled "Perforation Gun Components and Systems," was issued on October 1, 2019.  A copy of the '161 Patent is attached to Plaintiffs' Second Amended Complaint as Exhibit A (Docket Entry No. 63-1).[11]  Plaintiffs assert that "[t]he '161 Patent is generally directed to the internal components of a perforating gun system designed as a modular system that could be provided to customers as a modular perforating gun system kit."[12]

The '938 Patent, entitled "Perforation Gun Components and System," was issued on November 12, 2019[,] to JDP Engineering and Machine Inc. and DynaEnergetics GmbH & Co. KG (now DynaEnergetics Europe GmbH), which has assigned any and all of its rights and interest to DynaEnergetics Europe GmbH.  A copy of the '938 Patent is attached to Plaintiffs' Second Amended Complaint as Exhibit B (Docket Entry No. 63-2).[13]  Plaintiffs assert that "[t]he '938 Patent claims are directed to the electrical relay between

_____

[11]Plaintiffs' Second Amended Complaint, Docket Entry No. 63, p. 3 ¶ 11.

[12]Plaintiffs' MSJ, Docket Entry No. 128, p. 10 (citing Expert Report of John Rodgers, Ph.D. ("Rodgers' Expert Report"), ¶¶ 42-56, Exhibit 3 attached to Declaration of Christine Dupriest in Support of DynaEnergetics' Motion for Summary Judgment and Daubert Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D. ("Dupriest Declaration"), Docket Entry No. 131-1, pp. 24-33).

[13]Plaintiffs' Second Amended Complaint, Docket Entry No. 63, p. 3 ¶ 12.

perforation guns, as well as to a wireless detonator."[14]  Plaintiffs contend that

> [t]he claimed Plug and Go™ detonator permits pre-wired, pre-loaded, factory-assembled perforation guns that do not require on-site wiring of electrical and/or ballistic connections and eliminates the risk of inadvertent detonations from stray electrical current or voltage, reducing potential safety problems with surface handling of explosives and minimizing the assembly time by removing the need for hand-wiring or crimping wires at the wellsite.[15]

### 3.  Accused Products

Plaintiffs allege that Defendants' H-1 System infringes claims 1, 4, and 20 of the '161 Patent and claims 1, 5, and 7-12 of the '938 Patent, as set forth in the claim charts attached to Plaintiffs' Second Amended Complaint as Exhibits C (Docket Entry No. 63-3), and D (Docket Entry No. 63-4), respectively,[16] and Plaintiffs' Preliminary Infringement Contentions.[17]

---

[14]Plaintiffs' MSJ, Docket Entry No. 128, p. 10 (citing Rodgers Expert Report, ¶¶ 57-61, Exhibit 3 to Dupriest Declaration, Docket Entry No. 131-1, pp. 34-35).

[15]Id. (citing Rodgers Expert Report, ¶¶ 56, 60-61, Exhibit 3 to Dupriest Declaration, Docket Entry No. 131-1, pp. 33-35).

[16]Plaintiffs' Second Amended Complaint, Docket Entry No. 63, p. 4 ¶¶ 16-17.

[17]Exhibit 3 to Declaration of Ryan E. Dornberger in Support of (1) Defendant Hunting Titan, Inc.'s Motion for Summary Judgment, (2) Motion to Strike, (3) Daubert Motion to Exclude Expert Testimony of Andrew W. Carter, and (4) Daubert Motion to Exclude Expert Testimony of Mr. Tod Tumey ("Dornberger Declaration in Support of Various Motions"), Docket Entry No. 137-3, p. 3.

## II. <u>Motions to Exclude and Strike Expert Testimony</u>

### A. **Motions to Exclude**

Plaintiffs have filed two motions to exclude the opinions and testimony of William Fleckenstein, Ph.D. (Docket Entry Nos. 129 and 141), arguing that he is not a person of ordinary skill in the art ("POSITA"), his invalidity and inequitable conduct opinions are unreliable, and he should be precluded from offering opinions that contradict the court's claim construction order. Defendant moves to exclude the expert testimony of Andrew W. Carter (Docket Entry No. 134), arguing that his lost profit analysis is unreliable because he did not apportion, and that a settlement agreement on which he relies to support his reasonable royalty calculation is unreliable. Defendant also moves to exclude the expert testimony of Tod Tumey (Docket Entry No. 135), arguing that he is not qualified to offer expert testimony, he has not employed a reliable methodology, and his testimony will not be relevant or helpful to the trier of fact. The court's practice is to rule on motions to exclude expert testimony during the course of trial because experts frequently modify their opinions, and at trial counsel often establish more extensive predicates for the experts' testimony. Moreover, the context in which an expert's opinion is offered is necessary to effectively rule on such issues. Therefore, the motions to exclude expert testimony will all be denied without prejudice to being reurged during trial.

**B.    Defendant's Motion to Strike**

Defendant moves to strike the testimony of Plaintiffs' experts Dr. Rodgers and Andrew W. Carter regarding the H-1W perforating gun system (Docket Entry No. 136).  Defendant argues that reference to H-1W products should be struck from the testimony of Dr. Rodgers and Mr. Carter because Plaintiffs have not acted diligently to add the non-accused H-1W product to their infringement contentions. Because the court has been able to resolve the other pending motions without relying on the opinions or testimony of Dr. Rodgers or Mr. Carter regarding Defendant's H-1W product, Defendant's motion to strike will be denied as moot without prejudice to being reurged during trial.

## III. <u>Plaintiffs' Motion to File Sur-Reply</u>

Plaintiffs "move for leave to file a sur-reply of no more than five pages to address certain material false statements made for the first time in Defendant's . . . Reply in Support of Its Motion for Summary Judgment (Dkt. 163, 'Reply')."[18]  Asserting that "[t]he proposed sur-reply is merely a strategic effort to get the last word on [Defendant's MSJ] of [n]on-infringement,"[19] Defendant argues

---

[18]Plaintiffs' Motion to File Sur-Reply, Docket Entry No. 175, p. 1.

[19]Defendant Hunting Titan, Inc.'s Opposition to Plaintiffs' Motion for Leave to File Sur-Reply ("Defendant's Opposition to Plaintiffs' Motion to File Sur-Reply"), Docket Entry No. 178, p. 2.

that "[b]ecause Plaintiffs cannot show that Hunting Titan raised new evidence or arguments in its Reply . . ., Plaintiffs' Motion for Leave to File a Sur-Reply should be denied."[20]  Asserting that none of the three statements at issue was made for the first time in the reply, Defendant argues that two of the statements were included in its MSJ,[21] and the third statement is derived from Dr. Rodgers' deposition, which was taken on January 25, 2022, over two months before the reply was filed on March 29, 2022.[22]

**A.   Applicable Law**

While "[a]rguments raised for the first time in a reply brief are generally waived," Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010), "granting leave to file a sur-reply in extraordinary circumstances on a showing of good cause is a viable alternative to the general practice to summarily deny or exclude all arguments and issues first raised in reply briefs."  Silo Restaurant Inc. v. Allied Property and Casualty Insurance Co., 420 F.Supp.3d 562, 571 (W.D. Tex. 2019) (quotation marks and citations omitted).

---

[20]Id. at 5.

[21]Id. at 2-3.

[22]Id. at 4-5 (citing Deposition of John F. Rodgers, Ph.D. ("Rodgers Deposition"), pp. 158:22-159:15, Exhibit 6 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 138-4, p. 13).

**B.    Analysis**

The first of the three statements that Plaintiffs seek leave to address in a sur-reply is Defendant's statement that

> Dr. Rodgers' expert report "never discussed" DynaEnergetics' position "that a stripped portion of a wire may be a 'wireless connector' according to the '938 Patent <u>when it forms an electrical connection without requiring a direct attachment to another wire</u>." Dkt. 163 at 1 (quoting Dkt. 151 at 13 (emphasis in original)).[23]

Asserting that this statement in Defendant's Reply is false, Plaintiffs argue that

> the '938 Claim Chart in Dr. Rodgers' opening report explicitly states that "[t]he wireless ground contact connector eliminates manual wiring between two wires using electricians' tools at the well site — it replaces a wire-to-wire connection." Dkt. 156-2 at 26; <u>see also id.</u> at 62-64.[24]

But Plaintiffs fail to cite any portion of Dr. Rodgers' report discussing their contention that "a stripped portion of a wire may be a 'wireless connector' . . . when it forms an electrical connection without requiring a direct attachment to another wire." Moreover, the statement that Plaintiffs seek leave to address does not raise a new argument but, instead, merely rephrases the argument made in Defendant's MSJ that "Plaintiffs and their expert witness have taken unsupportable and inconsistent positions on infringement, including by alleging that a wire in the accused

---

[23]Plaintiffs' Motion to File Sur-Reply, Docket Entry No. 175, p. 1.

[24]<u>Id.</u> at 1-2.

products meets the numerous 'wireless' limitations of the '938 Patent."[25]

The second statement that Plaintiffs seek leave to address in a sur-reply is Defendant's statement that "Dr. Rodgers' opening report and DynaEnergetics' infringement contentions 'never say[] the wire itself is the claimed "wireless signal-in connector."' Dkt. 163 at 1-2."[26]  Asserting that this statement in Defendant's Reply is false, Plaintiffs argue that

> the '938 Claim Chart in Dr. Rodgers' opening report includes the following annotated photograph expressly described as "showing the wireless signal-in connector connecting the pin end of the bulkhead (plug assembly) via soldered connection" (Dkt. 156-2, '938 Claim Chart at 19; see also id. at 16-18, 38-43), and the same connector was identified in DynaEnergetics' infringement contentions (Dkt. 137-3 at Ex. B, p. 7).[27]

Missing from Plaintiffs' motion is a cite to any portion of Dr. Rodgers' report stating that the claimed "wireless signal-in connector" is a wire, or that the annotations on the photograph in Dr. Rodgers' opening report identify a wireless connection. Moreover, the photograph that Plaintiffs cite as evidence refuting Defendant's second contested statement is not new but, instead, a

---

[25]Defendant's MSJ, Docket Entry No. 133, p. 9.  See also id. at 21 (arguing that "[n]o reasonable jury could find that a wire satisfies the 'wireless ground contact connector' in claims 1 and 9 of the '938 Patent").

[26]Plaintiffs' Motion to File Sur-Reply, Docket Entry No. 175, p. 2.

[27]Id.

photograph from Dr. Rodgers' Report that Defendant included in its MSJ.[28]   The statement that Plaintiffs seek leave to address merely rephrases arguments made in Defendant's MSJ, i.e., (1) that "[n]o reasonable jury could find that a wire in the H-1 perforating gun satisfies the 'wireless signal-in connector' in claims 1 and 9 of the '938 Patent,"[29] (2) that "Plaintiffs allege the 'wireless' limitation is met by a wire,"[30] and (3) that "Plaintiffs' allegation that a wire can meet the claimed 'wireless signal-in connector' is contradicted by the testimony of the inventors," and "by Plaintiffs' validity arguments."[31]

The third statement that Plaintiffs seek leave to address in a sur-reply is Defendant's statement that

> Dr. Rodgers' opening report and DynaEnergetics' infringement contentions do not "say[] that a wire satisfies the [wireless ground contact connector] limitation, much less [that] the 'stripped' end of the wire Plaintiffs now say meets that claim." Dkt. 163 at 6; see also id. at 1-2.[32]

Plaintiffs seek to show that this statement is false because the '938 Claim Chart in Dr. Rodgers' opening report includes an

---

[28]Compare id. (photo at p. 2 ¶ 2) with Defendant's MSJ, Docket Entry No. 133, p. 17 (photo at bottom right).

[29]Defendant's MSJ, Docket Entry No. 133, p. 16

[30]Id. at 17.

[31]Id. at 20.

[32]Plaintiffs' Motion to File Sur-Reply, Docket Entry No. 175, p. 2.

annotated photograph expressly described as "showing the wireless ground contact connector connected to the tandem seal adapter (Hunting's bulkhead) wirelessly, with a soldered connection at the J hook. . . and that the same connector was identified in DynaEnergetics' infringement contentions."[33]  But Plaintiffs fail to cite any portion of Dr. Rodgers' Report or Claim Chart stating either that a wire or a stripped end of a wire satisfies the ground contact connector limitation.  Moreover, like the other two statements that Plaintiffs seek to address in a sur-reply, this statement merely rephrases the argument addressed at length in Defendant's MSJ that "[n]o reasonable jury could find that a wire satisfies the 'wireless ground contact connector' in claims 1 and 9 of the '938 Patent."[34]

Because Plaintiffs have failed to cite evidence showing that the statements they seek leave to address in a sur-reply are new, and because the court concludes that the statements are not new but, instead, restatements of arguments made in Defendant's MSJ, Plaintiffs' Motion to File Sur-Reply will be denied.  See Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (district court did not abuse its discretion by denying a party's motion to file a sur-reply because the other party "did not raise any new arguments in its reply brief").

---

[33]Id. at 2-3.

[34]Defendant's MSJ, Docket Entry No. 133, p. 21.

## IV.   <u>Cross Motions for Summary Judgment</u>

Plaintiffs seek summary judgment that the Asserted Patents are not invalid, that they did not engage in inequitable conduct to obtain the Asserted Patents, and that the EGun and ESub are not non-infringing alternatives to Defendant's H-1 perforating gun.[35] Defendant seeks summary judgment on Plaintiffs claims for direct, indirect, and willful infringement, and on Plaintiffs' claims for pre-suit damages.[36]   For the reasons stated below, Plaintiffs' motion for summary judgment that the Asserted Patents are not invalid will be denied, but their motions for summary judgment that they did not engage in inequitable conduct to obtain the Asserted Patents and that the EGun and ESub are not non-infringing alternatives to Defendant's H-1 perforating gun will be granted. Defendant's motion for summary judgment will be granted with respect to Plaintiffs' claims for direct, indirect, and willful infringement of the '938 Patent, and for pre-suit damages under 35 U.S.C. § 287(a), and denied with respect to direct, indirect, and willful infringement of the '161 Patent.

## A.   **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the movant

---

[35]Plaintiffs' MSJ, Docket Entry No. 128, pp. 4 and 8-9.

[36]Defendant's MSJ, Docket Entry No. 133, pp. 2 and 9-10.

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Rule 56 authorizes a court to grant "partial summary judgment" to
dispose of less than the entire case and even just portions of a
claim or defense.  See Fed. R. Civ. P. Advisory Committee's Note,
2010 Amendments.  Disputes about material facts are genuine if the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S. Ct.
2505, 2511 (1986).  "The party moving for summary judgment must
'demonstrate the absence of a genuine issue of material fact,' but
need not negate the elements of the nonmovant's case."  Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per
curiam) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553
(1986)).  "If the moving party fails to meet this initial burden,
the motion must be denied, regardless of the nonmovant's response."
Id.  If, however, the moving party meets this burden, "the
nonmovant must go beyond the pleadings and designate specific facts
showing that there is a genuine issue for trial."  Id.  Factual
controversies are to be resolved in favor of the nonmovant, "but
only when there is an actual controversy, that is, when both
parties have submitted evidence of contradictory facts."  Id.  The
court will not, "in the absence of any proof, assume that the
nonnmoving party could or would prove the necessary facts."  Id.
"[T]he court must draw all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations or

weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>,
120 S. Ct. 2097, 2110 (2000).

"When parties file cross-motions for summary judgment,
[courts] review 'each party's motion independently, viewing the
evidence and inferences in the light most favorable to the
nonmoving party.'" <u>Cooley v. Housing Authority of the City of
Slidell</u>, 747 F.3d 295, 298 (5th Cir. 2014) (quoting <u>Ford Motor Co.
v. Texas Department of Transportation</u>, 264 F.3d 493, 498 (5th Cir.
2001)). <u>See also</u> <u>Shaw Constructors v. ICF Kaiser Engineers, Inc.</u>,
395 F.3d 533, 538-39 (5th Cir. 2004), <u>cert. denied sub nom.</u> <u>PCS
Nitrogen Fertilizer, L.P. v. Shaw Constructors, Inc.</u>, 126 S. Ct.
342 (2005) ("Cross-motions must be considered separately, as each
movant bears the burden of establishing that no genuine issue of
material fact exists and that it is entitled to judgment as a
matter of law."). If the dispositive issue is one on which the
moving party will bear the burden of proof at trial, the moving
party "must come forward with evidence which would 'entitle it to
a directed verdict if the evidence went uncontroverted at trial.'"
<u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257,
1264-65 (5th Cir. 1991), <u>cert. denied</u>, 112 S. Ct. 936 (1992). <u>See
also</u> <u>Anderson</u>, 106 S. Ct. at 2511 ("The standard [for granting
summary judgment] mirrors the standard for a directed verdict under
Federal Rule of Civil Procedure 50(a)."). The nonmoving party can
then defeat the motion by countering with sufficient evidence of
its own, or by "showing that the moving party's evidence is so

sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  See Celotex, 106 S. Ct. at 2552-53.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  Id. at 2553.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  Id.  See also Little, 37 F.3d at 1075.

**B.   Plaintiffs' Motion for Summary Judgment**

   1.   Plaintiffs Are Not Entitled to Summary Judgment on Defendant's Affirmative Defenses and Counterclaims of Invalidity

Defendant asserts an affirmative defense and counterclaim of invalidity alleging that

> [t]he '161 Patent and '938 Patent are invalid for failure to comply with or satisfy the requirements and/or conditions of patentability as specified under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112.[37]

_____

[37]Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint, Docket Entry No. 69, p. 5 ¶ 43. See also id. at 5-8 ¶¶ 43-52 (Second Affirmative Defense), and 41-44 ¶¶ 236-49 (Second Counterclaim).

Plaintiffs argue that they are entitled to summary judgment that the '161 and '938 Patents are not invalid based on prior art considered and rejected by the Patent Trial and Appeal Board ("PTAB") in post-grant review ("PGR") proceedings.[38] Asserting that "the PTAB panel of three patent judges with expertise in evaluating prior art and assessing patent validity rejected [Defendant's] PGR petitions,"[39] Plaintiffs argue that Defendant "has recycled the same prior art references and invalidity arguments from its unsuccessful PGR petitions in this case. Based on the evidence of record, no reasonable jury could find by clear and convincing evidence that the Patents-in-Suit are invalid as anticipated or obvious."[40]

Asserting that the PTAB did not issue any substantive decision on patentability and, instead, merely exercised its discretion not to institute PGR of the Asserted Patents, Defendant argues that

> Plaintiffs' argument attempts to improperly expand the estoppel provisions of 35 U.S.C. § 3[2]5(e) to any case where a party has <u>sought</u> PTAB review of patentability, regardless of whether the PTAB <u>actually reviewed</u> patentability. Other district courts have rejected such interpretation of the estoppel statute and allowed invalidity to go to the jury. The Court should do the same here.[41]

---

[38]Plaintiffs' MSJ, Docket Entry No. 128, p. 12.

[39]<u>Id.</u> at 13.

[40]<u>Id.</u>  <u>See also</u> Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, pp. 8-14.

[41]Defendant Hunting Titan, Inc.'s Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. 128) ("Defendant's Opposition to Plaintiffs' MSJ"), Docket Entry No. 145, p. 16.  <u>See also</u> <u>id.</u> at 16-19.

Asserting that a reasonable jury could find that Plaintiffs'
patents are invalid, Defendant also argues that Black and
Schacherer anticipate the patents' claims under Plaintiffs' reading
of "directional locking fin,"[42] and that Plaintiffs "ignore their
failure to produce highly relevant evidence that the inventors of
the Asserted Patents based their invention on Schlumberger's
SafeJet perforating gun."[43]

Plaintiffs reply that they are not seeking to estop Defendant
from asserting any grounds that it could have raised in its PGR
petition but chose not to raise, _e.g._, the Schlumberger SafeJet
system but, instead, "move for summary judgment on [Defendant's]
invalidity theories that stem from the _same_ references and _same_
arguments rejected by the PTAB."[44]  Asserting that their "request
does not amount to an impermissible 'de facto estoppel' of
[Defendant]'s invalidity theories,"[45] Plaintiffs argue that their
"request amounts to recognition that [Defendant]'s invalidity
arguments here and those made in its failed PGR petitions are cut
from the same cloth so no reasonable jury could find invalidity."[46]

---

[42]_Id._ at 19-22.

[43]_Id._ at 23.

[44]Plaintiffs' Reply in Support of Its MSJ, Docket Entry
No. 159, pp. 8-9.

[45]_Id._ at 9.

[46]_Id._ at 9-10.

(a)   Additional Facts

**(1) '161 Patent**

Defendant filed a petition for PGR arguing that the claims of the '161 Patent are all anticipated or obvious based on four prior art references — Black, Lendermon, Schacherer, and Hayes.[47] Regarding the anticipation challenge to claims 1-3, 13-15 of the '161 Patent the PTAB held that on the record before it

> we are not persuaded that Petitioner[, _i.e._, Defendant] has shown that either Black or Schacherer discloses the limitations pertaining to at least one directional locking fin that are required by each of [independent] claims 1 and 13.  Accordingly, we are not satisfied that Petitioner has shown that Black anticipates claims 1-3, 13 and 14 or that Schacherer anticipates claims 1, 14, and 15 as urged by Petitioner.[48]

Regarding anticipation challenges to claims 2, 3, 8, 9, and 12-15, the PTAB held that neither Black nor Schacherer discloses the feature of a "rotational coupling" required by each of those claims.[49]  However, observing that Defendant contended that Black and Schacherer also anticipate claim 20, and that claim 20 does not require either a directional locking fin or a rotational coupling, the PTAB concluded that "those proposed grounds of anticipation

---

[47]Plaintiffs' MSJ, Docket Entry No. 128, p. 13 (citing Decision Denying Institution of Post-Grant Review, PGR 2020-00072, p. 7, Exhibit 1 to Plaintiffs' MSJ, Docket Entry No. 130-1, p. 8).

[48]Decision Denying Institution of Post-Grant Review, PGR 2020-00072, p. 33, Exhibit 1 to Plaintiffs' MSJ, Docket Entry No. 130-1, p. 34.

[49]_Id._

applied to claim 20 do not appear to have the same deficiencies noted above with respect to other claims of the '161 Patent."[50] Regarding obviousness challenges the PTAB said

> [w]e share Patent Owner's concern that Petitioner's unfocused presentation of its obviousness grounds provides a "scattershot" approach that is wanting for clarity and particularity. . . Such an approach that results in excessive ill-defined grounds has given rise in other Board proceedings to a determination that a petition did not set forth grounds with "particularity," resulting in the exercise of discretion to deny institution of trial. . . .
>
>                          . . .
>
>      . . . [W]e conclude that Petitioner's inadequate discussion does not elevate itself to the level of articulated reasoning with rational underpinnings that is necessary to support a motivation to combine prior art teachings. . . .[51]

The PTAB concluded that

> the vast majority of the grounds of unpatentability proposed by Petitioner[, _i.e.,_ Defendant], are deficient. Even if there may be some threshold merit to some small subset of the numerous proposed grounds of unpatentability contained within the Petition, there is no requirement that we must institute a post-grant review in such a circumstance, as the decision on whether to institute is discretionary. _See_ 35 U.S.C. § 324(a). . . On the record that is present here, . . . we exercise our discretion and decline to institute trial in this proceeding.[52]

---

[50]_Id._ at 34-35, Docket Entry No. 130-1, pp. 35-36.

[51]_Id._ at 35-36, Docket Entry No. 130-1, pp. 36-37.

[52]_Id._ at 36-37, Docket Entry No. 130-1, pp. 37-38.

**(2)  '938 Patent**

Defendant filed a petition for PGR arguing that the claims of the '938 Patent are unpatentable as anticipated or obvious based on common knowledge and nine prior art references: Black, Lenderman, Schacherer, Schlumberger 2008 Perforating Services Catalog, Harrigan, 2012 European and West African Perforating Symposium ("EWAPS"), Rogman, Lanclos, and Goodman.[53]  Observing that "§ 322(a)(3) mandates that 'the petition identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim,'"[54] the PTAB stated that, "we are not satisfied that the Petition here satisfies the above-noted requirements."[55]  Regarding the proposed grounds based on obviousness, the PTAB stated that,

> we also determine that Petitioner's postulations as to reasons for combining the various teachings of the prior are and "inherent . . . common knowledge" rely on generalized statements that such combinations would, for instance, be "predictable," "simple substitution," application of "known techniques," and "obvious to try." . . . Notably lacking from the Petition is specific, directed explanation of well-developed reasons why a

---

[53]Plaintiffs' MSJ, Docket Entry No. 128, pp. 13-14 (citing Decision Denying Institution of Post-Grant Review, PGR 2020-00080, pp. 6-7, Exhibit 2 to Plaintiffs' MSJ, Docket Entry No. 130-2, pp. 7-8).

[54]Decision Denying Institution of Post-Grant Review, PGR 2020-00080, pp. 8-9, Exhibit 2 to Plaintiffs' MSJ, Docket Entry No. 130-2, pp. 9-10.

[55]Id. at 9, Docket Entry No. 130-2, p. 10.

person of ordinary skill in the art would have modified
or combined the teachings of the prior art.[56]

The PTAB concluded that

irrespective of whether there may be a potentially
credible ground of unpatentability buried among the
voluminous and excessive possible grounds presented here,
institution of trial is not warranted.

. . .

On this record, . . . we exercise our discretion and
decline to institute trial in this proceeding.[57]

(b)   Applicable Law

"Patents are presumed valid, and the challenger bears the
burden of establishing invalidity." Massachusetts Institute of
Technology v. Shire Pharmaceuticals, Inc., 839 F.3d 1111, 1124
(Fed. Cir. 2016) (citing 35 U.S.C. § 282). See also Nautilus, Inc.
v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2130 n. 10 (2014)
(same).   Invalidity defenses must be proved by "clear and
convincing evidence." Microsoft Corp. v. i4i Ltd. Partnership, 131
S. Ct. 2238, 2242 (2011).   When the validity of a patent is
challenged in federal court, a district court has "the obligation
. . . to reach an independent conclusion" regarding the validity,
and a prior decision by a patent examiner "is never binding on the
court." Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139

---

[56]Id. at 11-12, Docket Entry No. 130-2, pp. 12-13.

[57]Id. at 13-14, Docket Entry No. 130-2, pp. 14-15.

(Fed. Cir. 1985)  (quoting <u>Fromson v. Advance Offset Plate, Inc.</u>, 755 F.2d 1549, 1555 (Fed. Cir 1985)).

The PGR process in which the parties engaged was created by the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 <u>et seq.</u>, which established the PTAB, an executive adjudicatory body, as a component of the United States Patent and Trademark Office ("PTO"), an agency within the Department of Commerce, 35 U.S.C. § 6(a).  <u>See</u> <u>Cuozzo Speed Technologies, LLC v. Lee</u>, 136 S. Ct. 2131, 2136-38 (2016); and <u>United States v. Arthrex, Inc.</u>, 141 S. Ct. 1970, 1976-77 (2021).  The PTAB sits in panels of at least three members to review the patentability of inventions.  <u>Arthrex</u>, 141 S. Ct. at 1977.  The AIA provides several procedures through which the validity of an issued patent can be challenged before the PTAB, including inter partes review ("IPR"), and PGR.  IPRs and PGRs are adversarial proceedings that allow parties other than the patentee to challenge the validity of an issued patent.  <u>See</u> 35 U.S.C. § 321(b) (allowing a party to petition for PGR "to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of section 282(b) (relating to invalidity of the patent or any claim")).  <u>See also</u> <u>US Inventor Inc. v. Hirshfeld</u>, 549 F.Supp.3d 549, 552 (E.D. Tex. 2021), <u>appeal docketed</u>, No. 21-40601 (5th Cir. February 8, 2021)(describing the IPR and PGR processes).

-26-

After receiving a petition, the PTAB must decide whether to institute PGR by determining whether "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a). But even if the threshold showing is met, the PTAB is not required to institute a trial. Under 35 U.S.C. § 324(e), "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable." See Cuozzo, 136 S. Ct. at 2140 (IPRs) (recognizing that the decision to institute review is not reviewable because it is not a final agency decision). "If review is instituted, the proceedings enter a trial stage and the [PTAB] later issues a 'final written decision' [("FWD")] under 35 U.S.C. § 328(a)." Credit Acceptance Corp. v. Westlake Services, 859 F.3d 1044, 1049 (Fed. Cir. 2017). "Once the [PTAB] issues a [FWD], the estoppel statute applies." Id. PGR estoppel is governed by statute, which states:

> The petitioner in a [PGR] of a claim in a patent under this chapter that results in a [FWD] under [§] 328(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under [§[ 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that [PGR].

35 U.S.C. § 325(e)(2). Thus for a PGR petition to create estoppel effect, the PGR must result in a FWD. "The purpose of the estoppel statute is to prevent parties from pursuing two rounds of invalidity arguments before the PTAB and the district court." See GREE, Inc. v. Supercell Oy, No. 2:19-cv-00071-JRG-RSP, 2019 WL 5677511, *4 (E.D. Tex. October 30, 2019) (citation omitted).

-27-

(c)   Application of the Law to the Facts

Plaintiffs argue that no reasonable jury could find that the prior art cited in Defendant's PGR petition and rejected by the PTAB invalidates the Asserted Patents because the PTAB's substantive findings under the low, "more likely than not" standard of proof applicable before the PTAB render Defendant's invalidity positions meritless and unable to overcome the patents' strong presumption of validity under the high, "clear and convincing," standard applicable in district court.[58]  Citing inter alia Finjan, Inc. v. Cisco Systems Inc., No. 17-cv-00072-BLF, 2020 WL 532991 (N.D. Cal. February 3, 2020), Defendant responds that

> Plaintiffs' argument is that the PTAB exercising its discretion not to institute [PGR] acts as an estoppel because of the difference in the burden of proof between the PTAB and district court. . . Plaintiffs would create a de facto estoppel contrary to the law.  That argument has been considered and soundly rejected.[59]

The fact that the PTAB previously addressed the same arguments related to the same prior art is insufficient to meet Plaintiffs' burden on summary judgment.

> [A] moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense [or counterclaim] upon which a reasonable jury could invalidate the patent.

_____

[58]Plaintiffs' MSJ, Docket Entry No. 128, pp. 17-18.  See also Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, pp. 13-14.

[59]Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, p. 17.

_Eli Lilly & Co. v. Barr Laboratories, Inc._, 251 F.3d 955, 962 (Fed. Cir. 2001), _cert. denied_, 122 S. Ct. 913 (2002).  Citing _Proctor & Gamble Co. v. Team Technologies, Inc._, No. 1:12-cv-552, 2014 WL 12656554, at *10-11 n. 4 (S.D. Ohio July 3, 2014), and _Precision Fabrics Group, Inc. v. Tietex International, Ltd._, No. 1:13-cv-645, 1:14-cv-650, 2016 WL 6839394, at *9-10 (M.D.N.C. November 21, 2016), Plaintiffs argue that they do not seek to apply PGR estoppel but, instead, seek summary judgment on Defendant's invalidity theories that stem from the same references and same arguments rejected by the PTAB.[60] But Plaintiffs are effectively asking the court to expand PGR estoppel beyond what the statute provides.  In _Finjan_, the court rejected a similar argument based on denial of a petition for IPR stating that

> [t]he practical implication of [Plaintiff's] request is this: if a party files a petition for IPR before the PTAB (applying a lower burden of proof), it is presumed that the "best" and "strongest" prior art was used — and if the IPR is not instituted, that party cannot bring forth any invalidity challenges to the petitioned patent at the district court (applying a higher standard of proof) because a reasonable jury could not find invalidity. This outcome is nothing short of creating an IPR estoppel where the petition did <u>not</u> result in a final written decision — contrary to the statute's clear language.  The Court declines Finjan's invitation to go down that road.

2020 WL 532991, at *3.  While _Finjan_ dealt with IPR, the PGR and IPR estoppel provisions are substantively identical in this context.  _Compare_ 35 U.S.C. § 325(e)(2) (PGR estoppel) with 35

---

[60]Plaintiffs' MSJ, Docket Entry No. 128, p. 17, and Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, pp. 8-10.

U.S.C. § 315(e)(2)(IPR estoppel). <u>See</u> <u>GREE, Inc. v. Supercell OY</u>, No. 2:19-cv-00071-JRG-RSP, 2020 WL 4999689, at *3 (E.D. Tex. July 9, 2020) (recognizing that "the PGR and IPR estoppel provisions are substantively identical in this context").

Plaintiffs' reliance on <u>Proctor & Gamble</u>, 2014 WL 12656554, at *10-11 n. 4, and <u>Precision Fabrics</u>, 2016 WL 6839394, at *9-10, is misplaced because in each of those cases the court determined that summary judgment was appropriate on the merits by reviewing the prior art and the evidence before it (not the evidence before the PTAB), and then citing the PTAB's decisions not to grant the petitions for IPR or PGR merely as corroboration for the courts' decisions. Plaintiffs assert that they seek the same treatment here and that "a neutral view of the facts demonstrates that no reasonable jury could find the Patents-in-Suit invalid by clear and convincing evidence, and the PTAB's decisions denying institution are confirmation of that conclusion."[61] But Plaintiffs do not address the prior art, the facts, or the substance of Defendant's invalidity theories. Instead, relying solely on the fact that Defendant made similar arguments in its petitions for PGR and that the PTAB did not find those arguments persuasive enough to grant the petitions and institute trial,[62] Plaintiffs argue that they are

_____

[61]<u>See</u> Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, p. 10.

[62]Plaintiffs' MSJ, Docket Entry No. 128, pp. 13-18. <u>See also</u> Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, pp. 8-9.

entitled to summary judgment of no invalidity. The PTAB, exercising its discretion, declined to grant Defendant's petition for PGR of the '161 after reviewing some, but not all, of the prior art references alleged, and declined to grant Defendant's petition for PGR of the '938 Patent after concluding that the petition failed to satisfy the requirement that PGR petitions identify in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the ground for the challenge to each claim. As Defendant points out, the PTAB did not find any claims of the Asserted Patents valid.

Challenges to the validity of a patent obligate the district court to reach an independent conclusion regarding validity. Interconnect Planning, 774 F.2d at 1139. Because neither the PTAB's decisions to deny the Defendant's PGR petitions for the Asserted Patents, nor the PTAB's reasons for those decisions are binding on the court, id., and because Plaintiffs have failed to demonstrate that evidence in the record is insufficient with respect to an essential element of the Defendant's affirmative defenses or counterclaims of invalidity, Celotex, 106 S. Ct. at 2552-53, Plaintiffs have failed to show that they are entitled to summary judgment on those affirmative defenses and counterclaims. See Shure, Inc. v. ClearOne, Inc., No. 17 C 3078, 2019 WL 4014230, at *3-4 (N.D. Ill. August 25, 2019) (PTAB decision not to institute PGR did not undermine the court's independent conclusion that there

was a substantial question of the patent's validity based on the
same prior art).   Accordingly, Plaintiffs' motion for summary
judgment on Defendant's affirmative defenses and counterclaims for
invalidity will be denied.

2.   <u>Plaintiffs Are Entitled to Summary Judgment on
     Defendant's Affirmative Defenses and Counterclaims of
     Inequitable Conduct</u>

Defendant's Fifth Affirmative Defense and Third Counterclaim
for Declaratory Judgment (Unenforceability) assert that "[t]he '161
and '938 Patents are unenforceable because they were procured
through inequitable conduct before the USPTO."[63]

(a)   Additional Facts

Defendant's inequitable conduct defense and counterclaim are
based on Plaintiffs' failure to disclose to the examiner
considering the applications for the Asserted Patents the PTAB's
FWD from IPR Case No. IPR2018-00600 of United States Patent
No. 9,581,422 (the '422 Patent),[64] issued on August 20, 2019 ("'422
IPR FWD").[65]   Defendant filed the petition for IPR alleging that the

_____

[63]Defendant's Answer, Affirmative Defenses, and Counterclaims
to Plaintiffs' Second Amended Complaint, Docket Entry No. 69, p. 9
¶ 55 (Fifth Affirmative Defense), and 44 ¶ 251 (Third Counterclaim
— Declaratory Judgment (Unenforceability)).

[64]<u>Id.</u> at pp. 9-38 ¶¶ 55-218 (Fifth Affirmative Defense), and
44-74 ¶¶ 250-414 (Third Counterclaim).

[65]Final Written Decision, Case IPR2018-00600, Exhibit 37 to
                                              (continued...)

-32-

original claims of the '422 Patent were anticipated by and obvious in view of United States Patent No. 9,689,223 ("Schacherer"), which was issued on June 27, 2017.[66]  The PTAB instituted IPR of the '422 Patent on August 21, 2018.[67]  On December 6, 2018, Plaintiffs filed a motion to amend the '422 Patent if the original claims were held unpatentable.  The proposed amendments sought to add the following three elements to the original claims:

    (1)   "a perforating gun housing;"

    (2)   "a carrying device positioned within the perforating gun housing to hold at least one shaped charge," and

    (3)   "a detonator assembly contained entirely within the perforating gun housing."[68]

In the FWD the PTAB held that Defendant

---

[65](...continued) Dornberger Declaration in Support of Various Motions, Docket Entry No. 137-10.

[66]Id. at 4-5 & n. 1, Docket Entry No. 137-10, pp. 5-6.  See also United States Patent 9,689,332 ("Schacherer"), Exhibit 71 to Declaration of Ryan E. Dornberger in Support of Defendant, Hunting Titan, Inc.'s (1) Opposition to Plaintiffs' [MSJ] & (2) Opposition to Plaintiffs' Daubert Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D. ("Dornberger Declaration in Support of Defendant's Opposition to Plaintiffs' Motions"), Docket Entry No. 147-4.

[67]See Information Disclosure Statement by Applicant, Item 15: U.S. Patent Trial and Appeal Board, Institution of Inter Partes Review, Case IPR2018-00600, issued on August 21, 2018, Exhibit 80 to Dornberger Declaration in Support of Defendant's Opposition to Plaintiffs' Motions, Docket Entry No. 147-8, p. 4.

[68]Final Written Decision, Case IPR2018-00600, p. 26, Exhibit 37 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 137-10, p. 27.

> prove[d] by a preponderance of the evidence that claims 1-15 of the '422 patent are unpatentable[, . . . and that Defendant] carried its burden in showing that DynaEnergetics' proposed substitute claims are not patentable over the prior art of record, and, thus, we deny DynaEnergetics' motion to amend.[69]

Asserting that the subject matter of the '422 Patent is closely related to that of the Asserted Patents, Defendant contends that if Plaintiffs had disclosed the FWD from the IPR of the '422 Patent, the Asserted Patents would not have issued because the examiner would have found every element of Claim 20 of the '161 Patent and every element of Claim 1 of the '938 Patent anticipated by Schacherer.[70]

Asserting that the '422 Patent belongs to a different patent family and claims inventions distinct from those claimed in the Asserted Patents,[71] Plaintiffs argue that they are entitled to summary judgment on Defendant's inequitable conduct affirmative defenses and counterclaims because Defendant fails to cite evidence capable of establishing either that the '422 IPR FWD is but-for material, or that Plaintiffs withheld the '422 IPR FWD with specific intent to deceive the PTO.[72]

---

[69]Id. at 2, Exhibit 37 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 137-10, p. 3.

[70]Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint, Docket Entry No. 69, pp. 13-25 ¶¶ 93-149. See also Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, pp. 24-34.

[71]Plaintiffs' MSJ, Docket Entry No. 128, p. 20.

[72]Id. at 22-28.

(b)   Applicable Law

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).   In order to prevail on its inequitable conduct affirmative defenses or counterclaims, Defendant must prove by clear and convincing evidence that Plaintiffs knowingly provided material misinformation to the PTO or withheld from the PTO information material to patentability, with the intent to deceive or mislead the patent examiner into granting the patent.   Id. at 1287.

In Therasense, the court emphasized that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." 649 F.3d at 1291.   The court explained that

> [w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.   Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.   In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

Id. at 1291-92.   Prior art is not but-for material if it is merely cumulative.   Regeneron Pharmaceuticals, Inc. v. Merus N.V., 864 F.3d 1343, 1350 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 122 (2018).   "A reference is cumulative when it 'teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO.'"   Id. (quoting University of

-35-

<u>California v. Eli Lilly & Co.</u>, 119 F.3d 1559, 1575 (Fed. Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1548 (1998)).

"[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality. Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." <u>Therasense</u>, 649 F.3d at 1290. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant <u>made a deliberate decision</u> to withhold a <u>known</u> material reference." <u>Id.</u> (quoting <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1181 (Fed. Cir. 1995)). Direct evidence of intent is not required; "a district court may infer intent from indirect and circumstantial evidence." <u>Id.</u> "An inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor,' including where the applicant repeatedly makes factual representations 'contrary to the true information he had in his possession.'" <u>Regeneron</u>, 864 F.3d at 1351 (quoting <u>Apotex Inc. v. UCB, Inc.</u>, 763 F.3d 1354, 1362 (Fed. Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 2868 (2015)).

"[T]he party alleging inequitable conduct bears the burden of proof." <u>Therasense</u>, 649 F.3d at 1291.

> Although the premises of inequitable conduct require findings based on all the evidence, a procedure that may preclude summary determination, . . . a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant cannot prevail.

<u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 547 (Fed. Cir. 1998).

(c)   Application of the Law to the Undisputed Facts

(1)   Defendant Fails to Cite Evidence Capable of Establishing that the '422 IPR FWD is Material

Plaintiffs argue that

there is no genuine dispute of material fact that the '422 IPR FWD is not but-for material where (1) the Examiner found the claims of the '161 and '938 Patents patentable over <u>all</u> of the cited references, including Schacherer and, for the '938 Patent, materials from IPR2018-00600; (2) a PTAB panel declined to institute PGR petitions of both the '161 and '938 Patents in view of Schacherer <u>and the '422 IPR FWD</u>; (3) the '422 IPR FWD is not prior art but is instead one panel's interpretation of a prior art reference; and (4) the '422 IPR involves an unrelated patent with claim limitations that are materially different from the claim terms of the '161 and '938 Patents.[73]

Defendant responds that

Plaintiffs and their lawyers acknowledged the relevance of materials from the '422 Patent IPR when they disclosed almost all of it in the prosecution of the '938 Patent. Then Plaintiffs withheld the much more relevant [FWD] in that case.[74]

Defendant argues that the '422 IPR FWD is but-for material because the PTAB "found that structurally and functionally equivalent claims to the Asserted Patents were invalid as anticipated by Schacherer,"[75] and that "the PTAB's finding that very similar claim terms were anticipated by Schacherer is highly relevant and material to the Asserted Patents."[76]

---

[73]<u>Id.</u> at 21-22.

[74]Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, p. 24.

[75]<u>Id.</u> at 26.

[76]<u>Id.</u>

Plaintiffs reply that "[Defendant]'s MSJ Response does not —
and cannot — present any evidence creating a genuine dispute of
fact that the '422 IPR FWD is material to patentability and not
cumulative of prior art before the examiner."[77]

The basis of Defendant's inequitable conduct claim is that
neither Plaintiffs nor their prosecution counsel submitted a copy
of the IPR FWD regarding the '422 Patent to the examiner during
prosecution of the Patents-in-Suit.  However, it is undisputed that
both the '161 and the '938 Patents disclose as a prior reference
U.S. application 2012/0247769, i.e., the application that lead to
issuance of the Schacherer patent,[78] on which the PTAB based the
determinations stated in the IPR FWD that Claims 1-15 of the '422
Patent were unpatentable, and that Plaintiffs' proposed substitute
claims were not patentable over the prior art.   It is also
undisputed that Defendant did not seek IPR of the '422 Patent until
February 16, 2018, well after June 8, 2017, the date that
Plaintiffs filed Application No. 15/617,344, which lead to issuance

---

[77]Plaintiffs' Reply in Support of Its MSJ, Docket Entry
No. 159, pp. 14-15.

[78]See '161 Patent, p. 2, Exhibit A to Second Amended Complaint,
Docket Entry No. 63-1, p. 3 (including in "References Cited" U.S.
Patent Document 2012/0247769 A1 10/2012 Schacherer et al.); and
'938 Patent, p. 2,  Exhibit B to Second Amended Complaint, Docket
Entry No. 63-2, p. 3 (including in "References Cited" U.S. Patent
Document 2012/0247769 A1 10/2012 Schacherer et al.).   See also
Patent '223 (Schacherer), p. 1, Exhibit 71 to Dornberger
Declaration in Support of Defendant's Opposition to Plaintiffs'
Motions, Docket Entry No. 147-4, p. 2 (identifying "Prior
Publication Data" as US 2012/0247769 A1 October 4, 2012).

of the '161 Patent.  Moreover, on March 20, 2019, the date that Plaintiffs filed Application No. 16/356,540, which lead to issuance of the '938 Patent, Plaintiffs disclosed to the examiner both Defendant's petition for IPR of the '422 Patent, which included Defendant's interpretation of Schacherer, and the PTAB's decision to institute IPR of the '422 Patent.[79]

Defendant therefore has not disputed — and, indeed, cannot dispute — that Plaintiffs disclosed to the examiner that Defendant had sought and the PTAB had instituted IPR of the '422 Patent, months before either the '161 Patent issued in October of 2019 or the '938 Patent issued in November of 2019.  Defendant argues that Plaintiffs engaged in inequitable conduct by failing to submit to the examiner the IPR FWD, which was issued on August 20, 2019, but cites no authority holding either that an applicant has a duty to make such a submission, or that the failure to do so constitutes inequitable conduct.  Moreover, because the IPR FWD is a publicly available document, and the PTAB is an administrative agency of the USPTO, the examiner surely could have obtained the IPR FWD from its own administrative agency if needed.  See Tinnus Enterprises, LLC

---

[79]See Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, p. 26 (recognizing that "Plaintiffs did disclose some of the IPR filings during prosecution of the '938 Patent").  See also '938 Information Disclosure Statement by Applicant, Item 12: Hunting Titan Inc., Petition for Inter Partes Review of US Patent No. 9581422, filed Feb. 16, 2018, 93 pgs.; and Item 15: U.S. Patent Trial and Appeal Board, Institution of Inter Partes Review, Case IPR2018-00600, issued on Aug. 21, 2018, 9 pgs., Exhibit 80 to Dornberger Declaration in Support of Defendant's Opposition to Plaintiffs' Motions, Docket Entry No. 147-8, p. 4.

v. Telebrands Corp., No. 6:16-CV-00033-RWS, 2017 WL 8727626, at *3
(E.D. Tex. August 15, 2017)(rejecting an inequitable conduct
defense based on failure to disclose a PGR institution decision and
finding no authority that "there is some requirement to submit
relevant PTAB decisions to the Examiner during prosecution," where
the PTAB decision "is a publicly available document" that the
Examiner could have obtained on his own), report and recommendation
adopted by 2017 WL 8727625 (September 14, 2017).

　　　Although the IPR FWD invalidated Claims 1-15 of the '422
Patent as anticipated by Schacherer, the court is not persuaded
that constitutes evidence from which a reasonable fact finder could
conclude that but-for Plaintiffs' failure to disclose the '422 IPR
FWD to the examiner, the USPTO would not have allowed the
patents-in-suit.  The IPR FWD is neither prior art, nor binding
precedent that the examiners were obligated to follow.  The IPR FWD
is, instead, an evaluation and application of prior art — i.e.,
Schacherer, to a patent — i.e., the '422 Patent, that is not one of
the Asserted Patents.  During prosecution of patent applications
examiners evaluate prior art for themselves and independently
determine whether prior art anticipates or renders obvious the
claimed invention.  See Innogenetics, N.V. v. Abbott Laboratories,
512 F.3d 1363, 1379 (Fed. Cri. 2008) (noting that an examiner is
permitted "to examine [prior art] herself, . . . [and] to accept or
reject the patentee's arguments distinguishing its invention from
the prior art").

Because the application that lead to Schacherer is identified in the list of "References Cited" for both of the Patents-in-Suit, the examiners were free to evaluate Schacherer in the context of those applications, and independently determine whether Schacherer did — or did not — render either application unpatentable.  The IPR FWD is therefore merely persuasive authority; _i.e._, evidence of how the PTAB applied Schacherer to a particular application; it does not disclose new information material to patentability beyond what Schacherer and other references before the examiners disclosed. The IPR FWD is therefore merely cumulative of material before the examiners and, thus, not "but-for" material as a matter of law. See Digital Control Inc. v. Charles Machine Works, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("[A] withheld . . . prior art reference is _not_ material for the purpose of inequitable conduct if it is merely cumulative to that information considered by the examiner.").

        (2)   Defendant Fails to Cite Evidence Capable of Establishing that Plaintiffs Failed to Disclose '422 IPR FWD with Intent to Deceive

Plaintiffs argue that

> there is no genuine dispute of material fact that [Plaintiffs] did not act with specific intent to deceive the PTO in not citing the '422 IPR FWD and select other IPR filings to the Examiner during prosecution of the '161 and '938 Patents.  Indeed, [Defendant] has failed to present _any_ evidence supporting an inference that [Plaintiffs] acted with specific intent to deceive.[80]

---

[80]Plaintiffs' MSJ, Docket Entry No. 128, p. 22.

Defendant argues that Plaintiffs' intent to deceive can be inferred from their withholding from production correspondence relating to prosecution of the applications that became the Asserted Patents based on assertions of privilege,[81] and "disclos[ing] their own arguments regarding Schacherer in the '422 IPR to the Examiner of the '938 Patent, while withholding the PTAB's Final Written Decision rejecting those arguments."[82] Defendant argues that intent to deceive the Patent Office is the only reasonable inference to be drawn from Plaintiffs' failure to disclose the '422 IPR FWD to the examiner.[83]

Defendant has not cited persuasive authority holding that an inference of intent to deceive can be drawn from the assertion of privilege. To the contrary, the Federal Circuit has observed that "courts have declined to impose adverse inferences on invocation of the attorney-client privilege," and has held that "this rule applies to the same extent in patent cases as in other areas of the law." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en banc) (citing Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 225-26 (2d Cir. 1999), overruled on other grounds sub nom. Moseley v. V Secret Catalogue,

---

[81]Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, p. 32.

[82]Id. at 33.

[83]Id. at 33-34.

123 S. Ct. 1115 (2003)).  Nor has Defendant cited any authority supporting its argument that an intent to deceive is the only inference that can be drawn from Plaintiffs' disclosure of their own arguments regarding Schacherer in the '422 IPR to the Examiner of the '938 Patent, while withholding the PTAB's FWD rejecting those arguments.  To the contrary, in <u>Therasense</u>, 649 F.3d at 1290, the court expressly stated that "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."  In <u>Larson Manufacturing Co. of South Dakota, Inc. v. Aluminart Products Ltd.</u>, 559 F.3d 1317, 1341 (Fed. Cir. 2009), the Federal Circuit stated that "on remand, the district court should take into account any evidence of good faith, which militates against a finding of deceptive intent," and observed that the applicant's disclosure of "several pleadings" from parallel proceedings "points away from deceptive intent."

Moreover, Defendant's assertion that Plaintiffs only "disclosed their own arguments regarding Schacherer in the '422 IPR to the Examiner of the '938 Patent" is not correct.  The disclosure statement that Plaintiffs submitted together with the application that lead to issuance of the '938 Patent shows that in addition to instruments from the '422 IPR proceeding containing their own arguments, Plaintiffs disclosed Defendant's Petition for IPR, and

also disclosed the PTAB's decision to institute IPR.[84]  Accordingly,

the court concludes that Defendant has failed to cite evidence from

which a reasonable fact finder could find that Plaintiffs failed to

disclose '422 IPR materials with specific intent to deceive.


### (3)  Conclusions

Because Defendant has failed to cite evidence from which a

reasonable fact finder could conclude either that but-for

Plaintiffs' failure to disclose the IPR FWD regarding the '422

Patent the PTO would not have granted the Patents-in-Suit, or that

Plaintiffs failed to disclose the IPR FWD regarding the '422 Patent

with a specific intent to deceive the examiner, Defendant has

failed to raise a genuine issue of material fact for trial on its

affirmative defenses or counterclaims of inequitable conduct.

Accordingly, Plaintiffs' motion for summary judgment will be

granted on Defendant's affirmative defenses and counterclaims of

inequitable conduct.

---

[84]See '938 Information Disclosure Statement by Applicant, Items
12 and 15, Exhibit 80 to Dornberger Declaration in Support of
Defendant's Opposition to Plaintiffs' Motions, Docket Entry
No. 147-8, p. 4.

3.   <u>Plaintiffs Are Entitled to Summary Judgment that there are No Noninfringing Substitutes for Purposes of the Panduit Lost Profits Analysis</u>

Plaintiffs argue that they are entitled to summary judgment that "there are no acceptable noninfringing substitutes for purposes of the <u>Panduit</u> lost profits analysis."[85]   Plaintiffs base this argument on Defendant's response to Interrogatory No. 12 of Plaintiffs' Third Set of Interrogatories, which asked Defendant to "[i]dentify each product you contend is an acceptable non-infringing alternative to any Accused Product and state the basis for your contention."[86]   Defendant identified only its EGun and ESub products stating that "the EGun and ESub do not infringe <u>for the same reasons the H-1 does not infringe</u>."[87]   Plaintiffs argue that because Defendant

> identified only EGun and ESub as non-infringing alternatives <u>and</u> failed to articulate any legally recognizable basis for non-infringement by EGun and ESub in the "but-for" world, [Plaintiffs] respectfully request[] that the Court enter summary judgment that there are no acceptable noninfringing substitutes for purposes of the <u>Panduit</u> lost profits analysis.[88]

---

[85]Plaintiffs' MSJ, Docket Entry No. 128, p. 32.

[86]<u>Id.</u> at 28 (quoting Exhibit 18 to Dupriest Declaration, Docket Entry No. 130-6, p. 4).

[87]<u>Id.</u> (quoting Exhibit 18 to Dupriest Declaration, Docket Entry No. 130-6, p. 5).

[88]<u>Id.</u> at 32.   <u>See also</u> Plaintiffs' Reply in Support of Its MSJ, Docket Entry No. 159, p. 22 ("The Court should enter a summary judgment ruling that there are no available or acceptable <u>non-infringing</u> alternatives ('NIAs') customers could have purchased
(continued...)

Asserting that Plaintiffs' request is unclear, Defendant responds that "[i]f Plaintiffs had clearly sought summary judgment that ESub and EGun are not acceptable non-infringing alternatives for damages purposes, they may have had an argument," Defendant argues that Plaintiffs "instead chose to demand that ESub and EGun be found 'infringing' which is not appropriate."[89]   Defendant argues that "Plaintiffs have not cited any case where the Defendant's own product was not accused of infringement, but was found to be 'infringing.'"[90]

Plaintiffs reply that Defendant has failed to demonstrate any disputed fact issue regarding the absence of non-infringing substitutes because

> [d]espite identifying only EGun and ESub as potential
> NIAs [non-infringing alternatives] during discovery, in
> seeking to exclude the testimony of [Plaintiffs]' damages
> expert Mr. Andrew W. Carter, [Defendant] argued for the
> first time in this litigation that a "significant number
> of competitors sell[] acceptable, non-infringing
> alternatives." Dkt. 134 at 14. If [Defendant] contends
> that there are other acceptable NIAs, then it was
> required to disclose those theories during discovery so
> [Plaintiffs] could conduct appropriate discovery.
> [Defendant] did not.  See Dkt. 153, Resp. to Carter

---

[88] (...continued)
instead of the DynaStage® System in the 'but-for' world for purposes of DynaEnergetics' lost profits analysis."); and pp. 25-26 ("[Defendant] cannot — and in fact did not even try to — show there is a genuine issue of material fact regarding the absence of acceptable and available NIAs.  As such, [Plaintiffs are] entitled to summary judgment that there [are no] acceptable NIAs and that Panduit factor number two has been satisfied for purposes of its lost profits analysis.").

[89] Defendant's Opposition to Plaintiffs' MSJ, Docket Entry No. 145, p. 35.

[90] Id.

Daubert at 13-15.   The Court should not reward
[Defendant]'s deliberate sandbagging by allowing
[Defendant] to now take a different position on NIAs,
either in an effort to exclude Mr. Carter's opinion or to
defeat [Plaintiff]s' NIA MSJ.[91]

(a)   Applicable Law

If successful in an infringement suit, a patent owner is
entitled to recover damages.   See 35 U.S.C. § 284 ("Upon finding
for the claimant the court shall award the claimant damages
adequate to compensate for the infringement, but in no event less
than a reasonable royalty for the use made of the invention by the
infringer, together with interest and costs as fixed by the
court.").   Where the patentee produces or sells a product covered
by the patent claims, the patentee may seek to recover lost profits
because that amount is likely to be greater than reasonable
royalties.   To recover lost profits based on lost sales, a patentee
bears the initial burden to show a reasonable probability that but
for the infringement, it would have made the infringer's sales.
See Grain Processing Corp. v. American Maize-Products Co., 185 F.3d
1341, 1349 (Fed. Cir. 1999) (citing Rite-Hite Corp. v. Kelley Co.,
Inc., 56 F.3d 1538, 1545 (Fed. Cir.) (en banc), cert. denied, 116
S. Ct. 184 (1995)).

A four-factor test articulated in Panduit Corp. v. Stahlin
Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978), is a

[91]Plaintiffs' Reply in Support of Its MSJ, Docket Entry
No. 159, p. 26.

useful, but non-exclusive, way for a patentee to prove entitlement to lost profits.  The Panduit test requires the patentee to "prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would have made."  Id.  If the patentee establishes each of the four Panduit factors, a reasonable inference arises that the claimed lost profits were caused by the infringing sales, thus establishing the patentee's prima facie case with respect to "but for" causation.  See Rite-Hite, 56 F.3d at 1545.  "Once the patent owner establishes a reasonable probability of 'but for' causation, 'the burden then shifts to the accused infringer to show that ['the patent owner's "but for" causation claim] is unreasonable for some or all of the lost sales.'"  Grain Processing, 185 F.3d at 1349 (quoting Rite-Hite, 56 F.3d at 1544).  Plaintiffs seek summary judgment only on the second Panduit factor, i.e., the absence of acceptable non-infringing substitutes.  "[L]ost profits . . . cannot be recovered if acceptable non-infringing alternatives were available during the period of infringement."  Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed. Cir. 2003).  Whether an acceptable non-infringing substitute exists for an accused device is a question of fact.  See Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958, 971 (Fed. Cir. 2000); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1332 (Fed. Cir. 2009).

(b)   Application of the Law to the Facts

Plaintiffs contend that they are entitled to summary judgment that there are no acceptable non-infringing alternatives to the Accused Products because Defendant failed to identify any alternatives that were non-infringing in response to Plaintiffs' interrogatories.  Interrogatory No. 12 of Plaintiffs' Third Set of Interrogatories asked Defendant to "'[i]dentify each product you contend is an acceptable non-infringing alternative to any Accused Product' and to 'state the basis for your contention.'"[92]  After asserting objections Defendant responded that

> it is Hunting Titan's position that the EGun and ESub perforating gun systems are an acceptable non-infringing alternative to the accused H-1 perforating gun system. The EGun system project was first started in early Q3 of 2019 while the ESub system project was first started in Q4 2018.  The EGun system was first commercially available for sale in Q2 of 2020 while the ESub was first commercially available in Q1 2019. EGun and ESub are acceptable alternatives to H-1 because, when pre-wired and pre-assembled by Hunting, they contain the same benefits and features of H-1 such as utilizing the industry proven ControlFire® Cartridge (99.99% switch reliability), they reduce the number of connections, they are simple to assemble with no wire connections necessary, they are offered pre-loaded, and they eliminate tandem maintenance.
>
> As to the reasons why EGun and ESub do not infringe the Asserted Patents, the EGun and ESub use a similar CFC cartridge as the accused products.  Thus, the EGun and ESub do not infringe for the same reasons the H-1 does not infringe.  For example, the EGun and ESub do not have the claimed wireless connectors, they do not have the claimed directional locking fin, nor do they have the

---

[92]Plaintiffs' MSJ, Docket Entry No. 128, p. 28 (quoting Exhibit 18 to Dupriest Declaration, Docket Entry No. 130-6, p. 4).

claimed connector "configured for terminating the detonation cord." Dr. William Fleckenstein will explain the reasons the EGun and ESub do not infringe the Asserted Patents, which will be described in his upcoming rebuttal expert report that is due January 11, 2021. Adam[] Dyess is the person with knowledge of facts supporting this Response. Pursuant to Federal Rule Civil Procedure 33(d), Hunting Titan will also be producing documents containing information responsive to this Request.[93]

In his Responsive Expert Report, Dr. Fleckenstein describes the EGun, but not the ESub, as a non-infringing alternative to the accused devices.[94] Dr. Fleckenstein opines that the EGun is non-infringing for the same reasons that he opines the Accused Products are non-infringing, i.e., the "EGun does not have the claimed 'directional locking fin' for the same reasons that I discussed . . . regarding the H-1 . . . gun system[]," [95] "[t]he EGun also uses the same keyway system as the H-1 . . . gun[] to prevent rotation of the charge tube in the gun carrier," [96] and "the EGun top-most shaped charge cord retainer does not meet the limitation wherein the second connector is configured for terminating the detonation cord, for the reasons I discussed above with respect to the H-1 .

---

[93]Defendant's Responses to Plaintiffs' Third Set of Interrogatories, Exhibit 18 to Dupriest Declaration, Docket Entry No. 130-6, pp. 5-6.

[94]Dr. William W. Fleckenstein's Responsive Expert Report Regarding Infringement of U.S. Patent Nos. 10,472,938 and 10,429,161, Exhibit 8 to Dupriest Declaration, Docket Entry No. 131-5, pp. 94-99 ¶¶ 187-99.

[95]Id. at 96 ¶ 191.

[96]Id. at 97 ¶ 194.

. . gun system[]."[97]  Adam Dyess testified that Defendant contended the EGun — but not the ESub — was a non-infringing alternative to the H-1 Perforating Gun System, but could not articulate reasons why the EGun did not infringe beyond those identified with respect to the Accused Products.[98]

While Plaintiffs bear the ultimate burden of establishing that they are entitled to lost profits, which includes proving that there were no acceptable non-infringing alternatives, Panduit, 575 F.2d at 1156, "Plaintiffs' burden in proving there were no acceptable non-infringing alternatives partially lies in proving that the alternatives the accused infringer identifies are not acceptable non-infringing alternatives." ICM Controls Corp. v. Honeywell International Inc., No. 5:12-CV-1766 (LEK/ATB), 2021 WL 3403734, at *3 (N.D.N.Y. August 4, 2021) (citing Sherwin-Williams Co. v. PPG Industries, Inc., No. 17-CV-1023, 2020 WL 1283465, at *9 (W.D. Pa. March 18, 2020), appeal docketed, No. 22-2102 (Fed. Cir. August 4, 2022)).  Defendant therefore is required to provide information regarding allegedly acceptable, non-infringing alternatives in response to Plaintiffs' interrogatories seeking that information. See ICM Controls, 2021 WL 3403734, at *3 (citing Sherwin-Williams, 2020 WL 1283465, at *9)(finding that two products

---

[97]Id. at 98 ¶ 195.

[98]Transcript of Adam Dyess, Corporate Designee ("Dyess Deposition"), pp. 157:8-159:15, 176:5-178:3, Exhibit 15 to Dupriest Declaration, Docket Entry No. 131-10, pp. 40, 44-45.

could not be considered in the damages analysis where defendant failed to identify and describe those products in response to an interrogatory asking for such information and first identified them in a rebuttal damages report)).  See also Fractus, S.A. v. ZTE Corp., No. 3:18-CV-2838-K, 2019 WL 5697205, at *3 (N.D. Tex. November 4, 2019) (striking portion of accused infringer's expert's report that relied on and identified alleged non-infringing alternative because the accused infringer failed to identify and provide information about that alleged alternative in response to an interrogatory seeking that information).  Defendant's response to Plaintiffs' Interrogatory No. 12 neither alerted Plaintiffs to any proposed non-infringing alternatives other than EGun and ESub, nor explained how or why the EGun or ESub do not infringe for reasons different from the non-infringement arguments asserted for the Accused Products.

Defendant's response to Interrogatory No. 12 states that "the EGun and ESub do not infringe for the same reasons the H-1 Does not infringe,"[99] that Dr. Fleckenstein would explain the reasons the EGun and ESub do not infringe the Asserted Patents,[100] and that Adam Dyess was a person with knowledge about this issue.[101]  But

---

[99]Defendant's Responses to Plaintiffs' Third Set of Interrogatories, Exhibit 18 to Plaintiffs' MSJ, Docket Entry No. 130-6, p. 5.

[100]Id.

[101]Id.

Dr. Fleckenstein's rebuttal report does not mention ESub and opines that the EGun does not infringe for the same reasons that the Accused Products do not infringe.  Adam Dyess could not articulate any reasons why EGun did not infringe beyond those asserted for the Accused Products.  The court therefore concludes that Plaintiffs are entitled to summary judgment that there are no non-infringing substitutes for purposes of the <u>Panduit</u> lost profits analysis.  <u>See Sherwin-Williams</u>, 2020 WL 1283465, at *9 (granting patent owner summary judgment stating, "[o]n this record, there is not sufficient evidence that either [of Defendant's proposed NIAs] was an acceptable, available, non-infringing alternative product in the market during the damages period").

## C.  Defendant's Motion for Summary Judgment

Plaintiffs allege that Defendant directly infringed and continues to infringe the '161 and '938 Patents, "either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the H-1™ Perforating Gun System within the United States, in violation of 35 U.S.C. § 271(a)."[102]  Plaintiffs also allege that Defendant has induced infringement of the '161 and '938 Patents in violation of 35 U.S.C. § 271(b) by actively encouraging its

---

[102]Second Amended Complaint, Docket Entry No. 63, p. 5 ¶ 22 ('161 Patent), and 7 ¶ 31 ('938 Patent).

customers to directly infringe the Asserted Patents by using the H-1 Perforating System within the United States.[103] Defendant moves for summary judgment on Plaintiffs' claims of direct, indirect, and willful infringement of the Asserted Patents, and for summary judgment on Plaintiffs' claim for pre-suit damages.[104] Plaintiffs counter that Defendant's motion is without merit because a reasonable jury could find that Defendant willfully infringes both of the Asserted Patents, and that they are entitled to pre-suit damages.[105]

1.   Direct Infringement

Asserting that Plaintiffs cannot use an expert witness to make up infringement theories contrary to all the evidence, Defendant argues that it is entitled to summary judgment of no direct infringement because no reasonable jury could find (1) that a wire in the H-1 perforating gun satisfies the "wireless signal-in connector" in claims 1 and 9 of the '938 Patent;[106] (2) that a wire satisfies the "wireless ground contact connector" in claims 1 and

---

[103]<u>Id.</u> at 5 ¶ 23 ('161 Patent) and 7 ¶ 33 ('938 Patent).

[104]Defendant's MSJ, Docket Entry No. 133, p. 9.

[105]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 8.

[106]Defendant's MSJ, Docket Entry No. 133, pp. 16-21.

9 of the '938 Patent;[107] or (3) that the H-1's shaped charge is "configured for terminating the detonation cord" as required by claims 1 and 20 of '161 Patent.[108]   Plaintiffs respond that genuine issues of material fact preclude granting Defendant's MSJ because "the H-1 System infringes [] the "wireless" connector limitations of the '938 Patent where the stripped end of a wire serves as a contact that does not need to be hand-wired by the user,"[109] and because the H-1 System infringes "'the second connector configured for terminating the detonation cord' limitation of the '161 Patent where the connector on the back of the last shaped charge facilitates the termination of the detonation cord where it retains the cord proximate to the slot in the H-1 charge tube."[110]

(a)  Applicable Law

Evaluation of a motion for summary judgment of non-infringement is a two-step process.   See Abbott Laboratories v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009), cert. denied sub nom. Astellas Pharma, Inc. v. Lupin Ltd., 130 S. Ct. 1052 (2010).   First, the claims are properly construed and second, the

---

[107]Id. at 21.

[108]Id. at 24-27.

[109]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 9.   See also id. at 11-22.

[110]Id. at 9-10.   See also id. at 22-25.

construed terms are compared to the accused device.  Id.  "[A] determination of noninfringement, either literal or under the doctrine of equivalents, is a question of fact." Crown Packaging Technology, Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1312 (Fed. Cir. 2009).   To infringe a claim literally the accused product must incorporate every limitation in a valid claim, exactly.  Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc., 206 F.3d 1408, 1415 (Fed. Cir. 2000) ("Absent any limitation of a patent claim, an accused device cannot be held to literally infringe the claim.").  To infringe a claim under the doctrine of equivalents, the accused product must incorporate every limitation in a valid claim by a substantial equivalent.  Id.  See also Crown Packaging, 559 F.3d at 1312 ("A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial.").  The court may grant summary judgment of noninfringement only if no reasonable jury could find infringement. Id.

(b)   Application of the Law to the Facts

**(1)   Defendant is Entitled to Summary Judgment of No Direct Infringement of the '938 Patent**

Claim 1 of the '938 Patent claims

A perforating gun, comprising:

an outer gun carrier;

-56-

a charge holder positioned within the outer gun carrier and including at least one shaped charge;

a detonator contained entirely within the outer gun carrier;

the detonator including

a detonator body containing detonator components,

**a wireless signal-in connector,** a wireless through wire connector, and **a wireless ground contact connector,** and

an insulator electrically isolating the wireless signal-in connector from the wireless through wire connector; and

a bulkhead, wherein the bulkhead includes **a contact pin in wireless electrical contact with the wireless signal-in connector,** wherein

at least a portion of the bulkhead is contained within a tandem seal adapter, and **the wireless ground contact connector is in wireless electrical contact with the tandem seal adapter.**[111]

Claim 9 of the '938 Patent claims

[a] modular detonator, comprising:

a detonator body containing detonator components;

**a wireless signal-in connector;**

a wireless through wire connector;

**a wireless ground contact connector;**

a signal-in wire electrically connecting at least in part the **wireless signal-in connector** to at least one of the detonator components; and,

---

[111]'938 Patent, 11:16-35, Docket Entry No. 63-2, p. 28 (emphasis added).

an insulator electrically isolating the **wireless signal-in connector** from the wireless through wire connector, wherein

the **wireless signal-in connector** is configured for making wireless electrical contact with an electrical contact of a bulkhead assembly contained at least in part within a tandem seal adapter when the modular detonator is received within a gun assembly of a perforating gun system, and

the **wireless ground contact connector** is configured for making wireless electrical contact with the tandem seal adapter when the modular detonator is received within the gun assembly of the perforating gun system.[112]

Asserting that independent claims 1 and 9 of the '938 Patent require a wireless signal-in connector and a wireless ground contact connector, and that Plaintiffs contend these wireless connector limitations of the '938 Patent are met by wires in the H-1 perforating gun, Defendant argues that it is entitled to summary judgment of no infringement of these two limitations because no reasonable jury could find that wires in the H-1 perforating gun satisfy the '938 Patent's wireless connector limitations.[113]

Asserting that the wireless detonator of the '938 Patent eliminates the direct wire-to-wire connections when arming a perforation gun, Plaintiff counters that Defendant belatedly advocates for construction of the term "wireless,"[114] the '938

---

[112]Id. 11:63-12:16, Docket Entry No. 63-2, p. 28 (emphasis added).

[113]Defendant's MSJ, Docket Entry No. 133, pp. 16-21.

[114]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry
(continued...)

Patent teaches a detonator configured to be installed without wire-to-wire connections,[115] the inventors and Dr. Rodgers understand that "wireless" refers to the elimination of wire-to-wire connections for the end user,[116] and that their contention that the stripped end of a wire can be the claimed "wireless connectors" is consistent with the <u>Markman</u> Order and with their claim construction positions.[117]   Plaintiffs explain that

> as recognized by [Defendant], the '938 Patent itself discloses that the end of a wire can serve as a connector: "<u>In an embodiment</u>, all connections are made by connectors, such as spring loaded connectors, instead of wires, with the exception of <u>the through wire</u> that goes from the top connector 14 to the bottom connector 22, <u>whose ends are connectors</u>."[118]

---

[114](...continued)
No. 151, p.. 11-12.

[115]<u>Id.</u> at 12-13 (citing <u>inter alia</u>, dependent claims 8 and 12 of the '938 Patent for stating that "the wireless signal-in connector, the wireless through wire connector, and the wireless ground contact connector together are <u>configured to replace the wired electrical connection and to complete an electrical connection merely by contact</u>") (emphasis added)).

[116]<u>Id.</u> at 13-14 (citing the deposition testimony of Christian Eitschberger, Liam McNelis, and Thilo Scharf, and the Rodgers' Expert Report as confirming Plaintiffs' contention that "'[w]ireless' does not prohibit the existence of wires in a detonator within the scope of the claims, nor does it mean that the stripped end of a wire that is not directly attached to another wire cannot serve as a wireless connector.").

[117]<u>Id.</u> at 14-16.

[118]<u>Id.</u> at 15 (quoting Defendant's MSJ, Docket Entry No. 133, p. 19 (quoting '938 Patent, 6:24-28, Docket Entry No. 1-2, p. 25)).

Citing the report and testimony of Dr. Rodgers, Plaintiffs argue that they have produced compelling evidence that the H-1 System satisfies both the "wireless signal-in connector" and the "wireless ground contact connector" limitations of the '938 Patent.[119]

Defendant replies that Plaintiffs' infringement theory that a stripped wire may satisfy the "wireless signal-in connector" of the '938 Patent has no support because the patent specification, the inventors' deposition testimony, and the arguments that Plaintiffs made at the <u>Markman</u> hearing all agree that the plain and ordinary meaning of "wireless" is "without wire."[120]  Defendant also argues that H-1 guns do not have a "wireless ground contact connector."[121]

(i)  "Wireless Signal-in Connector"

Plaintiffs cite Dr. Rodgers' Expert Report and '938 Claim Chart as "generally" supporting their contention that "wireless" does not mean that "the stripped end of a wire that is not directly attached to another wire cannot serve as a wireless connector,"[122] but fail to cite any specific paragraph or page of Dr. Rodgers' Expert Report, '938 Claim Chart, or Rebuttal Expert Report

---

[119]<u>Id.</u> at 16-22.

[120]Defendant Hunting Titan, Inc.'s Reply in Support of Its [MSJ] ("Defendant's Reply in Support of Its MSJ"), Docket Entry No. 163, pp. 6-9.

[121]<u>Id.</u> at 10.

[122]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 14.

expressing that opinion.   Instead, Plaintiffs cite the following

excerpts from Dr. Rodgers' deposition testimony:[123]

> Q.   Does the patent describe a wire making the
> connection — making a wireless electrical contact
> between a contact pin and a wireless signal-in
> connector?
>
> MR. HEARD: Object to form.
>
> A.   I understand that that's what this allows, this —
> this claim limitation allows that a wire can be
> connected to a pin to make that signal-in
> connection.[124]
>
>                         . . .
>
> Q.   . . . So it's your position that the end of the
> wire soldered onto the bulkhead makes wireless
> electrical contact between a wireless connector and
> the bulkhead assembly; is that right?
>
> A.   That's right.   That's the wireless signal-in
> connector — connection, the connector connecting.[125]

Plaintiffs do not dispute that the plain and ordinary meaning

of "wireless" is "without wire" but, nevertheless argue that the

meaning of "wireless" changes when read in context of the '938

Patent.   But citing Vaporstream, Inc. v. Snap Inc., No. 2:17-cv-

00220-MLH (KSx), 2020 WL 136591, at *12 n. 3 (C.D. Cal. January 13,

2020), and O2 Micro International Ltd. v. Monolithic Power Systems,

Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006), for recognizing that

---

[123]Id. at 19 (citing "Ex. 5, Rodgers Tr. at 141:12-20, 154:23-
155:3").

[124]Rodgers Deposition, p. 141:12-20, Exhibit 5 to Declaration
of Christine Dupriest in Support of DynaEnergetics' Opposition to
Hunting's [MSJ] ("Dupriest Declaration") Docket Entry No. 156-5,
p. 37.

[125]Id. at 154:23-155:3, Exhibit 5 to Dupriest Declaration,
Docket Entry No. 156-5, p. 40.

local patent rules are designed to "prevent the 'shifting sands' approach to claim construction," Plaintiffs themselves argue, "it is improper to be raising this claim construction dispute at this stage of the proceedings."[126]  Plaintiffs' contention that the term "wireless" as used in the '938 Patent "[m]eans [n]o [w]ire-to-[w]ire [c]onnections,"[127] and "simply precludes the need for users to form direct wire-to-wire connections between the detonator and other components of the gun system,"[128] advocates for a construction of "wireless" that Plaintiffs did not seek before or during the Markman hearing.

Although Dr. Rodgers testified that the end of a wire soldered onto the bulkhead makes a wireless electrical contact between a wireless connector, i.e., the end of the wire, and the bulkhead assembly, Plaintiffs fail to cite any evidence in the record supporting this assertion.  And as Defendant argues, Dr. Rodgers' testimony is contradicted by the patent specification, by arguments that Plaintiffs made at the Markman hearing, and by the inventors' deposition testimony.[129]

---

[126]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 12.

[127]Id. at 13.

[128]Id. at 14 (citing the deposition testimony of Christian Eitschberger, Liam McNelis, and Thilo Scharf, and the Rodgers' Expert Report as confirming Plaintiffs' contention that "'[w]ireless' does not prohibit the existence of wires in a detonator within the scope of the claims, nor does it mean that the stripped end of a wire that is not directly attached to another wire cannot serve as a wireless connector.").

[129]Defendant's MSJ, Docket Entry No. 133, pp. 18-21.  See also
(continued...)

At the <u>Markman</u> hearing Plaintiffs argued that "wireless" means "without requiring any wiring:"

> And so when the gun is assembled, what happens is this contact pin comes into contact with this signal-in connector here and transmits the electrical signal without requiring any wiring.  And that's what the claims require.  So it's a wireless connector and it is a wireless electrical contact with the contact pin as the bulkhead.[130]

Plaintiffs did not argue — as they do now — that the signal-in connector could be a wire.

The word "wireless" is not used in the specification, but the specification states that a "basic component" of the invention is "a push-in detonator that does not use wires to make necessary connections."[131]   And as Plaintiffs recognize, the specification describes an embodiment in which "all connections are made by connectors, such as spring loaded connectors, instead of wires, with the exception of <u>the through wire</u> that goes from the top connector 14 to the bottom connector 22, <u>whose ends are connectors</u>."[132]   Generally speaking, claim terms are presumed to

---

[129](...continued)
Defendant's Reply in Support of Its MSJ, Docket Entry No. 163, pp. 8-9.

[130]Transcript of <u>Markman</u> Hearing, Docket Entry No. 86, p. 36:13-18.

[131]'938 Patent, 6:8-9, Docket Entry No. 1-2, p. 25.

[132]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 15 (quoting '938 Patent, 6:24-28, Docket Entry No. 1-2, p. 25).

carry their plain and ordinary meaning, CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002), and although limitations cannot be imported from the specification, Phillips v. AWH Corporation, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1332 (2006), the specification's statement that "all connections are made by connectors . . . instead of wires, with the exception of the through wire . . . whose ends are connectors," shows that "with the exception of the through wire," the invention's connectors are not wires.

The deposition testimony of inventors Thilo Scharf and Christian Eitschberger support the plain meaning of "wireless" as "without wires."  When asked whether a wire wrapped around a pin could be considered a wireless connector, Scharf unequivocally said that once a wire is wrapped around a pin it is not a wireless connection:

> Q.  Would you consider a pin contact with a wire manually connected to it, a wireless connector?
>
> MR. HEARD: Object to form.
>
> A.  A pin itself, by itself, is a wireless connector. If you take a wire and wrap it around the pin, it is not a wireless connection any more, in my opinion.[133]

---

[133]Deposition of Thilo S. Scharf December 22, 2021 ("2021 Scharf Deposition"), pp. 71:22-72:3, Exhibit 13 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 138-9, p. 4.

Although Plaintiffs cite another excerpt from the Scharf Deposition in support of their contention that the term "wireless" as used in the '938 Patent means "no wire-to-wire connections,"[134] that is not what Scharf testified in the cited excerpt.  Scharf testified:

> Q.  Mr. Scharf, if one of the wires in the Hunting H-1 detonator is wrapped around a pin connect and soldered to the that pin connect, would you consider that pin connect a wireless connector?
>
> MR. HEARD: Object to form.
>
> A.  To the user of a Hunting H-1 system, the cartridge, the ControlFire cartridge is a wire-free system, there is no wires to be meddled with, and from the outside there are wire-free connections.[135]

Like Scharf, Christian Eitschberger rejected the idea that a wireless connection could be made with a wire:

> Q.  My question is, if you take this black through wire and press it into a pin, is that a wireless connection?
>
> MR. HERMAN: Object to form.
>
> A.  I do have a wire.  How can it be wireless if there is a wire?[136]

---

[134]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 14 (quoting "Ex. 3. Scharf Tr. at 171:19-25"), Exhibit 3 to Dupriest Declaration, Docket Entry No. 156-3, p. 44.

[135]2021 Scharf Deposition, p. 171:19-172:2, Exhibit 3 to Dupriest Declaration, Docket Entry No. 156-3, p. 44.

[136]Deposition of Christian D. Eitschberger ("Eitschberger Deposition"), pp. 64:23-65:3, Exhibit 14 to the Dornberger Declaration in Support of Various Motions, Docket Entry No. 138-10, pp. 3-4.  See also Exhibit 7 to Dupriest Declaration, Docket Entry No. 156-7, pp. 17-18.

Although Plaintiffs cite other excerpts from the Eitschberger
Deposition in support of their contention that the term "wireless"
as used in the '938 Patent means "no wire-to-wire connections,"[137]
that is not what Eitschberger testified.  Eitschberger testified:

> Q.   Well I'm asking you, Mr. Eitschberger, if the
>      picture we're looking at here, Picture 5 in Exhibit
>      17, when that black through wire is pressed into
>      that pin, is that a wireless connection?
>
> MR. HERMAN: Objection to form.
>
> A.   For me a wireless — a wireless connection involves
>      the user.  For me the term "wireless" is always in
>      conjunction with — with the user.  In — In this
>      case, here the user has nothing to do with — with
>      this connection, so I don't know how I would use
>      the term "wireless" here.
>
> Q.   So you don't know if this black through wire that's
>      pressed into a pin is a wireless connection or not.
>
> MR. HERMAN: Object to form.
>
> A.   I wouldn't use the term here.  For me the term
>      "wireless" is when it comes to interaction with a
>      customer.  When — When you — when you go back to
>      the detonator, the detonator is a wireless
>      detonater because the user uses the detonator and
>      does not need to make any connection.   That's
>      "wireless."  But in this case I don't understand
>      the question.[138]
>
>                          . . .
>
> Q.   Mr. Eitschberger, what, in your opinion, is a
>      wireless detonator?

---

[137]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry
No. 151, p. 14 (quoting Eitschberger Deposition, p. 64:6-21 and
114:9-14, Exhibit 7 to Dupriest Declaration, Docket Entry No. 156-
7, pp. 17-18 and 30).

[138]Eitschberger Deposition, p. 64:1-22, Exhibit 7 to Dupriest
Declaration, Docket Entry No. 156-7, p. 17.

A.   A wireless detonator for me is a initiation device
that — where the customer does not need to make a
wired connection.   That's why it's called — why
it's then wireless.[139]

The only evidence that Plaintiffs cite in support of their
contention that a wire in the H-1 perforating gun meets the claimed
"wireless signal-in connector" limitation of the '938 Patent is
Dr. Rodgers' deposition testimony that the end of a wire soldered
onto a bulkhead makes a wireless electrical contact between a
wireless connector, i.e., a wire, and the bulkhead assembly.
Because Dr. Rodgers' testimony is not supported by his Expert
Report, '938 Claim Chart, or Rebuttal Expert Report, and because
his testimony is contradicted by the patent specification, by
arguments that Plaintiffs made at the Markman hearing, and by the
inventors' deposition testimony, the court concludes that Defendant
is entitled to summary judgment of no infringement of the "wireless
signal-in connector" limitation of the '938 Patent because no
reasonable jury could find that a wire in the H-1 System infringed
the "wireless signal-in connector" limitation of the '938 Patent.


(ii) Wireless Ground Contact Connector

Defendant argues that "[s]imilar to the signal-in connector,
Dr. Rodgers asserts that the 'wireless ground contact connector' is
met by a wire in the . . . H-1 perforating gun."[140]   In pertinent

---

[139]Id. at 114:9-14, Exhibit 7 to Dupriest Declaration, Docket
Entry No. 156-7, p. 30.

[140]Defendant's MSJ, Docket Entry No. 133, p. 21 (citing "Ex. 6,
(continued...)

part Dr. Rodgers testified that the end of a black wire that makes contact with a J hook in the H-1 gun satisfies the "wireless ground contact connector" limitation in the '938 Patent.[141]  Citing the same evidence on which they relied with respect to the "wireless signal-in connector" limitation, Plaintiffs argue that they have "produced sufficient evidence based upon which a reasonable jury could find the H-1 System satisfies the 'wireless ground contact connector.'"[142]  But for the same reasons the court has already concluded that Defendant is entitled to summary judgment of no infringement of the "wireless signal-in connector" limitation of the '938 Patent, the court concludes that Defendant is also entitled to summary judgment of no infringement of the "wireless ground contact connector" limitation of the '938 Patent.

> ### (2)  Defendant Is Not Entitled to Summary Judgment of No Direct Infringement of the '161 Patent

Independent claims 1 and 20 of the '161 Patent require "at least one second connector positioned within the gun carrier spaced apart from the first connector, wherein the second connector is configured for terminating the detonation cord in the perforation

---

[140](...continued)
Rodgers Dep. Tr. at 158:22-159:8" and "159:9-15").

[141]Rodgers Deposition, pp. 158:22-159:15, Exhibit 6 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 138-4, p. 13.

[142]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 22.

gun system."[143]   Defendant argues that it is entitled to summary judgment that the H-1 System does not meet this limitation because "terminating" means to "discontinue" or "end" the detonation cord, and because the H-1 detonation cord "does not end" at the back of the last shaped charge, the H-1 System does not have the claimed "second connector configured for terminating the detonation cord."[144]   Asserting that the H-1 System unquestionably has the claimed "second connector," Plaintiffs argue that Defendant ignores testimony and evidence from multiple sources, including the claim language, the specification, Dr. Rodgers testimony, Defendant's H-1 Technical Manual, and the testimony of Defendant's own expert, Dr. Fleckenstein.[145]

Claim 1 requires the "second connector" to be "configured for terminating the detonation cord in the perforation gun system," not to be the end point of the detonation cord.[146]   The '161 Patent specification similarly states that "[a]s better shown in FIG. 5, a terminating means structure 34 is provided to facilitate terminating of the detonation cord."[147]

---

[143]'161 Patent, 10:41-44, Exhibit A to Second Amended Complaint, Docket Entry No. 63-1, p. 26.

[144]Defendant's MSJ, Docket Entry No. 133, pp. 24-25.  See also Defendant's Reply in Support of Its [MSJ], Docket Entry No. 163, pp. 11-13.

[145]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, pp. 22-25.

[146]'161 Patent, 10:43-44, Exhibit A to Complaint, Docket Entry No. 63-1, p. 26.

[147]Id. at 6:49-51, Docket Entry No. 63-1, p. 24.

Defendant's H-1 Technical Manual informs customers to "make sure that there is enough cord left to tuck completely into the slot [as shown]" and to "[u]se tape if necessary to secure the cord inside."[148]  The accompanying illustration shows how the retainer on the back of the shaped charge is specifically positioned next to a slot for securing the detonation cord in the charge tube.[149]

Dr. Rodgers Expert Report states that

> the H-1 System . . . includes a second connector — the detonation cord "retainer" farthest from the first connector — that is positioned in the gun carrier, spaced apart from the first connector, and configured for positioning and terminating the detonation cord in the perforation gun system.[150]

Defendant's expert, Dr. Fleckenstein, concurred, testifying at his deposition that the slot on the charge tube is proximate to the connector on the back of the shaped charge,[151] and that the clasp on the back of the shaped charge serves as a means "to clasp something, you know, the detonator cord, in place."[152]

---

[148]Hunting Titan's Product Manual, p. HTT00001136, Exhibit 18 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 137-7, p. 17.

[149]Id.

[150]Rodgers Expert Report, ¶ 96, Exhibit 3 attached to Dupriest Declaration, Docket Entry No. 131-1, p. 53.

[151]Videotaped Deposition of William Fleckenstein, Ph.D. ("Fleckenstein Deposition"), pp. 231:18-232:9, Exhibit 14 to Dupriest Declaration, Docket Entry No. 131-9, p. 58.

[152]Id. at 225:24-25, Docket Entry No. 131-9, p. 57.

Based on the evidence provided by the specification, Defendant's H-1 System Product Manual, and the testimony of Drs. Rodgers and Fleckenstein, a reasonable jury could find that the H-1 System includes the claimed "second connector . . . configured for terminating the detonation cord in the perforation gun system." Accordingly, the court concludes that Defendant is not entitled to summary judgment of no infringement of this limitation of the '161 Patent.

2.   Indirect Infringement

Plaintiffs allege that Defendant indirectly infringed the Asserted Patents in violation of 35 U.S.C. § 271(b) by actively inducing its customers, by and through its sales and marketing efforts, to infringe the '161 and '938 Patents by using the H-1™ Perforating System within the United States.[153] Defendant argues that it is entitled to summary judgment on Plaintiffs' claims for indirect infringement because "Plaintiffs have failed to show that [Defendant] had knowledge of the Asserted Patents before [Plaintiffs] filed this suit, much less knowledge of infringement by the H-1 [System]."[154] Plaintiffs respond that a reasonable jury could find that Defendant indirectly infringed the Patents-in-Suit.[155]

---

[153]Second Amended Complaint, Docket Entry No. 63, p. 5 ¶ 23 ('161 Patent) and 7 ¶ 33 ('938 Patent).

[154]Defendant's MSJ, Docket Entry No. 133, p. 30.

[155]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry
(continued...)

(a)   Applicable Law

To prove indirect infringement by inducement, Plaintiffs must "show that [Defendant,] the accused inducer[,] took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." Info-Hold, Inc. v. Muzak LLC, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quoting Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011))).  "The inducement knowledge requirement may be satisfied by a showing of actual knowledge or willful blindness."  Id. "Willful blindness is a high standard, requiring that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." Id. at 1373 (citing Global-Tech, 131 S. Ct. at 2070).

(b)   Application of the Law to the Facts

**(1)   Defendant Is Entitled to Summary Judgment on Plaintiffs' Claims for Indirect Infringement of the '938 Patent**

Because the court has concluded that Defendant is entitled to summary judgment on Plaintiffs' claims of direct infringement of the '938 Patent, Defendant is also entitled to summary judgment on

---

[155](...continued)
No. 151, pp. 28-30.

Plaintiffs' claims of indirect infringement of that patent since proof of direct infringement is a necessary prerequisite to a finding of indirect infringement.  <u>See</u> <u>Dynacore Holdings Corp. v. U.S. Phillips Corp.</u>, 363 F.3d 1263, 1272 (Fed. Cir. 2004) (recognizing that "[i]ndirect infringement . . . can only arise in the presence of direct infringement").

### (2)   Defendant Is Not Entitled to Summary Judgment on Plaintiffs' Claims for Indirect Infringement of the '161 Patent

Citing <u>SynQor, Inc. v. Artesyn Technologies, Inc.</u>, 2:07-CV-497-TJW-CE, 2010 WL 11534393, at *1-2 (E.D. Tex. December 2, 2010), and the deposition testimony of Adam Dyess, one of Defendant's corporate representatives, Plaintiffs argue that "a reasonable jury could conclude that, at the very least, [Defendant] was willfully blind to the existence of the Patents-in-Suit."[156]  In <u>SynQor</u> the court denied defendants' motion for summary judgment on plaintiff's claims for pre-suit indirect infringement, holding that plaintiff did not need to present direct evidence of defendants' pre-suit knowledge of the patents and infringement because a jury could reasonably infer defendants' pre-suit knowledge of the patents from their conduct and documented pre-suit knowledge of the Plaintiffs' other patents, products, and technologies. 2010 WL 11534393, at *1.

---

[156]<u>Id.</u> at 29.

As evidenced by the fact that this action was once consolidated with a previously filed patent infringement action involving the same parties, but different patents, the parties have a history of patent litigation.[157]  Dyess testified that his duties include managing Defendant's portfolio of intellectual property,[158] that Defendant views Plaintiffs as one its main competitors,[159] and that Defendant subscribes to a service through which it receives alerts at least weekly whenever a new application is published by the PTO.[160]  When asked if the subscription service provided him notice of the Asserted Patents, Dyess testified, "I've looked through my searches, and I have not found anything."[161]  Viewed in light of the parties' litigation history, however, the court concludes that notwithstanding Dyess' testimony, a jury could reasonably infer both that Defendant knew about the Patents-in-Suit before January 30, 2020, the date that this action was filed, and knew that there was a high probability that the Accused Products

---

[157]See Procedural History, § III, above.  See also Memorandum Opinion and Order, Docket Entry No. 50, pp. 2-7 (recounting the factual and procedural history in detail).

[158]Dyess Deposition, p. 26:13-19, Exhibit 15 to Dupriest Declaration, Docket Entry No. 131-10, p. 7.

[159]Id. at 43:1-6, 98:21-99:4, and 166:22-25, Exhibit 15 to Plaintiffs' MSJ, Docket Entry No. 131-10, pp. 11, 25, and 42.

[160]Id. at 58:20-59:22 and 61:1-8, Exhibit 15 to Plaintiffs' MSJ, Docket Entry No. 131-10, pp. 15-16.

[161]Id. at 61:20-21, Docket Entry No. 131-10, p. 16.

infringed the '161 Patent or knew that Plaintiffs believed that the Accused Products infringed that Patent before this action was filed. Accordingly, the court concludes that Defendant has failed to show that it is entitled to summary judgment on Plaintiffs' claims for indirect infringement of the '161 Patent.

### 3. Willful Infringement

Asserting that Plaintiffs cannot show that Defendant had pre-suit knowledge of the Asserted Patents or the alleged infringement, and cannot show that Defendant acted egregiously, Defendant argues that it is entitled to summary judgment on Plaintiffs' claims for willful infringement.[162] Plaintiffs respond that fact issues exist with respect to Defendant's willful infringement.[163]

### (a) Applicable Law

Pursuant to 35 U.S.C. § 284 a court may increase the damages for a Defendant's patent infringement "up to three times the amount found or assessed." A party seeking enhanced damages must show that the accused infringer (1) knew of the patent-in-suit, (2) after acquiring that knowledge, infringed the patent, (3) willfully. See Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923, 1930-36 (2016). See also WBIP, LLC v.

---

[162]Defendant's MSJ, Docket Entry No. 133, pp. 32-33.

[163]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, pp. 30-32.

Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."). The Federal Circuit has recognized that "[u]nder Halo, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing Halo, 136 S. Ct. at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.")). In Halo the Court recognized that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." Halo, 136 S. Ct. at 1933. The Court explained that enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." Id. While willfulness is a fact issue for the jury to decide, "[w]hether the conduct is sufficiently egregious as to warrant enhancement and the amount of the enhancement that is appropriate are committed to the sound discretion of the district court." WBIP, 829 F.3d at 1341 n. 13. See also Halo, 136 S. Ct. at 1932 ("District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount.").

(b)   Application of the Law to the Facts

### (1)   Defendant Is Entitled to Summary Judgment on Plaintiffs' Claims for Willful Infringement of the '938 Patent

Because the court has concluded that Defendant is entitled to summary judgment on Plaintiffs' claims for direct and indirect infringement of the '938 Patent, Defendant is also entitled to summary judgment on Plaintiffs' claims for willful infringement of that patent as proof of infringement is a necessary prerequisite to a finding of willful infringement.

### (2)   Defendant is Not Entitled to Summary Judgment on Plaintiffs' Claims for Willful Infringement of the '161 Patent

Citing <u>M&C Innovations, LLC v. Igloo Products, Corp.</u>, No. 4:17-CV-2372, 2018 WL 4620713, at * 5 (S.D. Tex. July 31, 2018), and asserting that "the only facts supporting knowledge of the Asserted Patents is the filing of this lawsuit itself,"[164] Defendant argues that "[t]his is insufficient to support a finding of willful infringement."[165] Citing the parties' history of patent litigation, <u>SynQor</u>, 2010 WL 11534393, at *1-2, and the deposition testimony of Defendant's corporate representative, Adam Dyess, Plaintiffs argue that "[b]ased on the available evidence, a reasonable jury could conclude that, at the very least, [Defendant]

---

[164]Defendant's MSJ, Docket Entry No. 133, p. 32.

[165]<u>Id.</u>

was willfully blind to the existence of the Patents-in-Suit."[166]
Citing WBIP, LLC, 829 F.3d at 1341, for holding that "[k]nowledge
of the patent alleged to be willfully infringed continues to be a
prerequisite to enhanced damages," Defendant replies that
Plaintiffs have failed to cite evidence capable of establishing
that it knew of the Asserted Patents or any alleged infringement
before Plaintiffs filed this lawsuit.[167]  For the reasons stated in
§ IV.C.2(b)(2), above, the court has already concluded that whether
Defendant knew of the Asserted Patents and knew that the Accused
Products infringed those patents before this action was filed
present fact issues for trial regarding indirect infringement of
the '161 Patent, the court concludes that the same evidence raises
fact issues for trial regarding Plaintiffs' claims for willful
infringement of the '161 Patent.  Accordingly, the court concludes
that Defendant is not entitled to summary judgment on the
Plaintiffs' claims for willful infringement of the '161 Patent.


   4.   Defendant Is Entitled to Summary Judgment on Plaintiffs'
        Claims for Pre-Suit Damages under 35 U.S.C. § 287(a)

     Defendant argues that it is entitled to summary judgment on
Plaintiffs' claims for pre-suit damages under 35 U.S.C. § 287(a)

---

[166]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry
No. 169, pp. 28-29.

[167]Defendant's Reply in Support of Its MSJ, Docket Entry
No. 163, p. 16.

because Plaintiffs admit that they did not provide Defendant actual notice of infringement before filing this action on January 30, 2020, and because Plaintiffs have not shown sufficient evidence of patent marking.[168]   Asserting that Thilo Scharf's testimony constitutes evidence from which a reasonable jury could conclude that Plaintiffs marked their products, Plaintiffs argue that genuine issues of material fact preclude granting Defendant summary judgment on their claims for pre-suit damages.[169]

(a)  Applicable Law

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." Lubby Holdings LLC v. Chung, 11 F.4th 1355, 1359 (Fed. Cir. 2021) (quoting Arctic Cat Inc. v. Bombardier Recreational Products, Inc., 876 F.3d 1350, 1365 (Fed. Cir. 2017)).  "If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." Id. (quoting Arctic Cat, 876 F.3d at 1366 (quoting Dunlop v. Schofield, 14 S. Ct. 576, 577 (1894))).  "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking

---

[168]Defendant's MSJ, Docket Entry No. 133, p. 28.

[169]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, pp. 25-28.

requirement." <u>Id.</u>  "However, 'an alleged infringer who challenges
the patentee's compliance with § 287 bears an initial burden of
production to articulate the products it believes are unmarked
"patented articles" subject to § 287.'" <u>Id.</u> (quoting <u>Arctic Cat</u>,
876 F.3d at 1368).  If there is no marking, actual notice of
infringement must consist of an "affirmative communication of a
specific charge of infringement by a specific accused product or
device. . . It is irrelevant . . . whether the defendant knew of
the patent or knew of his own infringement." <u>Amsted Industries
Inc. v. Buckeye Steel Castings Co.</u>, 24 F.3d 178, 187 (Fed. Cir.
1994).  Absent such a communication, damages are limited to those
incurred after the date the suit was filed.  35 U.S.C. § 287(a)
("Filing of an action for infringement shall constitute such
notice.").

> (b)  Application of the Law to the Facts

Asserting that Plaintiffs did not give notice of infringement
before filing this action, Defendant argues that Plaintiffs are not
entitled to pre-suit damages because they did not properly mark
their products.  In support of this argument Defendant cites
Plaintiffs' response to Interrogatory No. 3, stating that
"DynaEnergetics has been marking the covered products in accordance
with 35 U.S.C. § 287 since at least as early as January 23,

2020,"[170] which was one week before this action was filed on January 30, 2020.[171]

Asserting that whether they properly marked their products in compliance with § 287(a) is a fact issue for trial, Plaintiffs cite the deposition testimony of their Product Line Director, Thilo Scharf.  Scharf testified that Plaintiffs mark the outside of their product packaging with a label identifying a website that lists the patents covering the products.  Scharf also testified that the '161 and '938 Patents would have been included on the website as soon as they issued,[172] which was on October 1, 2019, for the '161 Patent, and November 12, 2019, for the '938 Patent.  Citing <u>GEODynamics, Inc. v. DynaEnergetics US, Inc.</u>, No. 2:17-CV-00371-RSP, Docket Entry No. 214 at 6-7 (E.D. Tex. September 20, 2018),[173] and <u>Candela Corp. v. Palomar Medical Technologies, Inc.</u>, No. 9:06-CV-277, 2008 WL 11442020, at *5 (E.D. Tex. September 5, 2008), Plaintiffs argue

---

[170]Defendant's MSJ, Docket Entry No. 133, p. 29 (quoting Plaintiffs' Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-21), p. 8, Exhibit 20 to Dornberger Declaration in Support of Various Motions, Docket Entry No. 138-13, p. 9).

[171]<u>See</u> Complaint, Docket Entry No. 1.

[172]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, pp. 26-27 (citing 2021 Scharf Deposition, pp. 207:17-208:25, Exhibit 3 to Dupriest Declaration, Docket Entry No. 156-3, p. 53).

[173]Exhibit 77 to Dupriest Declaration, Docket Entry No. 155-46.

that "[o]n this record, a reasonable jury could conclude that [they] complied with § 287(a)."[174]

Defendant replies that Scharf's testimony is insufficient to create a fact issue for trial and that the caselaw on which Plaintiffs rely is inapplicable and distinguishable on the facts. The court agrees.  While Scharf testified that Plaintiffs have a general policy of marking their product packaging with a website that lists applicable patent numbers, and that the Patents-in-Suit would have been added to the website upon issuance, he also testified that he was not responsible for maintaining the list of patents on the website, that he did not know who was responsible for maintaining the list of patents on the website, and that he did not check the list in preparation for his deposition to determine if the Patents-in-Suit were actually listed.[175]

Plaintiffs cite GEODynamics for its denial of defendant's motion for summary judgment on plaintiff's claims for pre-suit damages based on plaintiff's cite to emails discussing the need to list patent numbers on plaintiff's packaging, and a dated photograph of an accused product marked with the number of the

---

[174]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 151, p. 28.

[175]2021 Scharf Deposition, pp. 209:5-210:25, Exhibit 3 to Dupriest Declaration, Docket Entry No. 156-3, p. 54.

patent-in-suit.[176]  Plaintiffs cite <u>Candela</u>, 2008 WL 11442020, for
its denial of a similar motion for summary judgment based on emails
showing a general corporate policy of marking products with patent
numbers, and an affidavit stating that the accused products were
actually marked with the number of the patent-in-suit.  <u>Id.</u> at *5
(citing <u>Sentry Protection Products, Inc. v. Eagle Manufacturing
Co.</u>, 400 F.3d 910, 918 (Fed. Cir. 2005) (where Plaintiff produced
an affidavit stating that its products were marked, together with
documents showing sales in that period, the Federal Circuit
reversed the district court's grant of summary judgment)).[177]  But
in <u>GEODynamics</u> and <u>Candela</u> the plaintiffs presented evidence not
only that the patentees had general policies of marking their
products, but also that the allegedly infringed products were
actually marked with the number of the asserted patent before suit
was filed.  While Scharf testified that Plaintiffs had a general
policy of marking their products, he also testified that the
allegedly infringed products were not marked with the numbers of
the Patents-in-Suit but, instead, that the product packaging

---

[176]<u>GEODynamics</u>, p. 6, Exhibit 77 to Dupriest Declaration,
Docket Entry No. 155-46, p. 7.

[177]Plaintiffs also cite <u>Novatel Wireless, Inc. v. Franklin
Wireless Corp.</u>, No. 10-cv-2530-CAB(JMA), 2012 WL 12845615, at *2
(S.D. Cal. July 19, 2012), which held that assertions that patents
were listed on a website was sufficient to allege constructive
knowledge of patents for purposes of defeating a Rule 12(b)(6)
motion to dismiss a claim for inducement of infringement, but did
not involve the issues of marking or pre-suit damages.

identified a website on which applicable patent numbers were
listed. Scharf also testified that he had no personal knowledge of
when or even if the Patents-in-Suit were actually listed on the
website. Based on this evidence a reasonable jury could not find
that Plaintiffs marked the allegedly infringing products as
required by 35 U.S.C. § 287(a) before this action was filed.
Accordingly, the court concludes that Defendant is entitled to
summary judgment on Plaintiffs' claims for pre-suit damages under
35 U.S.C. § 287(a).


### V. **Defendant's Motion to Amend**

Defendant's motion to amend seeks leave to assert an
additional inequitable conduct affirmative defense and counterclaim
for declaratory judgment of unenforceability of the '938 Patent
based on allegations that Plaintiffs intentionally failed to
disclose to the patent examiner that their inventions were not
independently developed but, instead, based on Schlumberger's
SafeJet perforating gun.[178]   Plaintiffs respond that Defendant's
motion to amend should be denied because good cause does not exist

---

[178]Defendant's Motion to Amend, Docket Entry No. 180, pp. 5-6.
See also Defendant's Amended Answer, Affirmative Defenses, and
Counterclaims to Plaintiffs' Second Amended Complaint ("Defendant's
Amended Answer"), Exhibit 17 to Declaration of Ryan E. Dornberger
in Support of Defendant Hunting Titan, Inc.'s Motion for Leave to
Amend ("Dornberger Declaration in Support of Defendant's Motion to
Amend"), Docket Entry No. 181-8, pp. 39-43 ¶¶ 219-44, and pp. 78-82
¶¶ 441-66.

and the proposed amendment is futile.[179]  Defendant replies that its motion to amend is not untimely, its allegations of inequitable conduct are not futile, and allowing the amendment will not prejudiced the Plaintiffs.[180]  For the reasons explained below, the court disagrees and Defendant's Motion to Amend will be denied.

## A.    Additional Undisputed Facts[181]

Before inventor Scharf worked for Plaintiffs he worked for Schlumberger as a "perforating domain champion," and was considered an expert in perforating by his colleagues.[182]  Sometime in 2011, Scharf gave a presentation on Schlumberger's SafeJet perforating gun to Schlumberger customers.[183]  When Scharf left Schlumberger to work for Plaintiffs in August of 2011, he took with him a USB drive

---

[179]Plaintiffs' Response in Opposition to Defendants' Motion for Leave to File Amended Answer & Counterclaims Asserting Additional Inequitable Conduct Defense ("Plaintiffs' Opposition to Defendants' Motion to Amend"), Docket Entry No. 186, p. 7.

[180]Defendant Hunting Titan, Inc.'s Reply in Support of its Motion for Leave to File Amended Answer & Counterclaims ("Defendant's Reply in Support of Motion to Amend"), Docket Entry No. 191.

[181]The factual background recited here comes from Defendant's Motion to Amend, Docket Entry No. 180, pp. 9-11.

[182]2021 Scharf Deposition, pp. 20:4-16 and 29:13-22, Exhibit 1 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-1, pp. 3 and 5.

[183]SafeJet* Innovating for Efficiency ("Scharf's 2011 SafeJet Presentation"), Exhibit 2 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 181-1.

that contained a copy of his 2011 Presentation.[184]  Scharf gave the USB drive to his supervisor, Frank Preiss ("Preiss"), "for general discussion to look [at] what was going on in the industry."[185]

On March 5, 2012, David Parks ("Parks") and his company, JDP Engineering & Machine, responded to a Request for Proposal from Plaintiffs offering to develop a new perforating gun based on a list of features and a photograph.[186]  In April of 2012, Preiss provided Parks a picture of "the existing injection molded system that originated with Thilo,"[187] which Preiss printed from a pdf file that he was "not supposed to have a copy from."[188]

## B.   Standard of Review

If a scheduling order has been entered establishing a deadline for amendments to pleadings, Federal Rule of Civil Procedure 15(a) provides the standard for requests to amend that are filed before the scheduling order's deadline has expired.  If, however, a

---

[184]Videotaped Deposition of Thilo Scharf March 1, 2022 ("2022 Scharf Deposition"), pp. 8:19-9:11, Exhibit 3 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-2, pp. 4-5.

[185]Id. at 52:8-9, Docket Entry No. 182-2, p. 6.

[186]Request for Proposal, Exhibit 6 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-5.

[187]Email exchange between Preiss and Parks, Exhibit 5 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-4, p. 3.

[188]Id.

scheduling order has been entered and the deadline for amending the pleadings has expired, the movant must establish good cause for modifying the scheduling order as required by Rule 16(b) before the court will apply Rule 15(a)'s more liberal standard to the motion to amend.  S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003).  When determining whether the moving party has established good cause to amend, courts consider four factors:  "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  Id.  The party seeking to modify the scheduling order bears the burden of establishing good cause.  Id.  If a movant establishes good cause to extend the scheduling order, the motion to amend is analyzed under Rule 15(a).  Id.  See also Pressure Products Medical Supplies, Inc. v. Greatbatch, Ltd., 599 F.3d 1308, 1315 (Fed. Cir. 2010) (evaluating motion to amend in a patent case pursuant to S&W Enterprises, 315 F.3d at 533).

On July 22, 2021, the court entered a Docket Control Order (Docket Entry No. 55), establishing August 27, 2021, as the deadline for amending pleadings without leave of court, and January 21, 2022, as the discovery deadline.  The Docket Control Order was amended by orders entered on November 30, 2021 (Docket Entry No. 100), January 14, 2022 (Docket Entry No. 123), and February 7, 2022 (Docket Entry No. 125), when — pursuant to Plaintiffs' Unopposed Motion for Entry of Revised Scheduling Order and for

Continuance of Trial (Docket Entry No. 124) — the court reopened discovery and extended the deadline for filing dispositive and non-dispositive motions from February 8 to March 8, 2022. Because Defendant filed the pending motion to amend on April 26, 2022, seven weeks after the deadline for filing motions expired on March 8, 2022, Defendant must establish good cause to modify the scheduling order under Rule 16(b).

## C. Defendant Fails to Establish Good Cause to Amend

Asserting that documents received from Parks on the eve of his deposition near the end of the initial discovery period show that the inventors and Plaintiffs' president, Ian Grieves, intentionally failed to disclose to the examiner that their alleged inventions were not independently developed but, instead, based on Schlumberger's SafeJet gun,[189] Defendant argues that "[g]ood cause exists to allow amendment of the pleadings to add additional inequitable conduct allegations that were just recently uncovered through no fault of [Defendant]."[190]   Defendant explains that

> [o]ne of the inventors, Thilo Scharf, worked for Schlumberger immediately before working for Plaintiffs. While at Schlumberger, Mr. Scharf gave a presentation to Schlumberger's customers regarding the SafeJet perforating gun. He took this presentation with him on a USB drive (along with 13 other presentations) when he left Schlumberger and brought it with him to his new job

---

[189]Defendants' Motion to Amend, Docket Entry No. 180, p. 6.

[190]Id. at 8.

with Plaintiffs.   Mr. Scharf gave the USB drive to
another inventor, Frank Preiss.   Mr. Preiss then
contracted with lead inventor David Parks to develop a
product "based on a photo."   That photograph showed an
"existing injection molded system that originated with
Thilo."   And while none of the inventors can remember
what perforating gun was actually in this photograph, the
documentary evidence makes clear it was Schlumberger's
SafeJet perforating gun.   Importantly, none of this
evidence was known to [Defendant] until after it
uncovered missing emails from Plaintiffs' production that
were only found through third-party discovery in Canada
on the eve of the discovery deadline in this case.[191]

Defendant argues that

[a]ll four factors support good cause to allow the
proposed amendment. . . First, [Defendant] brings this
motion just a little over a month after it was able to
re-depose inventors Thilo Scharf, Liam McNelis, and Frank
Preiss about the missing documents with David Parks.
Second, the issue is important because the missing
evidence shows that from the very beginning, Plaintiffs
based the invention of the Asserted Patents on
Schlumberger's SafeJet perforating gun (and withheld that
information from the examiner).   The third and fourth
factors also support amendment — Plaintiffs have already
put up the inventors for a second deposition regarding
the missing evidence and no additional discovery is
needed on the new allegations before trial.[192]

1.   Defendant Has No Reasonable Explanation for Delay

"The good cause standard requires the party seeking relief to

show that the deadlines cannot reasonably be met despite the

diligence of the party needing the extension."   S&W Enterprises,

315 F.3d at 535 (citation omitted).   Defendant argues that it

---

[191] Id.

[192] Id. at 11-12.

did not delay in seeking the invention records, either
from Plaintiffs or from Canadian inventor David Parks.
In fact, [Defendant] moved for issuance of Letters
Rogatory to Canada on October 25, 2021, requesting
invention records and other discovery from David Parks
and his company. See Dkt. 81. Plaintiffs originally
opposed this discovery, arguing that [Defendant]'s
"request for invention records related to the inventions
of the patents-in-suit" was unwarranted because
"[Defendant] can readily obtain such from [Plaintiff]."
See Dkt. 91 at 1 n. 1. Magistrate Bray issued the
Letters Rogatory on December 7, 2021, and [Defendant]
expeditiously sought relief in Canada. See Dkt. 107.
Just two weeks before the close of discovery on January
14, 2022, David Parks produced over 150 documents, and
his deposition occurred on January 17, 2022.

Just two days later on January 19, 2022, [Defendant]
immediately notified Plaintiffs that its document
collection and production was wholly insufficient based
on the documents produced by Mr. Parks. See Ex. 12. In
particular, Mr. Parks produced several e-mails between
him and the other inventors (and Plaintiffs' employees)
that Plaintiffs themselves had never produced.
Plaintiffs initially responded on January 25, 2022 that
"Your suggestion that [Plaintiffs] actively did not
produce 'the majority of Mr. Preiss' emails from 2012 and
2013 with Mr. Parks' is wrong." Ex. 9 at 1. Plaintiffs
did, however, identify "306 other documents with
Mr. McNelis as the custodian that had been reviewed but,
due to a processing error, were inadvertently never
produced." Id. at 2.

                              . . .

     . . . Plaintiffs moved for an order adding an
additional 4 weeks to the case schedule because it had
"located additional documents, in hard copy and
electronic form, which will need to be processed,
reviewed, and produced." See Dkt. 124 at 2. On February
28, 2022, Plaintiffs additionally identified for the
first time a "USB device in Mr. Scharf's possession" that
contained 14 Schlumberger presentations that Mr. Scharf
took with him when he went to work for Plaintiffs,
including a SafeJet presentation. See Ex. 11.
[Defendant] completed the additional depositions of the
inventors on March 1 (Thilo Scharf), March 3 (Liam
McNelis), and March 8, 2022 (Frank Preiss). Following
these depositions, [Defendant] now moves to amend the
pleadings to add an additional inequitable conduct

defense to include the Schlumberger SafeJet perforating gun. . .[193]

Defendant argues that "[i]mportant for this motion, inventor Thilo Scharf admitted during his deposition that Schlumberger's SafeJet perforating gun includes a 'tandem seal adapter.'"[194]

Plaintiffs respond that Defendant

cannot in good faith claim that it "could not have known about these facts to bring an additional inequitable conduct defense any sooner" when it was in possession of material facts underlying its defense <u>before</u> the agreed extended deadline for discovery and dispositive and non-dispositive motions. . . [Defendant] fails to address, let alone explain, why it waited seven weeks past the agreed extended deadline to bring its Motion when the parties were actively briefing related issues in March.[195]

Plaintiffs argue that

a substantively identical version of [Scharf's] 2011 Presentation was produced by DynaEnergetics as DYNA-00206766 (Dkt. 182-7) on December 1, 2021 — well before the extended discovery deadline. The SafeJet Presentation produced on December 1, 2021 names Thilo Scharf on the cover and contains <u>identical technical details</u> as the 2011 SafeJet Presentation DynaEnergetics produced on February 15, 2022 (Dkt. 181-1, DYNA-00218851). It also includes the <u>exact same photographs</u> of the SafeJet system that Hunting now claims are material and were improperly withheld from the Examiner, as Hunting's own Motion makes clear. <u>See</u> Mot. at 13 (comparing nearly identical photographs of "tandem seal adapter" from Dkt. 182-7 (DYNA_00206766) and Dkt. 182-8 (DYNA_00217625)).[196]

---

[193]<u>Id.</u> at 12-13.

[194]<u>Id.</u> at 16.

[195]Plaintiffs' Opposition to Defendants' Motion to Amend, Docket Entry No. 186, p. 16.

[196]<u>Id.</u> at 17.

Defendant replies that the pending motion to amend was timely filed because during the initial discovery period Plaintiffs had in their possession — but failed to produce — documents showing that Scharf took information on the SafeJet gun from Schlumberger and gave it to Preiss, who gave a photograph of the SafeJet gun to Parks to use as the basis for Plaintiffs' alleged inventions, because Plaintiffs' delay in producing these documents meant that some of the inventors had to be re-deposed in March of 2022, a mere seven weeks before the pending motion was filed, and because during those seven weeks the parties were engaged in expedited dispositive motion briefing.[197]  Citing Allergan, Inc. v. Teva Pharmaceuticals USA, Inc., Civil Action No. 2:15-cv-1455-WCB, 2017 WL 119633, at *4-*5 (E.D. Tex. January 12, 2017), and Lipocine Inc. v. Clarus Therapeutics, Inc., Civil Action No. 19-622 (WCB), 2020 WL 4794576, at *3 (D. Del. August 18, 2020), Defendant argues that while courts have found delay to be undue when a motion to amend was filed after the deadline for amending and the period of delay was three months or more from the time the information that prompted the motion filing was obtained, the seven week period at issue here is reasonable because inequitable conduct is subject to the heightened pleading standard of Rule 9(b).[198]

---

[197]Defendant's Reply in Support of Motion to Amend, Docket Entry No. 191, pp. 5-7.

[198]Id. at 10-12.

Defendant seeks leave to amend to add allegations of inequitable conduct based on Plaintiffs' failure to disclose to the patent examiner a PowerPoint presentation about Schlumberger's SafeJet perforation gun, which Scharf gave to Schlumberger customers in 2011, Scharf took with him when he went to work for Plaintiffs in September of 2011, Scharf shared with co-inventor Preiss, and Defendant contends was the source of a photograph on which Plaintiffs based the Asserted Patents.[199]

Defendant does not dispute that it received a version of Scharf's 2011 SafeJet Presentation in December of 2021, which was Exhibit 27 to Scharf's initial deposition on December 22, 2021,[200] that Scharf was extensively questioned about Schlumberger's SafeJet and his 2011 presentation during his initial deposition,[201] or that during that questioning Scharf testified that the Schlumberger SafeJet gun included a tandem seal adapter.[202]  Moreover, Defendant

---

[199]Id. at 8-9 ("Hunting Titan's Inequitable Conduct Allegations").

[200]See Exhibit 13 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-7, pp. 3-13.

[201]See 2021 Scharf Deposition, pp. 32:14-36:5, 113:2-120:25, Exhibit 1 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-1, pp. 5-8.

[202]See id. at 116:15-117:6, Exhibit 1 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-1, pp. 7-8.

admits that Parks produced documents on January 14, 2022,[203] that Parks' production of documents prompted the parties to reopen discovery, and to re-depose three of the inventors.[204]   Defendant argues that it

> was justified in waiting for the second round of inventor depositions to offer the amendment because of the heightened pleading standards — without the additional discovery, any proposed amendment would have been subject to an attack that Hunting Titan did not plead inequitable conduct with particularity to show the who, what, where, and when.[205]

Defendant obtained additional corroborating evidence during the four-week period for which the parties agreed to re-open discovery and extend the motion filing deadlines. Defendant's discovery of more complete information regarding the SafeJet gun and thus a stronger basis for its inequitable conduct defense and counterclaim does not justify an additional seven-week delay in filing the pending motion.   See Union Pacific Railroad Co. v. Oglebay Norton Minerals, Inc., Civil Action No. EP-17-CV-47-PRM, 2017 WL 10841702, at *5 (W.D. Tex. November 15, 2017)(denying motion for leave to amend where defendants were aware of the facts underlying their counterclaims before the deadline for amendment had passed).

---

[203]Defendant's Motion to Amend, Docket Entry No. 180, p. 12.

[204]Id. at 13.

[205]Defendant's Reply in Support of Motion to Amend, Docket Entry No. 191, p. 10.

Because the undisputed evidence shows that Defendant obtained both a version of Scharf's 2011 Presentation and Scharf's deposition testimony that the SafeJet gun contained a tandem seal adapter in December of 2021, and that Defendant obtained documents from Parks on January 14, 2022, showing that Scharf shared information about the SafeJet gun with Plaintiffs, Defendant possessed many — if not all — of the facts needed to file the pending Motion to Amend before discovery initially closed on January 28, 2022.  Moreover, Defendant undisputedly possessed all of the facts before the March 8, 2022, deadline for filing all motions.  Nevertheless, Defendant waited until April 26, 2022, to file the pending motion.  Defendant argues that the delay was reasonable because it "brought the Motion to Amend just 7 weeks after it was able to re-depose Frank Preiss, a critical inventor,"[206] but nowhere in any of its briefing does Defendant cite the second Preiss deposition as a source for any of the facts on which the pending motion is based.  That leaves as Defendant's only explanation for delay that the parties were actively briefing other motions,[207] which is not a reasonable explanation for delay.  This factor weighs against finding good cause for Defendant's motion to amend.  <u>See Allergan</u>, 2017 WL 119633, at *5 (finding motion to amend untimely where movant knew or should have known of the facts underlying the motion before the time for filing amendments expired).

---

[206]<u>Id.</u>

[207]<u>Id.</u> at 11.

2.   <u>The Proposed Amendments Are Not Important</u>

(a)   Additional Law

If successful the inequitable conduct affirmative defense and counterclaim that Defendant seeks leave to add would be dispositive of the infringement claims asserted against Defendant based on the '938 Patent.   <u>See Therasense</u>, 649 F.3d at 1288 ("inequitable conduct regarding any single claim renders the entire patent unenforceable").   Nevertheless, the importance of a proposed amendment is not judged by the effect the proposed defense or counterclaim might have on the litigation but, instead, by the likelihood that the proposed defense or counterclaim will succeed on the merits.   <u>See Allergan</u>, 2017 WL 119633, at * 6 (citing <u>Southwestern Bell Telephone Co. v. City of El Paso</u>, 346 F.3d 541, 547 (5th Cir. 2003) (treating "likely failure of the proposed counterclaims on the merits" as a factor weighing against allowing an untimely amendment); and <u>Bombardier Aerospace Corp. v. United States</u>, 831 F.3d 268, 284 (5th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 2293 (2017) (futility of amendment supports decision to deny motion to amend)).

In order to prevail on an inequitable conduct defense or counterclaim, the Defendant must prove that information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent.   <u>Therasense</u>, 649 F.3d at

1290-92.   In Therasense, the court emphasized that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality."   Id. at 1291.   "Prior art is but-for material if the PTO would have denied a claim had it known of the undisclosed prior art. . . Prior art is not but-for material if it is merely cumulative."   California Institute of Technology v. Broadcom Limited, 25 F.4th 976, 991 (Fed. Cir. 2022), pet. for cert. docketed by Apple Inc. v. California Institute of Technology, U.S. (September 7, 2022) (citing Therasense, 649 F.3d at 1291, and Regeneron, 864 F.3d at 1350).   "A reference is cumulative when it 'teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO.'"   Regeneron, 864 F.3d at 1350 (quoting Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559, 1575 (Fed. Cir. 1997), cert. denied, 118 S. Ct. 1548 (1998)).   Because claims of inequitable conduct sound in fraud they are subject to Rule 9's heightened pleading standard.   Fed. R. Civ. P. 9(b).   See Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009).   Under this standard, a complainant is required to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."   Id. at 1328.

(b)   Application  of  Additional  Law  to  the  Proposed
Amendments

Defendant argues that the proposed amendments are important because the new defense and counterclaim that it seeks leave to assert show that Plaintiffs based the Asserted Patents on Schlumberger's SafeJet perforating gun.[208]   Defendant specifically argues that the patent examiner would not have allowed the '938 Patent to issue if Plaintiffs had disclosed a copy of Scharf's 2011 Presentation, Scharf's involvement in the SafeJet gun while at Schlumberger, and Parks' use of the SafeJet gun to develop the Asserted Patents.   Defendant argues that Plaintiffs' application would have been denied had these disclosures been made because the patent examiner "would have found Plaintiffs' claims an obvious modification over the prior art (the same way Plaintiffs themselves modified the SafeJet perforating gun)."[209]   Defendant contends that "[t]his is especially so given that the alleged point of novelty the examiner found over Schacherer and Lerche is actually disclosed by Schlumberger's prior art gun — the same gun that inventor Thilo Scharf worked on while at Schlumberger."[210]   Citing Contour IP Holding, LLC v. GoPro, Inc., Civil Action No. 3:17-cv-4738-WHO, 3:21-cv-02143-WHO, 2021 WL 5178806, at *2 (N.D. Cal. November 8,

_____

[208]Defendant's Motion to Amend, Docket Entry No. 180, p. 12.

[209]Id. at 17.

[210]Id.

2021), Defendant argues that "[t]he Northern District of California recently considered a similar fact pattern and allowed an inequitable conduct amendment where the point of novelty was supplied by a third party."[211]

In Contour IP the defendant, GoPro, sought to amend its answer to allege a counterclaim charging three individuals with inequitable conduct: two inventors and the patent holder's chief technology officer.  2021 WL 5178806, at *2.  GoPro sought to allege that these individuals mislead the PTO by failing to disclose that components of a third-party company, Ambarella, were used in the patented technology, that the novelty of the patented technology depended on the undisclosed Ambarella components.  GoPro also sought to allege that the three individuals failed to disclose the Ambarella components to the PTO with intent to deceive the examiner in order to overcome prior art objections, and that but for the alleged omissions the PTO would have rejected the patent applications either under 35 U.S.C. § 102(f) on the basis of improper inventorship, or under 35 U.S.C. § 102 or 103 because the Ambarella components were known prior art that performed the claim elements the applicant relied on to overcome prior art rejections.  Id. at *4.  Analyzing the motion under Rule 15(a) and the proposed amendments under Rule 9(b), the court found that GoPro had adequately plead the who, what, when, and where of non-disclosure,

---

[211]Id.

and had also adequately plead the how and why of inequitable conduct. Id. at *5.

Citing Therasense, 649 F.3d at 1289, and asserting that "[Defendant]'s [u]ntimely [i]nequitable [c]onduct [d]efense [i]s [f]utile,"[212] Plaintiffs respond that Defendant's

> undeveloped and unsubstantiated inequitable conduct "theory" ostensibly relies on two allegedly withheld items: (1) [Scharf's] 2011 SafeJet Presentation and (2) [Defendant]'s own litigation-inspired theory that [Plaintiffs'] invention was "based on" SafeJet. But the 2011 SafeJet Presentation is not even prior art, and even if it were it is cumulative of the SafeJet-related materials cited during the prosecution, . . . Meanwhile, [Defendant]'s theory simply is not true, is contradicted by all the evidence, and even if true would have no impact as a matter of law.[213]

Plaintiffs argue that the facts of this case are analogous to those at issue in Life Technologies, Inc. v. Clontech Laboratories, Inc., 224 F.3d 1320, 1325 (Fed. Cir. 2000), where the Federal Circuit reversed the trial court's determination of unenforceability based on allegations that the inventors committed inequitable conduct by not informing the PTO that they used a particular prior art reference as a starting point in their development of the invention.[214] Plaintiffs argue that as in Life Technologies "the manner in which the invention claimed in the '938 Patent was made

---

[212]Plaintiffs' Opposition to Defendants' Motion to Amend, Docket Entry No. 186, p. 23.

[213]Id. at 23-24.

[214]Id. at 26-27.

has no bearing on the issue of patentability and thus is not but-
for material as a mater of law and cannot support a claim for
inequitable conduct."[215]

Defendant replies that

Plaintiffs' reliance on <u>Life Technologies</u> ignores
[Defendant]'s allegations and is misplaced.  In <u>Life
Technologies [],</u> the patentee actually disclosed the
disputed reference and even cited to its disclosures in
the specification.  224 F.3d [at 1325].  Under the
"reasonable examiner" standard, the district court
nonetheless found inequitable conduct because the
patentee did not more fully highlight the reference to
the examiner.  <u>Id.</u>  Here, by contrast, the inventors
never gave [Scharf's] 2011 SafeJet presentation to the
examiner (or the photograph the inventors had showing the
prior art gun the inventors used to create the
invention).  Significantly, inventor, Thilo Scharf
admitted at his deposition that the SafeJet gun actually
disclosed the "tandem seal adapter."  <u>See</u> Ex. 1, Scharf
Dep. Tr. at 116:15-117:6.  And the Examiner originally
rejected the proposed claims, arguing that they would
only be allowable if the "tandem seal adapter"
limitations were incorporated into the independent claims
from dependent claims.  <u>See</u> Ex. 8, Prosecution History,
at 9-14.  Failure to disclose material information like
this is inequitable conduct.[216]

### (1)  Plaintiffs' Alleged Omissions Are Not Material

Plaintiffs do not dispute that Scharf's 2011 SafeJet
Presentation, Scharf's involvement with the SafeJet gun while at
Schlumberger, or Parks' use of the SafeJet gun to develop the
Asserted Patents were not disclosed to the patent examiner.

---

[215]<u>Id.</u> at 27.

[216]Defendant's Reply in Support of Motion to Amend, Docket
Entry No. 191, pp. 15-16.

Asserting that there is no evidence that Scharf's 2011 SafeJet Presentation was ever published or distributed to the public, Plaintiffs argue that it is not prior art and is cumulative of prior art that was cited and before the patent examiner during prosecution.[217]  Plaintiffs argue that they "disclosed the SafeJet system to the PTO through several references, including EWAPS . . .,"[218] and that Defendant "has failed to demonstrate why [Scharf's] 2011 SafeJet Presentation is not cumulative of EWAPS and the other references already before the PTO during prosecution."[219]  "EWAPS" refers to a presentation about Schlumberger's SafeJet system titled, "Selective Perforation: A Game Changer in Perforating Technology — Case Study," delivered by Amit Govil at the European and West African Perforating Symposium, Schlumberger, November 7-9, 2012.[220]  Citing Life Technologies, Plaintiffs argue that the failure to disclose Scharf's involvement with the SafeJet gun while he worked at Schlumberger and Parks' use of the SafeJet gun to develop the Asserted Patents is legally irrelevant.[221]

---

[217]Plaintiffs' Opposition to Defendants' Motion to Amend, Docket Entry No. 186, p. 25.

[218]Id.

[219]Id.

[220]Id. at 9.

[221]Id. at 25-29.

Asserting that Plaintiffs admit that Scharf's 2011 SafeJet Presentation and the EWAPS presentation from 2012 are not identical because Scharf's 2011 SafeJet Presentation includes more pictures than the EWAPS presentation, Defendant replies that it has raised a triable issue that the 2011 SafeJet presentation is both material and not cumulative to the 2012 SafeJet presentation that Plaintiffs submitted to the PTO.[222]

During prosecution of the '938 Patent, Plaintiffs disclosed numerous references to the PTO, including the 2012 EWAPS presentation.[223]  As evidence that the failure to disclose Scharf's 2011 SafeJet Presentation was material, Defendant cites and depicts a photograph of the SafeJet gun that appeared in both the black-and-white version of Scharf's 2011 SafeJet Presentation, which was Exhibit 290 to Scharf's initial deposition on December 22, 2021, and a color version of the same photograph located in Preiss' physical files, which Defendant alleges is the photograph that Preiss provided to Parks in 2012.[224]  The only difference between

----

[222]Defendant's Reply in Support of Motion to Amend, Docket Entry No. 191, p. 17.  See also id. at 15 n. 3.

[223]'938 Patent, p. 2, Exhibit B to Complaint and Demand for Jury Trial, Docket Entry No. 63-2, p. 3.  See also EWAPS, Exhibit A to Declaration of Ana Friedman in Support of DynaEnergetics' Opposition to Hunting's Motion for Leave to File Amended Answer & Counterclaims Asserting Additional Inequitable Conduct Defense ("Friedman Declaration"), Docket Entry No. 187-1.

[224]Defendant's Motion to Amend, Docket Entry No. 180, p. 17 (depicting photographs of the SafeJet gun from Scharf's 2011
(continued...)

these two photographs is that one is in black-and-white while the other is in color.  A color version of the same photograph appears in the 2012 EWAPS presentation, which Plaintiffs disclosed to the patent examiner.[225]  Defendant fails to identify any aspect of these photographs, any information, or any feature of the SafeJet gun that is contained in Scharf's 2011 SafeJet Presentation that is not contained in the 2012 EWAPS presentation.  The court concludes therefore that the Scharf 2011 SafeJet Presentation was merely cumulative of the 2012 EWAPS presentation which Plaintiffs disclosed to the patent examiner.  Because the Scharf 2011 SafeJet Presentation is merely cumulative of the 2012 EWAPS presentation, which was disclosed to the patent examiner, Defendant would not likely be able to prove that but-for Plaintiffs' failure to disclose Scharf's 2011 SafeJet Presentation to the patent examiner the application for the '938 Patent would not have been approved.  Accordingly, the court concludes that Plaintiffs' failure to disclose Scharf's 2011 SafeJet Presentation to the patent examiner was not a material omission.

---

[224](...continued)
SafeJet Presentation which was Exhibit 27 to Scharf's 2021 Deposition at DYNA-00206772, Exhibit 13 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-7, p. 8; and the photograph found in Preiss' physical files, Exhibit 14 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-8, p. 2).

[225]2012 EWAPS Presentation, Exhibit A to Friedman Declaration, Docket Entry No. 187-1, p. 10.

Defendant's allegations that Plaintiffs failed to disclose either Scharf's involvement with the SafeJet gun or that Plaintiffs based their claimed invention on the SafeJet gun are similarly insufficient to establish but-for materiality because "patentability is assessed from the perspective of the hypothetical person of ordinary skill in the art, information regarding the subjective motivations of inventors is not material." Life Technologies, 224 F.3d at 1325. Consequently, "the inventors' reliance on [certain prior art] and the motivations that they derived from it have no bearing on the issue of patentability." Id. Accordingly, the court concludes that Plaintiffs' failure to disclose Scharf's involvement with the SafeJet gun or that they based the claimed inventions on the SafeJet gun were not material omissions. Defendant's reliance on Contour IP, 2021 WL 5178806, to argue the contrary is misplaced because the facts of that case are distinguishable from those of this case.

First and foremost Contour IP is distinguishable because the motion to amend at issue there was governed by Rule 15(a); the movant was not required to establish good cause under Rule 16(b). 2021 WL 5178806, at *1. Contour IP is also distinguishable because the movant alleged that third-party components were used in the claimed invention, that the third-party components provided the claimed invention's only novelty, and that the patent holders intentionally failed to disclose the presence of third-party

components to the patent examiner to overcome rejection for obviousness based on prior art.  Id. at *2.  Defendant does not allege that components of the SafeJet gun were used in Plaintiffs' claimed invention, that components of the SafeJet gun provide the claimed invention's only novelty, or that Plaintiffs failed to disclose the SafeJet gun as prior art.  Instead, asserting that during his initial deposition Scharf admitted that the SafeJet gun disclosed a "tandem seal adapter,"[226] and citing the prosecution history of the '938 Patent, Defendant argues that the examiner originally rejected the proposed claims and only allowed them after Plaintiffs agreed to move "tandem seal adapter" limitations from the dependent to the independent claims.[227]  But review of the prosecution history shows that the tandem seal adapter was not the claimed invention's sole novelty.  To the contrary, the examiner did not distinguish the claimed invention from the prior art based on the presence of a tandem seal adapter but on the tandem seal adapter's relationship to a bulkhead and to a wireless electrical contact.  In pertinent part the examiner stated that

---

[226]See 2021 Scharf Deposition, pp. 116:15-117:6, Exhibit 1 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 182-1, pp. 7-8.

[227]Defendant's Reply in Support of Motion to Amend, Docket Entry No. 191, p. 16 (citing Prosecution History for the '938 Patent, pp. 9-14 ("Claim Rejections - 35 U.S.C. § 102"), Ex. 8 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 181-2, pp. 10-15.

> [t]he following is a statement of reasons for the indication of allowable subject matter:
>
> Regarding **claim 6**, the prior art fails to anticipate or make obvious (in the context of the pertinent claims) wherein at least a portion of the bulkhead is contained within a tandem seal adapter, and the wireless ground portion is in wireless electrical contact with the tandem seal adapter. Schacherer is considered [the] most relevant known prior art who discloses a bulkhead **84** that is contained within an outer housing **26** of the perforating gun and there is no disclosure of the outer housing **26** in electrical contact with the wireless ground portion **46**.[228]

Since the examiner stated that the claimed invention was not anticipated or obvious because the prior art failed to disclose (1) a bulkhead within a tandem seal adapter, or (2) a wireless ground portion in wireless electrical contact with the tandem seal adapter,[229] the mere presence of a tandem seal adapter is not the sole novelty of the claimed invention. Accordingly, the court concludes that the alleged omissions were not material.

### (2) Defendant Fails to Allege Facts Capable of Establishing Intent to Deceive

Asserting that "Plaintiffs have demonstrated a pattern of false and misleading arguments, both in litigation and in front of

---

[228]Prosecution History for the '938 Patent, p. 16 ¶ 11 ("Allowable Subject Matter"), Ex. 8 to Dornberger Declaration in Support of Defendant's Motion to Amend, Docket Entry No. 181-2, p. 17 ¶ 11.

[229]Plaintiffs' Opposition to Defendant's Motion to Amend, Docket Entry No. 186, pp. 28-29.

the Patent Office,"[230] Defendant argues that the court can reasonably infer intent to deceive from the fact that Plaintiffs submitted the 2012 EWAPS presentation to the patent examiner but did not submit Scharf's 2011 SafeJet Presentation with his name on the front cover,[231] and from an e-mail dated October 5, 2015, that was only recently produced, in which Scharf wrote to fellow inventors Liam McNelis and Christian Eitschberger, as well as to Plaintiffs' president, Ian Grieves, that he was "very familiar with this [SafeJet] system" due to his work at Schlumberger.[232]

Plaintiffs respond that Defendant ignores that Scharf's 2011 SafeJet Presentation was not prior art because it was not presented publicly, and that the 2012 EWAPS Presentation with nearly identical content, is prior art because it was presented publicly.[233] Plaintiffs also respond that the identification and production of documents late in the discovery period was fully explained to Defendant's satisfaction, and that Defendant fails to explain how the conduct of Plaintiffs' counsel during this

---

[230]Defendant's Motion to Amend, Docket Entry No. 180, p. 18.

[231]Id. at 18-19.

[232]Id. at 19 (citing Exhibit 15 to Dornberger Declaration in Support of Defendant's Motion to Amend (DYNA-00218849)), Docket Entry No. 182-9, p. 2.

[233]Plaintiffs' Opposition to Defendant's Motion to Amend, Docket Entry No. 186, p. 30.

litigation could have any relation to a supposed intent to deceive the PTO during prosecution years ago.[234]

The Federal Circuit has held that "[a] court may infer intent from circumstantial evidence," and "[a]n inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor,' including where the applicant repeatedly makes factual representations 'contrary to the true information he had in his possession.'" Regeneron, 864 F.3d at 1351. Defendant's only evidence of an alleged intent to deceive is Plaintiffs' failure to disclose to the patent examiner a single presentation (i.e., the Scharf 2011 SafeJet Presentation), Scharf's knowledge of the prior art SafeJet gun, and Plaintiffs' failure to produce documents in discovery as expeditiously as desired. Defendant's evidence is not capable of showing either that Plaintiffs repeatedly made factual representations contrary to the true information they had, or that Plaintiffs exhibited a pattern or lack of candor before the PTO or before this court. Accordingly, the court concludes that Defendants have failed to allege capable of establishing a intent to deceive the patent examiner.

### (3) Conclusions

Because Defendant fails to allege facts capable of establishing that the information Plaintiffs allegedly failed to

---

[234]Id. at 31.

disclose to the PTO is but-for material, or that Plaintiffs failed to disclose that information with an intent to deceive the patent examiner, the court concludes that the proposed inequitable conduct defense and counterclaim would likely fail and that the proposed amendments are, therefore, not important. Accordingly, this factor weighs against finding good cause for Defendant's motion to amend.

### 3.   Allowing the Proposed Amendments Would Prejudice Plaintiffs and Delay Trial

Defendants argue that the proposed amendments will not cause any undue prejudice because granting the motion to amend will not delay trial as "the parties have already added an additional 4 weeks to the discovery period and have conducted three additional depositions based on the missing documents."[235] Defendant also argues that "[t]o the extent Plaintiffs argue there is any prejudice, it is of [their] own making for failing to collect and produce the relevant documents during the discovery period and improperly opposing (and delaying) third-party discovery from Mr. Parks."[236]

Plaintiffs respond that "[i]f [Defendant] is granted leave to amend at this advanced stage in the litigation, [they] will be prejudiced at least because [they] will have to prepare and file an

---

[235]Defendant's Motion to Amend, Docket Entry No. 180, p. 14.

[236]Id. See also Defendant's Reply, Docket Entry No. 191, pp. 13-15.

answer to address [Defendant]'s untimely allegations."[237]
Plaintiffs also argue that they

> will further be prejudiced by having to prepare
> supplemental expert reports by its patent law expert,
> Mr. Tod Tumey, and by its technical expert, Dr. John
> Rodgers, on the materiality (or lack thereof) of the 2011
> SafeJet Presentation to the prosecution of the '938
> Patent. Discovery would need to be at least partially
> reopened and amended dispositive motions filed. The
> potential prejudice to [Plaintiffs] is "exacerbated" by
> the fact that the parties are in the final stages of
> preparations for trial, which is set for docket call on
> June 10. . .
>
>                              . . .
>
>     . . . [I]f [Plaintiffs] had been aware of
> [Defendant]'s new inequitable conduct allegations,
> [Plaintiffs] would have briefed the issue in its omnibus
> motion for summary judgment (including a motion for
> summary judgment related to the originally pled claim for
> inequitable conduct) filed at the end of the extended
> discovery period. Because [Defendant] did not timely
> raise its new allegations, [Plaintiffs] would be
> substantially and irreparably prejudiced if [Defendant]'s
> new defense is added to the case . . .[238]

Granting Defendant's motion to amend will require Plaintiffs
to respond to the new allegations, will require Plaintiffs' experts
to amend their reports, and will likely prompt Plaintiffs to move
both to reopen discovery and to allow a second round of summary
judgment motions. Collectively, these actions would not only
prejudice Plaintiffs but also delay resolution of this case, which
— now that the court has ruled on the cross motions for summary

---

[237]Plaintiffs' Opposition to Defendants' Motion to Amend,
Docket Entry No. 186, p. 21.

[238]Id. at 21-22.

judgment — is ready for trial.  Accordingly, this factor weighs against finding good cause for Defendant's motion to amend.

### 4.  Conclusions

For the reasons explained above the court concludes that Defendant has failed to establish good cause for modifying the scheduling order because Defendant has no reasonable explanation for the delay in filing the pending motion to amend, the proposed amendments are not important, and allowing the proposed amendments will prejudice the Plaintiffs and delay trial.  Because Defendant has failed to establish good cause for modifying the scheduling order, Defendant's Motion to Amend will be denied.

## VI.  Conclusions and Order

For the reasons stated in § II.A, above, Plaintiffs' Opposed Daubert Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D., Docket Entry No. 129, is **DENIED without prejudice to being reurged during trial**; Plaintiffs' Opposed Daubert Motion to Exclude the Opinions and Testimony of William Fleckenstein, Ph.D., Docket Entry No. 141, is **DENIED without prejudice to being reurged during trial**; Defendant Hunting Titan, Inc.'s Daubert Motion to Exclude Expert Testimony of Andrew W. Carter, Docket Entry No. 134, is **DENIED without prejudice to being reurged during trial**; and Defendant Hunting Titan, Inc's

<u>Daubert</u> Motion to Exclude Expert Testimony of Mr. Tod Tumey, Docket Entry No. 135, is **DENIED without prejudice to being reurged during trial.**

For the reasons stated in § II.B, above, Defendant Hunting Titan's Motion to Strike, Docket Entry No. 136, is **DENIED as MOOT without prejudice to being reurged during trial.**

For the reasons stated in § III, above, Plaintiffs' Opposed Motion to File a Sur-Reply in Response to Defendant's Reply Brief in Further Support of Its Motion for Summary Judgment, Docket Entry No. 175, is **DENIED.**

For the reasons stated in § IV.B.1, above, the court concludes that Plaintiffs are not entitled to summary judgment of no invalidity.  For the reasons stated in § IV.B.2, above, the court concludes that Plaintiffs are entitled to summary judgment of no inequitable conduct.  For the reasons stated in § IV.B.3, above, the court concludes that Plaintiffs are entitled to summary judgment that there are no noninfringing substitutes for purposes of the <u>Panduit</u> lost profits analysis.  Accordingly, Plaintiffs' Motion for Summary Judgment, Docket Entry No. 128, is **GRANTED in PART and DENIED in PART.**

For the reasons stated in § IV.C.1, above, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' claims for direct infringement of the '938 Patent but is not entitled to summary on Plaintiffs' claims for direct infringement of the '161

Patent.  For the reasons stated in § IV.C.2, above, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' claims for indirect infringement of the '938 Patent, but is not entitled to summary judgment for Plaintiffs' claims for indirect infringement of the '161 Patent.  For the reasons stated in § IV.C.3, above, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' claims for willful infringement of the '938 Patent, but is  not entitled to summary judgment on Plaintiffs' claims for willful infringement of the '161 Patent.  For the reasons stated in § IV.C.4, above, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' claims for pre-suit damages under 35 U.S.C. § 287(a).  Accordingly, Defendant Hunting Titan, Inc.'s Motion for Summary Judgment, Docket Entry No. 133, is **GRANTED in PART and DENIED in PART.**

For the reasons stated in § V, above, Defendant Hunting Titan, Inc.'s Opposed Motion for Leave to File Amended Answer and Counterclaims Asserting Additional Inequitable Conduct Defense, Docket Entry No. 180, is **DENIED.**

The joint pretrial order will be filed by Friday, October 7, 2022, and Docket call will be held on Friday, October 14, 2022, at 3:00 p.m. in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

No motions for limine or other pretrial motions will be allowed, including for reconsideration.  The parties may submit a

pretrial memorandum not to exceed 25 total pages in which they may foreshadow any evidentiary issues likely to arise at trial.

**SIGNED** at Houston, Texas, on this 19th day of September, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE